**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| *In re:* | § | |
| **METROPOLITAN WATER COMPANY, L.P.,** | § | **Case No. 21-10903-HCM** |
| **MET WATER VISTA RIDGE, L.P.,** | § | **Case No. 21-10904-HCM** |
| *Debtors in Possession.*[1] | § | *(Jointly Administered* |
| | § | *under Case No. 21-10903-HCM)* |

**DEBTORS' JOINT**
**SMALL BUSINESS SUBCHAPTER V PLAN OF REORGANIZATION**
**DATED FEBRUARY 22, 2022**

Metropolitan Water Company, L.P. ("Met Water"), and Met Water Vista Ridge, L.P., ("MWVR," together with Met Water, the "Debtors"), the debtors in possession in the above-styled and numbered jointly administered bankruptcy cases, hereby submit to their Creditors this Plan of Reorganization ("Plan") pursuant to Chapter 11 of Title 11, Subchapter V, United States Code (hereinafter the "Bankruptcy Code" or "Code").

ARTICLE I

**DEFINITIONS**

Except as otherwise indicated in this Plan, the terms used in this Plan have the definitions used in the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court and the United States District Court for the Western District of Texas. In addition, the following terms shall have the following meanings:

**1.01.   130 Project** shall mean the wellfield, pipeline, and associated infrastructure for the supply of water from certain of Met Water's groundwater leases in Burleson and Milam Counties in Texas, to wholesale water purchasers in various communities in Bastrop and Travis Counties in Texas.

---

1. The last four digits of the Debtors' federal tax identification numbers are: Metropolitan Water Company, L.P. (6172); Met Water Vista Ridge, L.P. (2308). The Debtors' mailing address is P.O. Drawer 1146, Brenham, TX 77834-1146.

**1.02. Administrative Expense** shall mean those claims entitled to priority under § 507(a)(1), § 503(b) and § 330 of the Code, which include fees and expenses of the bankruptcy attorneys for the Debtors and their Special Litigation Counsel and of their accountants, and shall include, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of the business of the Debtors, any fees and expenses of the Subchapter V Trustee and any professionals employed by the Subchapter V Trustee, and any fees or charges assessed against the Estate of either or both the Debtors under Chapter 123, Title 28, United States Code.

**1.03. Allowed Claims** shall mean a claim:

(a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by the Bankruptcy Rule 3003, in a liquidated non-contingent amount as to which no objection has been filed by the Debtors or any other party in interest prior to the applicable Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely filed by the applicable Bar Date; or

(b) scheduled in the Schedule of Liabilities prepared and filed with the Court by either Met Water or MWVR pursuant to Federal Rule of Bankruptcy Procedure 1007(b) and is not listed as disputed, contingent, or unliquidated as to amount in those Schedules or this Plan, and

(c) in either case (i.e., (a) or (b) above), as to which no objection to the allowance thereof has been filed, or as to which any such objection has been determined by a final order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated hereafter in the Plan or expressly permitted by the Bankruptcy Court.

**1.04. Allowed Equity Interest** shall mean each of the current general and limited partner interests in Met Water or MWVR.

**1.05. Allowed Secured Claim** shall mean an Allowed Claim secured by a lien, security interest, mortgage or other interest in property in which the Debtor has an interest, or which is subject to set-off under § 553 of the Code, to the extent of the value of such property securing the Allowed Secured Claim pursuant to § 506(a) of the Code or to the extent the amount is subject to said set-off as the case may be. An Allowed Secured Claim may include post-petition interest if permitted under § 506 of the Code. The Debtors do not believe there are any Allowed Secured Claims against either of them.

**1.06. Avoidance Action** shall mean any and all rights, claims or actions which either or both Baldwin Lease Litigation including actions under one or more provisions of sections 542, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any preference or fraudulent transfer action under any applicable state law, except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan.

**1.07. Baldwin Lease** shall mean that certain groundwater lease dated September 1, 2016, between Joe Baldwin, as Lessor, and MWVR., as Lessee, that concerns a tract of land in Burleson

County, Texas, more particularly described as 3.77 acres of land, more or less, a part of the Euclid M. Cox Survey, Abstract 82, Burleson County, Texas, and being the same land as described in a Deed dated April 25, 2014 from Daniel Lee Tucker to Joe Baldwin, recorded in Volume 943, Page 619 of the Official Public Records of Burleson County, Texas.

**1.08. Baldwin Lease Litigation,** part of the Vista Ridge Litigation, shall mean the lawsuit pending as of the Petition Date in the federal District Court for the Western District of Texas between MWVR, Vista Ridge and the Trust.

**1.09. Bankruptcy Case** and Bankruptcy Cases shall mean the case commenced by Met Water and/or the case commenced by MWVR, depending on the context, upon the filing of such Debtor's voluntary petition under the Bankruptcy Code on the Petition Date.

**1.10. Bankruptcy Code or the Code** shall mean the United States Bankruptcy Code as contained in 11 U.S.C. § 101, et seq., and all amendments thereto.

**1.11. Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure, as amended.

**1.12. Bar Date** shall mean the last date on which a proof of Claim may be timely filed against Met Water and/or MWVR, unless otherwise extended by a Final Order of the Bankruptcy Court, which deadline was January 31, 2022.

**1.13. Blue Water Parties** shall mean any or all of Blue Water Vista Ridge, LLC, Blue Water Regional Supply Project, LP, Blue Water 130 Project, LP, and Blue Water Systems, LP.

**1.14. Carlson** or **Mr. Carlson** shall mean W. Scott Carlson, the principal of Met Water Texas, the general partner of each of the Debtors.

**1.15. Claim** shall have the meaning given in 11 U.S.C. § 101(5).

**1.16. Class** shall mean a group of Claims or Interests classified together in accordance with 11 U.S.C. § 1123.

**1.17. Confirmation Date** shall mean the date upon which the Confirmation Order is entered by the Court.

**1.18. Confirmation Order** shall mean the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

**1.19. Court or Bankruptcy Court** shall mean the United States Bankruptcy Court for the Western District of Texas in which the Debtors' Chapter 11 cases are pending.

**1.20. Creditor** shall mean any party or entity having a claim against either or both of the Debtors, including but not limited to the following: Priority Creditors, Unsecured Creditors, and Insiders as herein defined.

**1.21. Debt** shall have the same meaning ascribed to it in § 101(12) of the Bankruptcy Code.

**1.22. Debtor** or **Debtors** shall mean Met Water and/or MWVR, the debtors in possession and proponents of this Plan of Reorganization, depending on the context.

**1.23. Derivative Suit** shall mean the lawsuit pending as of the Petition Date in the 215th District Court of Harris County, Texas, by and between Fox River Real Estate Holdings, Inc., Austin JSB, Ltd., M. Buckner Baccus, Daniel T. Cooper, Ross M. Cummings, Warren Demaio, Bruce F. Dickson, Keith K. Dickson, Eugene A. Frost, Jr., Mark A. Frost, and August J. Pellizzi (and R. Hal Moorman, Milton Y. Tate and Lynette Dahmann as Intervenors) on the one hand, and Mr. Carlson, Met Water Texas, and MWVR on the other.

**1.24. Disallowed** shall mean, when used with respect to a Claim, any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; (b) has been withdrawn by the holder of the Claim; or (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which the Bar Date has been established but no proof of Claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**1.25. Disposable Income** shall have the same meaning as set forth in 11 U.S.C. § 1191(d), and with respect to Met Water and MWVR, shall mean their respective income after deduction for their respective Expenses (including a reserve for such Expenses).

**1.26. Disputed** shall mean the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of Claim has been filed, or deemed filed under applicable law or order of the Bankruptcy Court; (b) an objection has been or may be timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the time that an objection has been or may be filed, and unless otherwise, formally allowed pursuant to an order of the Bankruptcy Court, a Claim shall be considered a Disputed Claim (i) if the amount or classification of the Claim specified in the proof of Claim exceeds the amount or classification of any corresponding Claim listed by Met Water or MWVR in its Schedules, to the extent of such excess; (ii) in its entirety, if any corresponding Claim is listed by such Debtor in its Schedules as disputed, contingent, or unliquidated; or (iii) in its entirety, if no corresponding Claim has been listed by such Debtor in its Schedules.

**1.27. Effective Date** shall mean fifteen (15) days from the Confirmation Date.

**1.28. Estate or Bankruptcy Estate** shall mean the bankruptcy estate of Met Water or of MWVR, depending on the context, created upon the commencement of the Bankruptcy Case pursuant to § 541 of the Bankruptcy Code.

**1.29. Expenses** shall mean the post-Confirmation ongoing expenditures of either or both of the Debtors that are necessary for the continuation, preservation or operation of their business,

including but not limited to their ongoing payments to lessors, their ongoing litigation and reorganization expenses, and any anticipated Administrative Expense required to be paid upon Allowance of such Claim.

**1.30.** **First Payment Date** shall mean the date that the first payment to General Unsecured Creditors under the Plan is required to be made; the First Payment Date for Met Water under this Plan is the first business day of the month following the first full month after the later of: (i) the Effective Date or (ii) the date sales revenues from the Vista Ridge Project are first received by Met Water, and the First Payment Date for MWVR under this Plan is the first business day of the month following the first full month after the Effective Date.

**1.31.** **Impaired** shall have the same meaning as set forth in § 1124 of the Bankruptcy Code.

**1.32.** **Investors** shall mean those persons who advanced funds, directly or indirectly, to Met Water beginning in 2004, for the purpose of enabling it to purchase groundwater leases for the 130 Project and/or the Vista Ridge Project.

**1.33.** **Litigation** shall mean any or all of the lawsuits in which Met Water or MWVR was a party on the Petition Date, and includes but is not limited to the Vista Ridge Litigation and the Derivative Suit.

**1.34.** **Litigation Assets** shall mean any claim, offset, Avoidance Action, cause of action of any kind, suit, controversy, right to payment, whether legal or equitable, known or unknown, liquidated or unliquidated, fixed or contingent, of, belonging to, owned by, or assertable by, Met Water and/or MWVR, whether listed in either or both of the Debtors' Schedules (as amended, supplemented and/or modified from time to time), the Plan, the Confirmation Order or any pleading in the Bankruptcy Case, including without limitation the scheduled claims against any or all of the Blue Water Parties, Vista Ridge and/or the Trust, and the plaintiffs' claims in the Derivative Suit.

**1.35.** **Litigation Claims** shall mean any claim, offset, cause of action of any kind, suit, controversy, or right to payment arising before the Petition Date, whether legal or equitable, known or unknown, liquidated or unliquidated, fixed or contingent, of any person against Met Water and/or MWVR, whether filed as a proof of claim or listed in the either or both of the Debtors' Schedules (as amended, supplemented and/or modified from time to time), the Plan, the Confirmation Order or any pleading in the Bankruptcy Cases, including without limitation the scheduled or filed claims of any or all of the Blue Water Parties and Vista Ridge.

**1.36.** **Met Water** shall mean Metropolitan Water Company, L.P., the debtor in possession in Case No. 21-10903 and one of the joint proponents of this Plan.

**1.37.** **Met Water Texas** shall mean Metropolitan Water Company of Texas, L.L.C., the general partner of Met Water and of MWVR.

**1.38.    MWVR** shall mean Met Water Vista Ridge, L.P., the debtor in possession in Case No. 21-10904 and one of the joint proponents of this Plan.

**1.39.    Petition Date** shall mean November 22, 2021, the date that the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code, commencing these jointly administered cases.

**1.40.    Plan** shall mean this Chapter 11 Plan of Reorganization, including any modification, amendments or supplements thereto.

**1.41.    Plan Disbursement Agent** shall mean that person that delivers payments to Creditors under the Plan; if the Plan is confirmed under § 1191(a) of the Bankruptcy Code, the Debtors shall be the Plan Disbursement Agents, and if it is confirmed under § 1191(b) of the Code, the Subchapter V Trustee shall be the Plan Disbursement Agent.

**1.42.    Plan Term** shall mean that period after the Effective Date during which payments are being made to Creditors; the Plan Term for this Plan may vary according to the Debtor making Plan payments, and, as to each Debtor, will end on the earlier of: (i) the date that all Allowed Claims against that Debtor have been paid in full, or (ii) the date five (5) years from the First Payment Date of that Debtor.

**1.43.    *Pro Rata*** shall mean the proportion that any Allowed Claim in any class bears to the aggregate amount of all Allowed Claims in such class.

**1.44.    Production Payment Allocation Agreement** shall mean the Production Payment Allocation Agreement dated effective October 23, 2004, by and between Met Water and Met Water Texas.

**1.45.    Registry Funds** shall mean Met Water's first payment from the Vista Ridge Project that were interpleaded into the registry of the Washington County District Court on October 22, 2021, in the amount of $4,131,778.58 as of that date and including all accrued interest thereon.

**1.46.    SAWS** shall mean the City of San Antonio acting by and through the board of trustees of the San Antonio Water System, the entity that purchases water from the Vista Ridge Project to supply the City of San Antonio.

**1.47.    Subchapter V Trustee** shall mean Stephen W. Sather as the Subchapter V Trustee appointed by the United States Trustee in each of these jointly administered bankruptcy cases, or any successor to him.

**1.48.    Trust** shall mean the Burleson/Milam Master Lease Trust acting through its trustee, Wilmington Trust.

**1.49.    Unimpaired Claim** shall mean any claim or any class of claims that are not Impaired under the Plan. The term **Impaired** as used in this definition refers to and is governed by the language of § 1124 of the Code.

6

**1.50.   Unsecured Claim** shall mean any Allowed Claim against Met Water and/or MWVR for which the holder has no security for the repayment thereof, or the portion of an Allowed Secured Claim for which the security held by the holder of that claim is insufficient to fully satisfy the claim. This category includes all claims deemed unsecured pursuant to § 506(a) of the Code.

**1.51.   Vista Ridge** shall mean Vista Ridge, LLC.

**1.52.   Vista Ridge Litigation** shall mean the lawsuits pending in federal District Court of the Western District of Texas and in Texas State Courts as of the Petition Date, by and between Met Water and, sometimes, MWVR on the one hand, and one or more of the Blue Water Parties, Vista Ridge and/or the Trust, on the other hand, and shall include the Baldwin Lease Litigation and the Washington County Litigation.

**1.53.   Vista Ridge Project** shall mean the wellfield, pipeline, and associated infrastructure originating in Burleson and Milam Counties in Texas that supply water from certain of Met Water's groundwater leases to SAWS as the wholesale purchaser and residents of San Antonio as the ultimate consumers/purchasers.

**1.54.   Washington County Litigation**, part of the Vista Ridge Litigation, shall mean the lawsuit pending as of the Petition Date in the 21st District Court of Washington County, Texas, by and between Blue Water Systems, LP, and Blue Water Vista Ridge, LLC, on the one hand, and Met Water and MWVR on the other hand, with the Trust as intervenor and Blue Water 130 Project, LP as third-party plaintiff.

ARTICLE II

**DESCRIPTION AND BRIEF HISTORY OF EACH DEBTOR'S BUSINESS AND DESCRIPTION OF THE DEBTORS' ESTATES**

**Metropolitan Water Company, L.P.**

**2.01.**   Met Water is a Texas limited partnership formed in December of 1999. Its general partner is Metropolitan Water Company of Texas, L.L.C. ("Met Water Texas"), which is controlled by W. Scott Carlson ("Mr. Carlson"). Met Water was the original lessee under approximately 6500 groundwater leases, primarily in Burleson and Milam Counties in Texas.

**2.02.**   Met Water began acquiring groundwater leases in December of 1999. It initially marketed groundwater for sale itself, and later contracted with business partners to market groundwater for sale, including Blue Water Systems, LP.

**2.03.**     Also in 2004, it became apparent that the original funding from the limited partners of Met Water would not be sufficient to allow it to acquire the number of groundwater leases needed for the success of its business, so additional investors were sought and obtained by it and Met Water Texas for that purpose (the "Investors").  With the knowledge and acquiescence of the existing limited partners, more than $6 million in additional capital was raised from the Investors and contributed to Met Water. In exchange, the Investors are entitled to be paid by Met Water Texas a portion of the production payments that it receives from Met Water.

**2.04.**     The first water sales from Met Water's groundwater leases occurred in 2011, when a 53-mile pipeline from Burleson County to eastern Travis County was completed.  That water supply project, referred to by the participants as the 130 Project, currently produces approximately 3–4 million gallons of water per day to several customers.

**2.05.**     As of the filing of this Plan, approximately 451 of Met Water's groundwater leases are not yet producing. Almost all of the approximately 304 producing groundwater leases are being used to provide water to various communities in those and surrounding counties as part of the "130 Project" (the wellfield, pipeline, and associated infrastructure for the supply of water to wholesale water purchasers). The few leases under which Met Water is lessee which are not part of the 130 Project are held by delay rentals or are paid-up leases still within their primary terms.

**2.06.**     Met Water is current on all of its payments to lessors on its groundwater leases that are part of the 130 Project.

**2.07.**     Met Water also holds reversionary lessee's interests in an additional approximately 1,300 groundwater leases in Burleson County and Milam County. In October 2014, the Debtor transferred the lessee's present interests in these leases, ultimately to the Burleson/Milam Master Lease Trust (the "Trust"), for the purpose of financing a regional water supply project to supply

water to the City of San Antonio, Texas (the "Vista Ridge Project"). In exchange for such transfer, Met Water is entitled to receive production payments from the Vista Ridge Project. The Vista Ridge Project, and Met Water's participation in the Project and right to receive each and every one of those payments are, among other things, the subjects of a number of lawsuits in Texas State Courts between Met Water and, sometimes, MWVR on the one hand, and one or more of the Blue Water Parties, Vista Ridge and/or the Trust, on the other hand (collectively, the "Vista Ridge Litigation").

2.08.    In particular, the Blue Water Parties claim (among other things) that Met Water is not entitled to its payments to the extent that it is liable to or otherwise owes one or more of the Blue Water Parties, and because of those claims the Trust interpleaded Met Water's first payment from the Vista Ridge Project, in the amount of $4,131,778.58 (as of October 22, 2021[2]) into the registry of the Washington County District Court, one of the Courts where the Vista Ridge Litigation was pending as of the Petition Date (the "Registry Funds"). The Registry Funds, which Met Water claims and no party disputes are its funds, remain in that Court's registry as of the filing of this Plan.

2.09.    To the best of Met Water's knowledge, all of the payments under the Vista Ridge Project leases are current, although it is not privy to the administration of those leases so long as it holds only reversionary interests in them. The reversionary interests are not expected to revert to Met Water until the end of the Vista Ridge Project contracts to supply water to SAWS, which are expected to last at least sixty (60) years.

---

2. These funds in the registry of the Court continue to accrue interest.

### Met Water Vista Ridge, L.P.

**2.10.**   MWVR is a Texas limited partnership formed in July of 2015. Its general partner is also Met Water Texas, which is controlled by Mr. Carlson. MWVR is the lessee under three groundwater leases in Burleson County, Texas. MWVR came into ownership of the three groundwater leases beginning in 2016.

**2.11.**   Two of MWVR's leases are not producing and are still within their primary terms. MWVR's third lease, referred to herein as the "Baldwin Lease," is the subject of litigation with the Blue Water Parties and Vista Ridge, which claim that MWVR and/or Met Water should be compelled to transfer that lease to the Blue Water Parties (the "Baldwin Lease Litigation"). There are two wells on that lease that are producing, but the water being withdrawn is being taken and sold by Vista Ridge without the consent of MWVR and without compensating it. Title to the Baldwin Lease and entitlement to the water withdrawn from the property covered by that Lease is the subject of litigation pending as of the Petition Date in federal District Court in the Western District of Texas (the "Baldwin Lease Litigation"), and the issue of whether MWVR should be compelled to convey that Lease to Blue Water Vista Ridge, LLC, (which would in turn sublease that interest to Vista Ridge and then assign that interest to the Trust) is one of the subjects of the Washington County Suit in Texas State Court, as well as the Baldwin Lease Litigation in federal District Court, both of which were pending as of the Petition Date.

ARTICLE III

**BANKRUPTCY**

**3.01.**   On November 22, 2021 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code, which commenced their respective bankruptcy cases. Each of the Debtors, as a debtor in possession, continues to manage its assets and financial affairs and operate its business. That includes owning the lessees'

interests under their groundwater leases and administering some of those interests, and prosecuting and defending claims in litigation (including litigation by and against the Blue Water Parties and Vista Ridge with respect to those interests and other matters).

**3.02.** The following "administrative" matters have occurred in the Debtors' cases since the Petition Date:

(a)  On November 23, 2021, Stephen W. Sather was appointed Subchapter V Trustee in each of the cases. The Trustee's Motion for Post-Petition Security Deposit was granted on February 1, 2021.

(b)  On November 24, 2021, after expedited hearings, orders were entered granting Met Water's Motions for Authority to Maintain Certain Pre-Petition Bank Accounts and for Authority to Timely Make Pre-Petition Royalty and Delay Rental Payments.

(c)  On November 29, 2021, after an expedited and contested hearing, an order was entered granting the Debtors' Motion to Jointly Administer their cases.

(d)  The Section 341 Creditors Meeting was conducted and concluded by the United States Trustee on December 17, 2021. The Debtors have filed their Small Business Debtor documents and, as of the filing of this Plan, are current in the filing of their monthly operating reports.

(e)  On January 18, 2022, the status conferences required in Subchapter V Chapter 11 cases were held and concluded in each of the Bankruptcy Cases.

(f)  On January 19, 2022, an order was entered approving the Debtors' employment of B. Weldon Ponder, Jr., and Catherine Lenox as bankruptcy counsel.

(g)  On February 7, 2022, Met Water filed a Motion to Keep Open, But Not Use, Certain Pre-Petition Bank Accounts. That matter is pending as of the filing of this Plan.

(h)  The Debtors have timely filed this joint Plan within 90 days of the Petition Date.

**3.03.** The following contested matters have been resolved since the Petition Date:

(a)  On December 3, 2021, the Blue Water Parties filed a Motion for Relief from Automatic Stay seeking to pursue the Washington County Litigation.  On December 9, 2021, the Debtors removed that suit from that Court to the Bankruptcy Court.  The Blue Water Parties, joined by Vista Ridge and the Trust, requested the Court to remand the suit, and on January 7, 2022, the Court held an expedited hearing on the Motion for Relief from Automatic Stay and the Motion to Remand.  At the conclusion of that hearing, the Court ruled that the suit would be sent back to

Washington County District Court, and on that date an order was entered granting the Motion for Relief from Automatic Stay and remanding the suit, except as to collection of any judgment entered against either or both of the Debtors.

       (b)     After a contested hearing and with some conditions, on January 19, 2022, the Court approved the Debtors' employment of Howry Breen & Herman, L.L.P., as their Special Litigation Counsel.

       (c)     In preparation for the hearing on its Motion for Enforcement of the Automatic Stay (*see* below on pending contested matters), MWVR filed a notice of intent to depose SAWS, and SAWS in response filed a Motion to Quash the subpoena it received for that deposition. The hearing on the Motion to Quash was held on February 15, 2022, and the Bankruptcy Court ruled that the deposition and document production would go forward as noticed with limited exceptions.

    **3.04.**    Finally, the following contested matter is pending as of the filing of this Plan: MWVR's Motion for Enforcement of the Automatic Stay, by which it seeks an order holding Vista Ridge in contempt for its continuing violation of the stay by withdrawing and selling water from the Baldwin Lease, without the consent of MWVR and without compensating it. MWVR also is requesting the Bankruptcy Court to impose a fine on Vista Ridge for each day it continues to violate the stay by such actions. The Blue Water Parties and Vista Ridge have filed Responses in opposition to MWVR's Motion and it is set for expedited hearing on February 24, 2022.

ARTICLE IV

**THE DEBTORS' PLAN**

    **4.01.**    The Plan contemplates the payment in full of all Allowed Claims, by the distribution to their Creditors of proceeds from the sales of water from the Debtors' groundwater leases, which they will assume. Such payments will also be made from any recovery from any of the Litigation or Litigation Assets, and MWVR may borrow from its general partner to make its initial Plan payment.

## **Unclassified Claims**

**4.02.**   Administrative Expenses. The administrative expenses of the Debtors' respective Bankruptcy Cases allowed pursuant to § 503(b) of the Code and given priority pursuant to § 507(a)(1) of the Code shall be paid in full upon the later of the Effective Date or upon entry of an order allowing the Administrative Expense, unless otherwise agreed to in writing between the relevant Debtor and the holder of such Allowed Claim. The deadline for filing a claim for an Administrative Expense, other than professional fee applications, shall be thirty (30) days from Confirmation. The deadline for filing a claim for an Administrative Expense that is a professional's fees and/or expenses, shall be one hundred twenty (120) days from the Effective Date. The Administrative Claims in these Bankruptcy Cases are those which will be owed to Debtors' counsel, to their Special Litigation Counsel, and to Met Water's accountant, and those which will be owed to the Subchapter V Trustee. Such Claims are estimated as of the filing of this Plan to total $270,000 as of Confirmation.

**4.03.**   Priority Tax Claims. The IRS has filed a proof of claim in Met Water's Bankruptcy Case for $23,992.00, for estimated WT-FICA taxes for the first and third quarters of 2021. Met Water has filed the tax returns for those periods and fully paid the tax liability shown by those returns. The IRS is expected to withdraw its proof of claim, but if it does not, Met Water will object to it.  Neither of the Debtors, therefore, anticipate there will be any priority tax claims to be paid under the Plan.

## **Classified Claims and Interests**

**4.04.**   Claims against the Debtors, other than Administrative Expense Claims and Priority Tax Claims, and Interests in the Debtors are classified by each Debtor by priority and type. The

treatment described below shall apply to all Claims or Interests of the given Class against or in each Debtor.

> Class 1: All Allowed General Unsecured Claims against Met Water
>
> Class 2: All Allowed General Unsecured Claims against MWVR
>
> Class 3: All Allowed Equity Interests in Met Water
>
> Class 4: All Allowed Equity Interests in MWVR

## Treatment of Claims

**4.05.** <u>Class 1: Impaired</u>.  The Allowed General Unsecured Claims against Met Water shall be paid in full over the Plan Term. In particular, the Plan Disbursement Agent shall pay Met Water's Disposable Income *Pro Rata* to its Creditors with Allowed General Unsecured Claims against it, until the earlier of five (5) years from the First Payment Date (see below) or the date such Claims have been paid in full. Such payments shall commence on the first business day of the month following the first full month after the later of:

> (i)      the Effective Date, or
>
> (ii)     the date revenues from water sales from the Vista Ridge Project are first received by Met Water

(hereinafter Met Water's "First Payment Date"). Payments after the First Payment Date will be made annually, on the anniversary of the First Payment Date, except for an additional payment that will be made from Met Water's Disposable Income, if any, received from the Registry Funds, which payment to Creditors will be made on the first business day of the month following the first full month after Met Water's receipt of such Funds.

**4.06.** <u>Class 2: Impaired</u>. The Allowed General Unsecured Claims against MWVR shall be paid in full over the Plan Term. In particular, the Plan Disbursement Agent shall pay MWVR's Disposable Income *Pro Rata* to its Creditors with Allowed General Unsecured Claims against it,

until the earlier of five (5) years from the First Payment Date (see below) or the date such Claims have been paid in full. Such payments shall commence on the first business day of the month following the first full month after the Effective Date (hereinafter MWVR's "First Payment Date"). Payments after the First Payment Date will be made annually, on the anniversary of the First Payment Date.

**4.07.** <u>Class 3: Unimpaired</u>. The holders of Allowed Equity Interests in Met Water shall retain those Interests and receive payments from Met Water according to the terms of their agreements governing their Interests and Texas law. In accordance with such agreements and Texas law, no payments shall be made during the Plan Term—i.e., until payment in full of all Allowed Claims.

**4.08.** <u>Class 4: Unimpaired</u>. The holders of Allowed Equity Interests in MWVR shall retain those Interests and receive payments from MWVR according to the terms of their agreements governing their Interests and Texas law. In accordance with such agreements and Texas law, no payments shall be made during the Plan Term—i.e., until payment in full of all Allowed Claims.

## <u>Other Payment Provisions of the Plan</u>

**4.09.** <u>Payments to Creditors with Claims Not Yet Allowed as of the First Payment Date</u>. Payments under the Plan on a General Unsecured Claim that is not allowed until after the First Payment Date shall commence on the next date that payments are due under the Plan after the allowance of such claim by final, non-appealable judgment and/or order. Until such newly Allowed General Unsecured Claim is paid the same *Pro Rata* amount previously received by all other Creditors in its Class, no other Allowed General Unsecured Claims in the Class that have received more shall be paid.

**4.10.** Payments by the Subchapter V Trustee in the Event of Confirmation pursuant to 11 U.S.C. § 1191(b). If this Plan is confirmed with the required consent of each Debtor's Creditors, the payments will be made to the Creditors by the respective Debtor that owes them, as one of the Plan Disbursement Agents. If it is not confirmed with the required consent of Met Water's Creditors, not less than ten (10) business days prior to the scheduled payment date, Met Water will turn over to the Subchapter V Trustee the funds needed to make the payments and the amounts to be paid and addresses of all Creditors to be paid on that payment date, and the Subchapter V Trustee, as Plan Disbursement Agent, will make those payments. Similarly, if this Plan is not confirmed with required consent of MWVR's Creditors, not less than ten (10) business days prior to the scheduled payment date, MWVR will turn over to the Subchapter V Trustee the funds needed to make the payments and the amounts to be paid and addresses of all Creditors to be paid on that payment date, and the Subchapter V Trustee, as Plan Disbursement Agent, will make those payments. If the Subchapter V Trustee is required to make payments under the Plan, he shall be paid reasonable compensation for his time and reimbursed for his reasonable expenses incurred in making those payments, as agreed between the Debtors and the Subchapter V Trustee. Absent such agreement, the Bankruptcy Court shall decide such compensation and expense reimbursement.

**4.11.** Notwithstanding any other provision set forth in this Plan, each of the Debtors and any particular Creditor provided for in this Plan may enter into any agreement after Confirmation that modifies that Creditor's treatment and payment terms, so long as such agreement is reduced to writing, is signed by the relevant Debtor and such Creditor's authorized representative, does not provide for treatment that produces a recovery under this Plan better than the other Creditors in

the same class. In such event, any modified agreement shall be deemed to supersede the terms of this Plan.

    **4.12.** <u>Delivery of Distributions</u>. All distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the relevant Debtor's Bankruptcy Case or, if the distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States mail, postage prepaid, addressed as required in the preceding sentence. If any distribution is returned as undeliverable, it shall be held by the relevant Debtor (or the Subchapter V Trustee, if applicable) (hereinafter as the "Plan Disbursement Agent") and no further distribution shall be made on account of such Allowed Claim unless and until the Plan Disbursement Agent is notified of such holder's then current address, at which time all missed distributions shall be made to the holder of such Allowed Claim. However, all notices to the Plan Disbursement Agent reflecting new or updated addresses for undeliverable distributions shall be made on or before one hundred twenty (120) days after the date when the Plan Disbursement Agent files with the Bankruptcy Court a notice of the unsuccessful attempted distribution or such longer period as the Plan Disbursement Agent may fix in the exercise of their sole discretion. After such date, all unclaimed property shall revert to the relevant Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

    **4.13.** <u>Time Bar to Cash Payments</u>. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Plan Disbursement Agent by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect

of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Plan Disbursement Agent may fix. After such deadline has passed, the Plan Disbursement Agent has filed a subsequent related notice with the Bankruptcy Court, and no claim in respect to such a voided check has been made within ten (10) days thereafter, all Claims in respect of void checks shall be discharged and forever barred.

ARTICLE V

**MEANS OF IMPLEMENTATION**

**5.01.**    Implementation of the Debtors' Plan depends on the continuing operation of its groundwater leases, the continuation of the Debtors' rights and obligations under their contracts, the final resolution of the Litigation Claims and the realization of certain of the Litigation Assets.

**Treatment of the Debtors' Executory Contracts and Groundwater Leases**

**5.02.**    Executory Contracts. Except with regard to executory contracts to which one or more of the Blue Water Parties are party, effective as of Confirmation, the Debtors shall assume each and every executory contract to which either or both are party. A list of known executory contracts, and the other parties to them, are listed in each Debtor's Schedule G filed in its Bankruptcy Case. However, even if not listed in Schedule G, the Debtors intend to assume each and every executory contract to which either or both are party, and confirmation of the Plan shall act as assumption as to each such contract, whether listed in Schedule G or not, unless a contract is expressly identified as rejected in the Confirmation Order.  The process for such assumption, including the determination of cure amounts, if any, is described below in Sections 5.06-5.10.

**5.03.**    All Debtors' executory contracts to which one or more of the Blue Water Parties are party will be assumed or rejected as identified and specified on the Schedules of Assumed or Rejected Executory Contracts to be included in a Plan Supplement. Those include, but are not limited to, the Groundwater Resources Marketing Agreement dated Sept. 11, 2006 (Schedule G

line 2.29); the Partial Assignment of Groundwater Leases dated Feb. 14, 2008 (Schedule G line 2.30); the Assignment of Met Water Lease Rights dated Oct. 14, 2014 (Schedule G line 2.33); the Post-Closing Agreement dated as of May 11, 2016 (Schedule G lines 2.23, 2.25, 2.28, 2.32); the Non-disturbance Agreement dated June 22, 2018 (Schedule G lines 2.24, 2.27); and the Cooperation and Non-disturbance Agreement dated June 22, 2018 (Schedule G lines 2.26, 2.31, 2.34, 2.357).

**5.04.** <u>Unexpired Leases</u>. Effective as of Confirmation, Met Water shall assume its office lease and each of the Debtors will assume each and every groundwater lease to which it is a party, including those that are part of the Vista Ridge Project. The leases that are not part of the Vista Ridge Project, and the parties to them, are listed in each Debtor's Schedule G filed in its Bankruptcy Case. Met Water's reversionary interests in the groundwater leases that are part of the Vista Ridge Project are listed in its Schedule B. The process for such assumption, including the determination of cure amounts, if any, is described below in Sections 5.06-5.10.

**5.05.** Met Water requested and received authorization from the Bankruptcy Court to continue to pay its lessors after the Petition Date, and has done so. With assumption of its leases, Met Water's payments to lessors that it is currently making will continue uninterrupted according to the terms of those leases. Likewise, with MWVR's assumption under the Plan of its groundwater leases, it will make the payments, if any, required to be made to its lessors under the terms of its leases.

**5.06.** <u>Process for Assumption</u>. The Plan Supplement will be filed before the deadline for voting on and objecting to the Plan. Notice of the assumption of the Debtors' executory contracts and groundwater leases will be provided to the other parties to those contracts and leases prior to Confirmation and such assumption. The Debtors believe they are not in default of any of their

executory contracts and unexpired leases and are current with respect to all payments they are required to make under those contracts and leases. Nevertheless, prior to Confirmation each non-Debtor party to an executory contract or unexpired lease will have an opportunity (and a deadline) to object to the assumption and, other than the non-Debtor parties to those contracts treated in Section 5.07 below, to dispute that Met Water or MWVR is not in default and therefore that no cure payment is required, and to provide evidence of any cure amount claimed to be owed. The rights of the non-Debtor parties to those contracts treated in Section 5.07 to dispute cure amounts and their timing are discussed in that Section below.

     **5.07.** With respect to certain of the Debtors' executory contract(s) with the Blue Water Parties, it has been alleged in the Litigation that the Debtors have breached those agreements. Issues of whether either or both of the Debtors have breached any executory contract with the Blue Water Parties, and the amount of damages, if any, for any such breach(es), will be determined in the non-bankruptcy courts where the Litigation is pending. *See* Section 5.11 below. After such determination and liquidation by the entry of a final, non-appealable judgment, the Debtors shall have ninety (90) days to file a motion with the Bankruptcy Court to determine the amount(s) needed for the Debtor(s) to cure any breach/default of any executory contract that the Debtor(s) has assumed,[3] and the timing of any such cure. Any non-Debtor party to any such executory contract with the Blue Water Parties shall have the right to contest the amount and timing of any cure by objecting to the Debtor's motion at that time.

     **5.08.** Finally, because Met Water will assume its Production Payment Allocation Agreement with Met Water Texas, and that Agreement requires Met Water Texas to make the

---

3. With respect to those executory contracts with one or more of the Blue Water Parties that a Debtor rejects, the damages determined by the non-bankruptcy court will be subject to the procedures described in Sections 5.09 and 5.11 and/or the general claims allowance process as described in Article

production payments to the Investors from the payments it receives under that Agreement, any cure amount, and all future production payments owed to the Investors, shall be made by Met Water Texas. In the event and to the extent that Met Water is forced to make any of those payments, Met Water Texas shall reimburse it immediately.

5.09.   Other than a Litigation Claim, a proof of a claim arising from the rejection of an executory contract must be filed no later than thirty (30) days after the date of the order confirming this Plan. Any such Allowed claim arising from the rejection of an executory contract by Met Water shall be treated as a Class 1 Claim, and any arising from a rejection by MWVR shall be treated as a Class 2 Claim.

5.10.   Except as provided with respect to the executory contracts described in Section 5.07 above, any disputed issue regarding assumption will be decided by the Bankruptcy Court at Confirmation.

### Liquidation and Allowance of Litigation Claims

5.11.   No claim shall be paid under the Plan until it is determined, liquidated, and allowed, by final, non-appealable judgment or order. In particular, Claims that are Disputed Claims will be paid after they are allowed as follows.

(a)   The Litigation Claims of Creditors, other than those listed in Sections 5.11(b) and (c) below, will be determined and liquidated (along with any Litigation Assets) in the non-bankruptcy courts in which they are pending:

(i)   Washington County Litigation, including the appeals pending in the Fourteenth Court of Appeals, Houston, Texas as Cause Nos. 14-20-00524-CV and 14-21-00403-CV;

(ii)   the Baldwin Lease Litigation;

(iii)   Cause No. D-1-GN-18-001582 pending in the 261st Judicial District, Travis County, Texas, and styled as *Metropolitan Water Company,*

*L.P., and Metropolitan Water Vista Ridge, L.P., v. Blue Water Systems, LP, and Blue Water Vista Ridge, LLC, and Blue Water 130 Project, LP*;

(iv) Cause No. D-1-GN-20-003381 pending in the 201st District Court of Travis County, Texas, and styled as *Metropolitan Water Company, L.P., and Metropolitan Water Vista Ridge, L.P., v. Blue Water Systems, LP, Blue Water 130 Project, LP, and Blue Water Vista Ridge, LLC*; and

(v) Cause No. D-1-GN-21-001598 pending in the 126th Judicial District Court of Travis County, Texas, and styled as *Metropolitan Water Company, L.P., v. Blue Water Vista Ridge, LLC, and Wilmington Trust, N.A., as Trustee for the Burleson/Milam Master Lease Trust, v. Keller Shoreline Investments, Ltd., and Paul W. Keller*, including the appeal pending in the Third Court of Appeals, Austin, Texas, as Cause No. 03-21-00206-CV.

After such determination and liquidation by final, non-appealable judgment, the holder of the Claim shall have thirty (30) days to amend its proof of claim to be consistent with the judgment. The Debtors shall have sixty (60) days from such amendment to file an objection in the Bankruptcy Court to allowance of the amended Claim on any grounds not precluded by such judgment. Such allowance or disallowance shall be governed by the procedures of the claims allowance process described in Article IX below.

(b) The Litigation Claims of the Investors against the Debtors that are asserted in the following suits (along with any Litigation Assets of either or both of the Debtors asserted in that Litigation) are duplicative of the Claims filed by the Investors in the Bankruptcy Cases and, therefore, along with those claims, will be determined, liquidated, and allowed or disallowed in the claims allowance process described in Article IX below:

(i) Cause No. 29386 pending in the 21st Judicial District, Burleson County, Texas, and styled as *H&V Holdings, Ltd. (for itself and as agent or attorney-in-fact for Austin Aqua Management, LLC, Cap Tex Water Partners, LLC, Central Texas Water, LP, Rick Jamison, and Simsboro Water, LLC), and Jon Hildebrand and Harry Vowell v. Metropolitan Water Company, L.P., Metropolitan Water Company of Texas, LLC, and W. Scott Carlson*; and

        (ii)     Cause No. 30393 pending in the 335th Judicial District Court of Burleson County, Texas and styled as *David J. Weber, Wallace J. Luke, III, and Steven J. Hubbell v. Metropolitan Water Company, L.P., Metropolitan Water Company of Texas, LLC, and W. Scott Carlson.*

Following Confirmation, either or both of the Debtors will request abatement of each of the above-listed suits pending final non-appealable orders on allowance or disallowance of the Claims, and after the entry of such orders, either or both of the Debtors will request dismissal of each of the above-listed suits as mooted by the orders entered in the claims allowance process.

        (c)     Finally, the Claims of Creditors asserted in the Derivative Suit are Litigation Assets and property of Met Water's Bankruptcy Estate, and so their prosecution will be determined and directed by Met Water after Confirmation. In particular, Met Water will file a motion in the Derivative Suit to be substituted for the original plaintiffs in that Suit, and then a motion to abate the Suit until the earlier of the fourth (4th) anniversary of the Effective Date or the date all Allowed Claims against Met Water have been paid in full. If all Creditors have not been paid in full under the Plan by the fourth (4th) anniversary of the Effective Date and if, in Met Water's business judgment, it appears that all Creditors will not be paid in full during the Plan Term, then the Derivate Suit will proceed to a final, non-appealable judgment. Any recovery on any final, non-appealable judgment entered in favor of Met Water will be distributed to Creditors according to the terms of the Plan. If, on the other hand, all Creditors have been paid in full by the fourth (4th) anniversary of the Effective Date or if, in Met Water's business judgment, it appears that all Creditors will be paid in full during the Plan Term, then Met Water may opt to abandon its claims asserted in the Derivative Suit.

ARTICLE VI

**DEBTORS' ABILITY TO MAKE PLAN PAYMENTS**

**6.01.**     Exhibits A and B hereto contain projections covering the five years from the First Payment Date of each Debtor, based on stated sets of assumptions, regarding the amounts and timing of the Debtors' gross income from all sources and their Expenses (including reserves for Expenses), their Disposable Income, and Plan payments to be made over the Plan Term (the "Projections").  The Projections are the Debtors' best estimates of how much, and when, payments may occur under the Plan, but given the large number of variables that will be determined by factors beyond the Debtors' control (i.e., amounts of water sales and sales revenues, and the outcomes and timing of the various pieces of Litigation), the Projections of necessity are only examples of how much, and when, payments to Creditors under the Plan may occur.

**6.02.**     The Projections contemplate that the Debtors will continue to prosecute and defend the Litigation involving the Blue Water Parties post-Confirmation and, prior to making payments to Creditors under the Plan, will pay their respective ongoing expenditures necessary for the continuation, preservation or operation of their business, including but not limited to their ongoing payments to lessors, their ongoing litigation and reorganization expenses, and any anticipated Administrative Expense required to be paid upon allowance of such Claim (the "Expenses"). Specifically, before making payments under the Plan to Creditors (or to the Subchapter V Trustee if he is the Plan Disbursement Agent), each Debtor shall accumulate from its income and hold in reserve sufficient funds to pay its respective Expenses anticipated to come due during the period before its next Plan payment is due. Met Water's and MWVR's income, after deduction for their respective Expenses (including the reserve for such Expenses) is their respective "Disposable Income.  As required by 11 U.S.C. §§ 1190(1)(C) and 1191(c)(2), payments to Creditors holding Allowed Claims are based on the projected Disposable Income of the Debtors as set forth in

Exhibits A and B, which include all projected income from the operations of the Debtors and include the Registry Funds that will be turned over to Met Water immediately after Confirmation and Met Water's payment for its share of 2021 water sales proceeds from the Vista Ridge Project, but do not, because of the uncertainties involved, include income from the prosecution, liquidation, and collection of the Debtors' Litigation Assets other than MWVR's claims in the Baldwin Lease Litigation—although as required by the Bankruptcy Code, under the Plan any such proceeds will contribute to the Debtors' Disposable Income and, to that extent, be used to fund the Plan. Even without including the proceeds of Litigation Assets other than MWVR's claims in the Baldwin Lease Litigation, Exhibits A and B shows that all claims can be expected to be paid in full within five years after the Effective Date.

     **6.03.**  <u>Met Water's Income, Expenses, Reserves, Disposable Income, and Plan Payments</u>. In particular, the Projections show that Met Water can reasonably be expected to receive approximately $950,000 in gross income during the first year of the Plan Term from water sales from the 130 Project only, and that that amount may be projected to remain substantially the same for the Plan Term. In addition, the Registry Funds currently total more than $4.1 million and are indisputably Met Water's share of sales revenue from the Vista Ridge Project for 2020. The Registry Funds will be turned over to Met Water immediately after Confirmation, and used by Met Water to pay its Expenses, including funding its reserve, and to make its Plan payments. Beginning in April or May 2022, Met Water also expects to receive substantial annual payments for water sales from the Vista Ridge Project during the Plan Term, estimated at this time very conservatively in the Projections, because of the limited information available to Met Water, at $4.5 million per year, which should be the minimum Met Water receives. Finally, Met Water will receive proceeds from Litigation or Litigation Assets only when the relevant Litigation is concluded, by trial and

appeal and final judgment, or by settlement, and only to the extent that Met Water prevails in the Litigation or settles on terms that would result in payment(s) to it.  Those contingencies, because of their uncertainty as to likelihood, amounts and timing, are not included in Exhibit A.

**6.04.**    As to its Expenses, Met Water estimates in the Projections that it will pay the lessors on the 130 Project leases approximately $135,500.00 during the first year of the Plan Term, assuming gross revenues of during that year of $950,000, as described above. Again, those amounts are not expected to change materially during the Plan Term. Met Water currently has no obligation to make payments to lessors under the Vista Ridge Leases and is not expected to have any during the Plan Term. Including the 130 Project lessors' royalty payments, Met Water projects Expenses of averaging $135,712.26 per month for the first year of the Plan Term.  (These Expenses include ongoing legal expenses for the Litigation and reorganization of Met Water.) As noted on the Projections, certain of those Expenses are assumed to increase by 3% per year during the Plan Term.

**6.05.**    <u>MWVR's Income, Expenses, Reserves, Disposable Income, and Plan Payments</u>. As of the filing of this Plan, MWVR is receiving no income from any source.  Two of its three leases are not producing (they are within their primary terms). Upon information and belief, Vista Ridge is currently receiving approximately $781,000.00 per month in sales revenues from water it is withdrawing from MWVR's third lease, the Baldwin Lease, and selling to SAWS, without the consent of MWVR and without compensating it.[4]  MWVR has requested the Bankruptcy Court to, among other things, fine Vista Ridge $15,000.00 per day (to be amended to $30,000.00/day, to correct an arithmetic error), payable to MWVR or into the Registry of the Bankruptcy Court or some other escrow account, for each day it continues to violate the automatic stay and withdraw

---

4. *See* MWVR' Motion for Enforcement of the Automatic Stay for the factual basis for this estimate.

and sell water from the Baldwin Lease.  MWVR's Motion requesting such relief is set for hearing on February 24, 2022.

      **6.06.**    If MWVR does not have Disposable Income to make the Plan payment due on its First Payment Date, it may in its discretion opt to borrow $3,762.43 from Met Water Texas to make that payment.[5]  The balance of payments made by MWVR under the Plan will be funded by its Disposable Income and/or, in the event that MWVR is required to transfer the Baldwin Lease to the Blue Water Parties, the Plan payments required to be made by MWVR may be funded by Met Water to the extent it receives Disposable Income from the sales proceeds of the water taken from the transferred groundwater lease.

      **6.07.**    Scenario B-1 in Exhibit B in the Projections is one possible outcome of the Washington County Litigation and/or the Baldwin Lease Litigation with respect to the Baldwin Lease: that (1) MWVR retains its ownership of the Lease and that during the first two years of the Plan Term, while that Litigation is continuing, $30,000/day from a fine imposed on Vista Ridge is deposited into the Registry of the Bankruptcy Court and is available to pay any judgment for damages that MWVR is awarded, (2) in the third year it MWVR obtains a judgment determining that it has legal and equitable title to the Lease and is entitled to recover, and does recover, its damages for revenues from the Lease that it is owed, and MWVR pays all Claims in full with those funds, and (3) during the third and fourth years MWVR obtains the necessary permits and transportation, and finds buyers for, the groundwater from the Baldwin Lease, and (5) in the fifth year MWVR begins receiving the income that Vista Ridge is estimated to be currently receiving

---

5. It is anticipated that the sole General Unsecured Claim against MWVR that will be allowed by the time of the First Payment Date will be the $3,762.43 Claim of Howry Breen. *See* Section 6.09 below regarding repayment terms of any loan to MWVR from its general partner to make its initial Plan payment to the Class of Allowed General Unsecured Claims.

from the Lease ($781,000/month) and paying the associated expenses (royalties and transportation and O&M costs).

6.08.    Another possible outcome of the Litigation regarding the Baldwin Lease, reflected in Scenario B-2, is that MWVR will be required to transfer the Baldwin Lease to the Blue Water Parties, such that the Baldwin Lease becomes subject to all of the agreements governing the Vista Ridge Project. Under that scenario, Met Water would ultimately receive its portion of the sales revenues from the water produced by the Baldwin Lease, and would fund MWVR's payments under the Plan. Like Met Water, MWVR will receive proceeds from Litigation or Litigation Assets only when the relevant Litigation is concluded, by trial and appeal and final judgment, or by settlement, and only to the extent that MWVR prevails in the Litigation or settles on terms that would result in payment(s) to it.

6.09.    As to MWVR's expenses, it is not required to make payments to its lessors under the two leases that are ot yet producing, which are still in their primary terms. If the Baldwin Lease Litigation is determined in MWVR's favor, it will begin administering the Baldwin Lease and paying royalties, transportation costs and operation and maintenance costs of approximately $195,250.00 per month, based on the current water sales of $781,000.00/month. In the Projections, those Expenses (water sales and royalties and transportation and O&M costs) are included beginning in Year 3 of the Plan, and are not projected to change materially during the Plan Term. Including those Expenses, MWVR projects total Expenses averaging only about $5,000.00 per month for the first two years of the Plan Term, but almost $200,000.00/month for Years 3-5. As noted in the Projections, they assume that certain of those Expenses will increase by 3% per year during the Plan Term.  Finally, if MWVR borrows to make its first Plan payment, that loan shall

be repaid, with interest at the rate of 4.0% per annum, from MWVR's gross income, if and when received by it, as an Expense.

ARTICLE VII

**LIQUIDATION ANALYSES**

**7.01.** To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis of each Debtor is attached to the Plan as Exhibit C. As set forth therein, the payments by each Debtor under the Plan are projected to equal or exceed the expected proceeds from a liquidation of assets of such Debtor in a hypothetical Chapter 7 liquidation.

ARTICLE X

**ACCEPTANCE OR REJECTION OF PLAN**

ARTICLE VIII

**ACCEPTANCE AND CONFIRMATION OF THE PLAN**

**8.01.** <u>Classes Entitled to Vote</u>. Each Impaired Class of Claims is entitled to vote to accept or reject the Plan. The votes of Creditors in each such Class shall be tallied separately from those in other Classes. Any Unimpaired Class shall not be entitled to vote to accept or reject the Plan, but rather under § 1126(f) of the Bankruptcy Code is conclusively deemed to have accepted the Plan.

**8.02.** <u>Class Acceptance Requirement</u>. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

**8.03.** <u>Request Pursuant to § 1191(b)</u>. This Section shall constitute the request by each of the Debtors, pursuant to § 1191(b) of the Bankruptcy Code, for the Bankruptcy Court to confirm

this Plan notwithstanding the fact that the requirements of § 1129(a)(8), (a)(10) or (a)(15) of the Bankruptcy Code have not been met.

## ARTICLE IX
## **PROCEDURE FOR RESOLVING DISPUTED CLAIMS**

**9.01.**   Confirmation of the Plan is not *res judicata* of any claim or defense in any of the Litigation. Notwithstanding any language herein to the contrary, nothing in this Plan or its Confirmation will enjoin, discharge, prohibit or otherwise impede the authority and ability of the Blue Water Parties or any other party to any Litigation to seek and obtain entry of a final judgment against either or both of the Debtors; provided, however, that each Debtor reserves and preserves, and after the Effective Date shall have the right to object to and seek a determination from the Bankruptcy Court that (i) any portion of a final judgment against either or both of the Debtors reasonably allocable to post-petition interest, legal fees, expenses, and costs should not be part of an Allowed Claim, and (ii) no Creditors shall be entitled to exercise setoff or recoupment rights, if any, that it might have except in accordance with the terms and provisions of this Plan, as confirmed. Met Water also intends to object to the fully paid claim of the IRS in the event it is not timely withdrawn.[6]

**9.02.**   <u>Filing Objections</u>. The Subchapter V Trustee shall have no obligation to prepare, file or prosecute objections to claims. The Debtors shall be responsible for evaluating and, in their reasonable exercise of business judgment, pursuing, litigating, declining to pursue or compromising any objection to Claim. Unless otherwise provided in this Plan or the Confirmation Order, objections to Claims may be filed with the Bankruptcy Court and served upon each holder of the Claim to which an objection is filed not later than ninety (90) days after the Effective Date,

---

6. All the Debtors' required tax returns have been filed, and it is Debtors' position that the IRS's Claim is now zero.

unless such time period is extended by order of the Court. No distribution will be made on account of a Disputed Claim unless such Claim is allowed.

**9.03.** <u>Causes of Action Preserved and Prosecution Decisions</u>. The Debtors reserve and preserve all claims and causes of actions, Avoidance Actions, and the Litigation Assets, including without limitation Met Water's claims in the Derivative Suit and Cause No. D-1-GN-20-006113, pending in the 250th Judicial District Court of Travis County, Texas, styled *Blue Water Vista Ridge, LLC v. Vista Ridge, LLC v. Metropolitan Water Company, L.P.*, and MWVR's claims in the Baldwin Lease Litigation.

ARTICLE X
**MISCELLANEOUS PROVISIONS**

**10.01.** <u>Vesting of Assets</u>. On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in the Debtor with such title prior to the Effective Date, free and clear of all Claims and Interests.

**10.02.** <u>Retention of Jurisdiction</u>. Under §§ 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Cases of the Debtors and this Plan, to the fullest extent permitted by law, including, among other things, jurisdiction to:

> (i) allow, disallow, determine, subordinate, litigate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest (whether filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including, without limitation, whether any Claim includes fees, costs, or charges arising or incurred after the Petition Date, the compromise, settlement and resolution of any request for payment of any Administrative Expense Claim or Priority Claim, the resolution of any Objections to the allowance or priority of Claims or Equity Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any

31

appeal relating to any Objection to such Claim or Equity Interest to the extent permitted under applicable law;

(ii)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, including determining any dispute regarding reasonable compensation and reimbursed of reasonable expenses of the Subchapter V Trustee;

(iii)    hear and determine any and all adversary proceedings (including any declaratory action), motions, applications, and contested or litigated matters, including, but not limited to, the Litigation Assets and all causes of action, and consider and act upon the compromise and settlement of any Claim of or against either or both of the Debtors, any Litigation Asset or any cause of action;

(iv)    determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which either or both of the Debtors is or was a party, or with respect to which either or both of the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(v)    ensure that all distributions to holders of Allowed Claims under this Plan and the performance of the provisions of this Plan are accomplished as provided herein and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of this Plan;

(vi)    construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with § 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, other agreements or documents created in connection with this Plan, including, without limitation, the Confirmation Order, for the maintenance of the integrity of this Plan in accordance with §§ 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

(vii)    determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all exhibits and schedules to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(viii)    modify this Plan before or after the Effective Date pursuant to § 1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code and this Plan;

(ix)    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(x)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(xi)    determine any other matters that may arise in connection with or relating to this Plan and the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order;

(xii)    determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xiii)    hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(xiv)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case of either Debtor;

(xv)    determine and resolve controversies related to either or both of the Debtors or either or both of their Estates from and after the Effective Date;

(xvi)    hear and determine any other matter relating to this Plan;

(xvii)    enter orders discharging the Debtors; and

(xviii) enter a final decree closing these Bankruptcy Cases and reopening either or both of the Bankruptcy Cases for any purpose permitted by the Bankruptcy Code.

**10.03.**  <u>Adversary Proceedings and Retained Claims</u>. The Debtors reserve the right to begin or continue any adversary proceeding permitted under the Code and the applicable Federal Rules of Bankruptcy Procedure.

**10.04.**  <u>Modification of Plan</u>. This Plan may be modified or corrected upon motion of either or both of the Debtors pursuant to § 1193(a) prior to Confirmation. Modifications or corrections may be made without additional disclosure provided that the Court finds that the modifications or corrections do not adversely affect any Claim or Interest or classes of Claims or Interests. After the Confirmation Date either or both of the Debtors may modify the Plan upon order of the Court and in accordance with § 1193(b).

ARTICLE XI

**DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

**11.01.**  <u>Plan Creates New Obligations</u>. The obligations to Creditors in the Confirmed Plan replace those obligations to Creditors that existed prior to the Effective Date of the Plan. The obligations under the Confirmed Plan constitute a binding contractual promise that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under Texas law.

**11.02.**  <u>Discharge</u>. Each of the Debtors is entitled to a discharge under 11 U.S.C. § 1141(d)(1), made applicable herein pursuant to 11 U.S.C. § 1192, upon completion of all payments by that Debtor due within the Plan Term.  Each Debtor intends to request the Court to enter a discharge order upon completion of its Plan payments, after notice to all Creditors.

**11.03.**  <u>Legally Binding Effect</u>. The provisions of this Plan shall bind Creditors and holders of Equity Interests, whether or not they accept this Plan. On and after the Effective Date, except as provided in the Plan and the Confirmation Order, all holders of Claims shall be precluded and

forever enjoined from asserting any Claim against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date.

**11.04.** <u>Injunction</u>. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against either or both of the Debtors and their assets and properties, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order all persons who have held, may have held, hold, or may hold Claims against either or both of the Debtors are permanently enjoined on and after the Effective Date from

    (i)    commencing or continuing in any manner any action or other proceeding of any kind against either or both of the Debtors, with respect to any such Claim;

    (ii)    the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against either or both of the Debtors or the property of either;

    (iii)    creating, perfecting, or enforcing any encumbrance of any kind against either or both of the Debtors or the property of either, with respect to such Claim;

    (iv)    asserting any right of subrogation of any kind against any obligation due to either or both of the Debtors or the property of either Debtor or either or both of their Estates with respect to any such Claim; and

    (ii)    asserting any right of setoff or recoupment against either or both of the Debtors or either or both of their Estates except as specifically permitted by this Plan. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays, if any, provided for in these Bankruptcy Cases pursuant to § 105 or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

## ARTICLE XII

## **DEFAULT**

**12.01.** In the event of a non-monetary or monetary default by either or both of the Debtors under the Plan, the affected Creditor shall provide written notice of such default to the relevant Debtor(s) and its bankruptcy counsel by United States certified mail-return receipt requested, by United States first class mail, postage prepaid, and by e-mail. The Debtor(s) alleged to be in default shall have thirty (30) days to cure from the earlier to occur of:

> (i)     the date of receipt of the written notice sent by certified mail;
or

> (ii)    the date of receipt of the written notice sent by first class mail
to cure the default.

(For the purposes of the written notice by United States first class mail, postage prepaid, such notice will be deemed received five (5) days after depositing the same in the United States mail). In the event the Debtor(s) alleged to be in default do(es) not cure the default within the thirty (30) day period provided herein, the affected Creditor or holder of an Equity Interest shall be entitled to seek relief from the Bankruptcy Court or, if such Court does not exercise jurisdiction as to the matter, any other court of competent jurisdiction.

**12.02.** The Debtors must remain current with respect to all post-petition federal tax liability, including but not limited to making timely federal tax deposits, the timely filing of tax returns and the payment of all tax liabilities as required by applicable law during the term of the Plan. Failure to remain current with respect to one or more post-petition federal tax liabilities shall constitute an event of default under of the Plan.

**12.03.** Subject to the provisions of Section 12.01, upon any final and non-curable default of the Plan by the Debtor(s), if any, a Creditor may pursue any and all available state and federal rights and remedies as provided by law without further order of the Bankruptcy Court.

**12.04.**  In the event the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the following additional default provisions shall apply: Pursuant to 11 U.S.C. § 1191(c)(3), in the event that payments are not made by the Debtors as required by the Plan and Confirmation Order, Creditors and parties-in-interest shall have the right to seek dismissal or conversion of the defaulting Debtor's Bankruptcy Case.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: February 22, 2022.

Respectfully submitted,

METROPOLITAN WATER COMPANY, L.P.

By: METROPOLITAN WATER COMPANY
    OF TEXAS, L.L.C.

    By:   */ s / W. Scott Carlson*    .
        W. Scott Carlson, its Managing Member

and

MET WATER VISTA RIDGE, L.P.

By: METROPOLITAN WATER COMPANY
    OF TEXAS, L.L.C.

    By:   */ s / W. Scott Carlson*    .
        W. Scott Carlson, its Managing Member

*Drafted by:*

PLAN PROPONENTS and DEBTORS IN POSSESSION

   */ s / Weldon Ponder*    .
B. WELDON PONDER, JR., Attorney at Law
State Bar of Texas No. 16110400
4408 Spicewood Springs Road
Austin, Texas 78759
512.342.8222 / 512.342.8444 fax
welpon@austin.rr.com

and

   */ s / Catherine Lenox*    .
CATHERINE LENOX, Attorney at Law
State Bar of Texas No. 12204350
Post Office Box 9904
Austin, Texas 78766
512.689.7273 / 512.451-7273 fax
clenox.law@gmail.com

COUNSEL FOR PLAN PROPONENTS
and DEBTORS IN POSSESSION,
METROPOLITAN WATER COMPANY, L.P.,
and MET WATER VISTA RIDGE, L.P.

## CERTIFICATE OF SERVICE

I hereby certify that February 22, 2022, a true and correct copy of the foregoing Plan was served via email on the persons named below, at the addresses listed.

_/ s / Weldon Ponder_                    .
B. WELDON PONDER, JR.

W. Scott Carlson
for Debtors Met Water Vista Ridge, L.P., and
Metropolitan Water Company, L.P.
at wsc@metwater.com

Stephen W. Sather, Subchapter V Trustee
at ssather@bn-lawyers.com

Shane P. Tobin for the United States Trustee at
shane.p.tobin@usdoj.gov

R. Jacob Jumbeck and Mike Stenglein for
Creditor and Respondent Vista Ridge, LLC
at jjumbeck@kslaw.com and
mstenglein@kslaw.com

Brian Talbot Cumings for Creditors Cap Tex
Water Partners, LLC, Central Texas Water,
LP, Harry Vowell, H&V Holdings, Ltd,
Simsboro Water, LLC, Jon Hildebrand and
Rick Jamison at bcumings@gdhm.com, and
ctrickey@gdhm.com

Paul Terrill and Ryan Greene on behalf
of Creditors Blue Water Systems. LP,
and Blue Water Vista Ridge, LLC
at rgreene@terrillwaldrop.com,
pterrill@terrillwaldrop.com and
bfigg@terrillwaldrop.com

Seth E. Meisel and William Rhea
for Creditors Blue Water Systems, LP, and
Blue Water Vista Ridge, LLC,
at smeisel@dbcllp.com, bhrea@dbcllp.com,
and lsnedden@dbcllp.com

Kyle Hirsch and Tricia W. Macaluso
for Wilmington Trust, N.A., as Trustee
for Burleson/Milam Lease Trust
at kyle.hirsch@bryancave.com and
tricia.macaluso@bclplaw.com

Elizabeth Grace Smith for the City of San
Antonio acting by and through SAWS
at beth@egsmithlaw.com

Kell C. Mercer for Creditors Keller Shoreline
Investments, Ltd., Paul B. Keller
at kell.mercer@mercer-law-pc.com

Marvin Sprouse
for Creditor Austin JSB, Ltd.
at msprouse@sprousepllc.com