## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| *In re:* | § | |
| **METROPOLITAN WATER COMPANY, L.P.,** | § | **Case No. 21-10903-HCM** |
| **MET WATER VISTA RIDGE, L.P.,** | § | **Case No. 21-10904-HCM** |
| *Debtors in Possession.*[1] | § | *(Jointly Administered* |
| | § | *under Case No. 21-10903-HCM)* |

### DEBTORS' PRE-CONFIRMATION MODIFICATIONS DATED AUGUST 8, 2022, TO THEIR FIRST AMENDED PLAN OF REORGANIZATION DATED MAY 2, 2022

Metropolitan Water Company, L.P. ("Met Water"), and Met Water Vista Ridge, L.P., ("MWVR," together with Met Water, the "Debtors"), the debtors in possession in the above-styled and numbered jointly administered bankruptcy cases, pursuant to 11 U.S.C. § 1127(a) hereby file and submit to their Creditors their Pre-Confirmation Modifications to their First Amended Joint Small Business Subchapter V Plan of Reorganization dated May 2, 2022 (the "First Amended Plan," as modified herein, the "Plan"), pursuant to Chapter 11 of Title 11, Subchapter V, United States Code (hereinafter the "Bankruptcy Code" or "Code").

### ARTICLE I
### DEFINITIONS

Except as otherwise indicated in this Plan, the terms used in this Plan have the definitions used in the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court and the United States District Court for the Western District of Texas. In addition, the following terms shall have the following meanings:

**1.01. 130 Project** shall mean the wellfield, pipeline, and associated infrastructure for the supply of water from certain of Met Water's groundwater leases in Burleson and Milam Counties

---

1. The last four digits of the Debtors' federal tax identification numbers are: Metropolitan Water Company, L.P. (6172); Met Water Vista Ridge, L.P. (2308). The Debtors' mailing address is P.O. Drawer 1146, Brenham, TX 77834-1146.

in Texas, to wholesale water purchasers in various communities in Bastrop and Travis Counties in Texas.

**1.02.    Administrative Expense** shall mean those Claims entitled to priority under § 507(a)(1), § 503(b) and § 330 of the Code, which include fees and expenses of the bankruptcy attorneys for the Debtors and their Special Litigation Counsel and of their accountants, and shall include, without limitation, any actual and necessary expenses of preserving the Estate of either or both of the Debtors, any actual and necessary expenses of the business of the Debtors, any fees and expenses of the Subchapter V Trustee and any professionals employed by the Subchapter V Trustee, and any fees or charges assessed against the Estate of either or both the Debtors under Chapter 123, Title 28, United States Code.

**1.03.    Allowed Claims** shall mean a Claim:

(a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by the Bankruptcy Rule 3003, in a liquidated non-contingent amount; or

(b) scheduled in the Schedule of Liabilities prepared and filed with the Court by either Met Water or MWVR pursuant to Federal Rule of Bankruptcy Procedure 1007(b) and not listed as disputed, contingent, or unliquidated as to amount in those Schedules, and

(c) in either case (i.e., (a) or (b) above), as to which no objection to the allowance thereof has been filed, or as to which any such objection has been determined by a final order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated hereafter in the Plan or expressly permitted by the Bankruptcy Court.

**1.04.    Allowed Equity Interest** shall mean each of the current general and limited partner interests in Met Water or MWVR.

**1.05.    Allowed Secured Claim** shall mean an Allowed Claim secured by a lien, security interest, mortgage or other interest in property in which either Debtor has an interest, or which is subject to set-off under § 553 of the Code, to the extent of the value of such property securing the Allowed Secured Claim pursuant to § 506(a) of the Code or to the extent the amount is subject to said set-off, as the case may be. An Allowed Secured Claim may include post-petition interest if permitted under § 506 of the Code. The Debtors do not believe there are any Allowed Secured Claims against either of them.

**1.06.    Avoidance Action** shall mean any and all rights, claims or actions assertable by a Debtor against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under sections 542, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any preference or fraudulent transfer action under any applicable state law, except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan.

**1.07. Baldwin Lease** shall mean that certain groundwater lease dated September 1, 2016, between Joe Baldwin, as Lessor, and MWVR., as Lessee, that concerns a tract of land in Burleson County, Texas, more particularly described as 3.77 acres of land, more or less, a part of the Euclid M. Cox Survey, Abstract 82, Burleson County, Texas, and being the same land as described in a Deed dated April 25, 2014 from Daniel Lee Tucker to Joe Baldwin, recorded in Volume 943, Page 619 of the Official Public Records of Burleson County, Texas.

**1.08. Baldwin Lease Litigation,** part of the Vista Ridge Litigation, shall mean the lawsuit that was pending as of the Petition Date in the federal District Court for the Western District of Texas between MWVR, Vista Ridge and the Trust, and in which Blue Water Vista Ridge, LLC, intervened. The suit was dismissed by order entered June 16, 2022.

**1.09. Bankruptcy Case** and **Bankruptcy Cases** shall mean the case commenced by Met Water and/or the case commenced by MWVR, depending on the context, upon the filing of such Debtor's voluntary petition under the Bankruptcy Code on the Petition Date.

**1.10. Bankruptcy Code or the Code** shall mean the United States Bankruptcy Code as contained in 11 U.S.C. § 101, et seq., and all applicable amendments thereto.

**1.11. Bankruptcy Court Registry Funds** shall mean Met Water's second payment from the Vista Ridge Project that was deposited into the registry of the Bankruptcy Court on May 20, 2022, in the amount of $6,933,911.54 as of that date, and including all accrued interest thereon.

**1.12. Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure, as amended.

**1.13. Bar Date** shall mean the last date on which a proof of Claim may be timely filed against Met Water and/or MWVR, unless otherwise extended by a Final Order of the Bankruptcy Court, which deadline was January 31, 2022.

**1.14. Blue Water Parties** shall mean any or all of Blue Water Vista Ridge, LLC, Blue Water Regional Supply Project, LP, Blue Water 130 Project, LP, and Blue Water Systems, LP.

**1.15. Carlson** or **Mr. Carlson** shall mean W. Scott Carlson, the principal of Met Water Texas, the general partner of each of the Debtors.

**1.16. Claim** shall have the meaning given in 11 U.S.C. § 101(5).

**1.17. Class** shall mean a group of Claims or Interests classified together in accordance with 11 U.S.C. § 1123.

**1.18. Confirmation Date** shall mean the date upon which the Confirmation Order is entered by the Court.

**1.19. Confirmation Order** shall mean the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

**1.20.** **Court or Bankruptcy Court** shall mean the United States Bankruptcy Court for the Western District of Texas in which the Debtors' Bankruptcy Cases are pending.

**1.21.** **Creditor** shall mean any party or entity having a Claim against either or both of the Debtors, including but not limited to the following: Administrative Expense Creditors, Unsecured Creditors, and Insiders as herein defined.

**1.22.** **Debt** shall have the same meaning ascribed to it in § 101(12) of the Bankruptcy Code.

**1.23.** **Debtor** or **Debtors** shall mean Met Water and/or MWVR, the debtors in possession and proponents of this Plan of Reorganization, depending on the context.

**1.24.** **Disallowed** shall mean, when used with respect to a Claim, any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; (b) has been withdrawn by the holder of the Claim; or (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which the Bar Date has been established but no proof of Claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**1.25.** **Disposable Income** shall have the same meaning as set forth in 11 U.S.C. § 1191(d), and with respect to Met Water and MWVR, shall mean their respective income after deduction for their respective Expenses (including a reserve for such Expenses).

**1.26.** **Disputed** shall mean the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of claim has been filed, or deemed filed under applicable law or order of the Bankruptcy Court; (b) an objection has been or may be timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the time that an objection has been or may be filed, and unless otherwise, formally allowed pursuant to an order of the Bankruptcy Court, a Claim shall be considered a Disputed Claim (i) if the amount or classification of the Claim specified in the proof of claim exceeds the amount or classification of any corresponding Claim listed by Met Water or MWVR in its Schedules, to the extent of such excess; (ii) in its entirety, if any corresponding Claim is listed by such Debtor in its Schedules as disputed, contingent, or unliquidated; or (iii) in its entirety, if no corresponding Claim has been listed by such Debtor in its Schedules.

**1.27.** **Effective Date** shall mean fifteen (15) days from the Confirmation Date.

**1.28.** **Estate or Bankruptcy Estate** shall mean the bankruptcy estate of Met Water or of MWVR, depending on the context, created upon the commencement of the Bankruptcy Case pursuant to § 541 of the Bankruptcy Code.

**1.29.** **Expenses** shall mean the post-Confirmation ongoing expenditures of either or both of the Debtors that are necessary for the continuation, preservation or operation of their business,

including but not limited to their ongoing payments to lessors, their ongoing litigation and reorganization expenses, and any anticipated Administrative Expense required to be paid upon Allowance of such Claim.

**1.30.** **First Payment Date** shall mean the date that the first payment to General Unsecured Creditors under the Plan is required to be made; the First Payment Date for Met Water under this Plan is the first business day of the month following the first full month after the Effective Date.

**1.31.** **Harris County Suit** shall mean the lawsuit pending as of the Petition Date in the 215th District Court of Harris County, Texas, by and between Fox River Real Estate Holdings, Inc., Austin JSB, Ltd., M. Buckner Baccus, Daniel T. Cooper, Ross M. Cummings, Warren Demaio, Bruce F. Dickson, Keith K. Dickson, Eugene A. Frost, Jr., Mark A. Frost, and August J. Pellizzi (and R. Hal Moorman, Milton Y. Tate and Lynette Dahmann as Intervenors) on the one hand, and Mr. Carlson, Met Water Texas, and MWVR on the other.

**1.32.** **Impaired** shall have the same meaning as set forth in § 1124 of the Bankruptcy Code.

**1.33.** **Investors** shall mean those persons who advanced funds, directly or indirectly, to Met Water beginning in 2004, for the purpose of enabling it to purchase groundwater leases for the 130 Project and/or the Vista Ridge Project.

**1.34.** **Litigation** shall mean any or all of the lawsuits in which Met Water or MWVR was a party on the Petition Date, and includes but is not limited to the Vista Ridge Litigation and the Harris County Suit.

**1.35.** **Litigation Assets** shall mean any claim, offset, Avoidance Action, cause of action of any kind, suit, controversy, right to payment, whether legal or equitable, known or unknown, liquidated or unliquidated, fixed or contingent, of, belonging to, owned by, or assertable by, Met Water and/or MWVR, whether listed in either or both of the Debtors' Schedules (as amended, supplemented and/or modified from time to time), the Plan, the Confirmation Order or any pleading in the Bankruptcy Case, including without limitation the scheduled claims against any or all of the Blue Water Parties, Vista Ridge and/or the Trust, and the plaintiffs' claims in the Harris County Suit.

**1.36.** **Litigation Claims** shall mean any Claim, offset, cause of action of any kind, suit, controversy, or right to payment arising before the Petition Date, whether legal or equitable, known or unknown, liquidated or unliquidated, fixed or contingent, of any person against Met Water and/or MWVR, whether filed as a proof of claim or listed in the either or both of the Debtors' Schedules (as amended, supplemented and/or modified from time to time), the Plan, the Confirmation Order or any pleading in the Bankruptcy Cases, including without limitation the scheduled or filed Claims of any or all of the Blue Water Parties and Vista Ridge.

**1.37.** **Met Water** shall mean Metropolitan Water Company, L.P., the debtor in possession in Case No. 21-10903 and one of the joint proponents of this Plan.

**1.38.    Met Water Texas** shall mean Metropolitan Water Company of Texas, L.L.C., the general partner of Met Water and of MWVR.

**1.39.    MWVR** shall mean Met Water Vista Ridge, L.P., the debtor in possession in Case No. 21-10904 and one of the joint proponents of this Plan.

**1.40.    Petition Date** shall mean November 22, 2021, the date that the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code, commencing these jointly administered cases.

**1.41.    Plan** shall mean these Pre-Confirmation Modifications to the Debtors' First Amended Joint Small Business Subchapter V Plan of Reorganization, including any modification, amendments or supplements thereto.

**1.42.    Plan Disbursement Agent** shall mean that person that delivers payments to Creditors from and after Confirmation of the Plan, under the Plan; the Plan Trustee shall be the Plan Disbursement Agent under the terms of the Plan.

**1.43.    Plan Term** shall mean that period after the Effective Date during which payments are being made to Creditors; the Plan Term for this Plan may vary according to the Debtor making Plan payments, and, as to each Debtor, will end on the earlier of: (i) the date that all Allowed Claims against that Debtor have been paid in full, or (ii) the date five (5) years from the First Payment Date of that Debtor.

**1.44.    Plan Trustee** shall mean Stephen W. Sather, or any successor to him appointed in accordance with the terms of the Plan, in such person's role following Confirmation of the Plan and for the duration of the Plan Term; such role, and the Plan Trustee's powers and duties, are set forth below in Sections 4.10 and 5.02-5.07 of the Plan.

**1.45.    *Pro Rata*** shall mean the proportion that any Allowed Claim in any Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.46.    Production Payment Agreement** shall mean the Production Payment Agreement dated effective March 6, 2012, by and between Met Water and Carrizo-Wilcox Water Works, L.P.

**1.47.    Production Payment Allocation Agreement** shall mean the Production Payment Allocation Agreement dated effective October 23, 2004, by and between Met Water and Met Water Texas.

**1.48.    Registry Funds** shall mean Met Water's first payment from the Vista Ridge Project that were interpleaded into the registry of the Washington County District Court on October 22, 2021, in the amount of $4,131,778.58 as of that date, and including all accrued interest thereon.

**1.49.    Reorganized Debtor** shall mean Met Water on and after the Effective Date after substantive consolidation of it with MWVR, with the equity interest in MWVR being terminated as of the Effective Date without consideration.

**1.50.  SAWS** shall mean the City of San Antonio acting by and through the board of trustees of the San Antonio Water System, the entity that purchases water from the Vista Ridge Project to supply the City of San Antonio.

**1.51.  Severed Washington County Suit** shall mean the litigation, pending as Cause No. 37,793, by and between Blue Water 130 Project, LP, and Metropolitan Water Company, L.P., and intervenor Blue Water Systems, LP.  Alignment of the parties in the Severed Washington County Suit is disputed. It is Met Water's position that, having non-suited its claims prior to the severance, that it is the defendant, Blue Water 130 Project, LP, which is the plaintiff, and Blue Water Systems, LP, that is the intervenor-plaintiff in the Severed Washington County Suit.

**1.52.  Subchapter V Trustee** shall mean Stephen W. Sather as the Subchapter V Trustee appointed by the United States Trustee in each of these jointly administered bankruptcy cases, or any successor to him.

**1.53.  Trust** shall mean the Burleson/Milam Master Lease Trust acting through its trustee, Wilmington Trust.

**1.54.  Unimpaired Claim** shall mean any Claim or any Class of Claims that are not Impaired under the Plan. The term **Impaired** as used in this definition refers to and is governed by the language of § 1124 of the Code.

**1.55.  Unsecured Claim** shall mean any Allowed Claim against Met Water and/or MWVR for which the holder has no security for the repayment thereof, or the portion of an Allowed Secured Claim for which the security held by the holder of that claim is insufficient to fully satisfy the Claim. This category includes all Claims deemed unsecured pursuant to § 506(a) of the Code.

**1.56.  Vista Ridge** shall mean Vista Ridge, LLC.

**1.57.  Vista Ridge Litigation** shall mean the Baldwin Lease Litigation pending in federal District Court of the Western District of Texas and the lawsuits pending in Texas State Courts as of the Petition Date by and between Met Water and, sometimes, MWVR on the one hand, and one or more of the Blue Water Parties, Vista Ridge and/or the Trust, on the other hand, and includes the Washington County Litigation.

**1.58.  Vista Ridge Project** shall mean the wellfield, pipeline, and associated infrastructure originating in Burleson and Milam Counties in Texas that supply water from certain of Met Water's groundwater leases to SAWS as the wholesale purchaser and residents of San Antonio as the ultimate consumers/purchasers.

**1.59.  Washington County Litigation**, part of the Vista Ridge Litigation, shall mean the lawsuit pending as of the Petition Date in the 21st District Court of Washington County, Texas, currently by and between Blue Water Systems, LP, and Blue Water Vista Ridge, LLC, on the one hand, and Met Water and MWVR on the other hand.

ARTICLE II

## DESCRIPTION AND BRIEF HISTORY OF EACH DEBTOR'S BUSINESS AND DESCRIPTION OF THE DEBTORS' ESTATES
### Metropolitan Water Company, L.P.

**2.01.**   Met Water is a Texas limited partnership formed in December of 1999. Its general partner is Metropolitan Water Company of Texas, L.L.C. ("Met Water Texas"), which is controlled by W. Scott Carlson ("Mr. Carlson"). Met Water was the original lessee under approximately 6500 groundwater leases, primarily in Burleson and Milam Counties in Texas.

**2.02.**   Met Water began acquiring groundwater leases in December of 1999. It initially marketed groundwater for sale itself, and later contracted with business partners to market groundwater for sale, including Blue Water Systems, LP.

**2.03.**   In 2004, it became apparent that the original funding from the limited partners of Met Water would not be sufficient to allow it to acquire the number of groundwater leases needed for the success of its business, so additional investors were sought and obtained by it and Met Water Texas for that purpose (the "Investors").  With the knowledge and acquiescence of the existing limited partners, more than $6 million in additional capital was raised from the Investors and contributed to Met Water. In exchange, the Investors are entitled to be paid by Met Water Texas a portion of the production payments that it receives from Met Water.

**2.04.**   The first water sales from Met Water's groundwater leases occurred in 2011, when a 53-mile pipeline from Burleson County to eastern Travis County was completed.  That water supply project, referred to by the participants as the "130 Project" (the wellfield, pipeline, and associated infrastructure for the supply of water to wholesale water purchasers), currently produces approximately 3–4 million gallons of water per day to several customers.

**2.05.**   As of the filing of this Plan, approximately 451 of Met Water's groundwater leases are not yet producing. Almost 304 of Met Water's groundwater leases are producing as part of the

130 Project. The few leases under which Met Water is lessee which are not part of the 130 Project are held by delay rentals or are paid-up leases still within their primary terms.

 **2.06.** Met Water is current on all of its payments to lessors on its groundwater leases that are part of the 130 Project.

 **2.07.** Met Water also holds reversionary lessee's interests in an additional approximately 1,300 groundwater leases in Burleson County and Milam County. In October 2014, the Debtor transferred the lessee's present interests in these leases, ultimately to the Burleson/Milam Master Lease Trust (the "Trust"), for the purpose of financing a regional water supply project to supply water to the City of San Antonio, Texas (the "Vista Ridge Project"). In exchange for such transfer, Met Water is entitled to receive production payments from the Vista Ridge Project. The Vista Ridge Project, and Met Water's participation in the Project and right to receive each and every one of those payments are, among other things, the subjects of a number of lawsuits in Texas State Courts between Met Water and, sometimes, MWVR on the one hand, and one or more of the Blue Water Parties, Vista Ridge and/or the Trust, on the other hand (collectively, the "Vista Ridge Litigation").

 **2.08.** In particular, the Blue Water Parties claim (among other things) that Met Water is not entitled to its payments to the extent that it is liable to or otherwise owes one or more of the Blue Water Parties, and because of those claims the Trust interpleaded Met Water's first payment from the Vista Ridge Project, in the amount of $4,131,778.58 (as of October 22, 2021[2]) into the registry of the Washington County District Court, one of the Courts where the Vista Ridge Litigation was pending as of the Petition Date (the "Registry Funds"). The Registry Funds, which

---

2. These funds in the registry of the Court continue to accrue interest.

Met Water claims and no party disputes are its funds, remain in that Court's registry as of the filing of this Plan.

2.09.   To the best of Met Water's knowledge, all of the payments under the Vista Ridge Project leases are current, although it is not privy to the administration of those leases so long as it holds only reversionary interests in them. The reversionary interests are not expected to revert to Met Water until the end of the Vista Ridge Project contracts to supply water to SAWS, which are expected to last at least sixty (60) years.

2.10.   In 2012, Carrizo-Wilcox Water Works, L.P., and Met Water entered into a Production Payment Agreement under which the former receives production payments from the 130 Project and the Vista Ridge Project in consideration of its investment of approximately $635,000.

### Met Water Vista Ridge, L.P.

2.11.   MWVR is a Texas limited partnership formed in July of 2015. Its general partner is also Met Water Texas, which is controlled by Mr. Carlson. Its sole limited partner is Carrizo-Wilcox Water Development, L.L.C. ("Carrizo-Wilcox Development"). Mr. Carlson and his family members own 100% of the equity of Carrizo-Wilcox Development, and he is in control of that entity as its managing member.

2.12.   MWVR scheduled interests in its Bankruptcy Case as the lessee under three groundwater leases in Burleson County, Texas. MWVR came into ownership of those three groundwater leases beginning in 2016. It is also the lessee under another four groundwater leases in Milam County. Two of MWVR's Burleson County leases, as well as all its Milam County leases, are not producing and are still within their primary terms. It is MWVR's opinion that those six non-producing leases have *de minimis* value.

2.13.    The third lease in Burleson County that MWVR scheduled as owned by it, referred to herein as the "Baldwin Lease," has two wells on it that are producing, and the water being withdrawn is being taken and sold by Vista Ridge. The Baldwin Lease was the subject of litigation, pending as of the Petition Date with the Blue Water Parties and Vista Ridge, which claimed that MWVR and/or Met Water should be compelled to transfer that lease to the Blue Water Parties. The dispute over the Baldwin Lease was also one of the issues in the Washington County Litigation. Finally, it was the subject of the suit in the federal District Court in the Western District of Texas (the "Baldwin Lease Litigation").  In an interlocutory ruling, the Washington County Court granted a partial summary judgment against MWVR. In addition, the Bankruptcy Court ruled that Vista Ridge's withdrawal of water from the real estate covered by the Baldwin Lease does not violate the automatic stay.  That ruling, because made in connection with automatic stay litigation, was also not a final, enforceable decision regarding MWVR's rights and property interests. However, on June 16, 2022, the District Court in the Baldwin Lease Litigation found adversely to MWVR as to its claim to its Baldwin Lease and its entitlement to the water withdrawn from the property covered by that Lease. Neither Met Water (which was also a party to that suit) or MWVR has appealed that ruling.

ARTICLE III

**BANKRUPTCY**

3.01.    On November 22, 2021 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code, which commenced their respective Bankruptcy Cases. Each of the Debtors, as a debtor in possession, continues to manage its assets and financial affairs and operate its business. That includes owning the lessees' interests under their groundwater leases and administering some of those interests, and prosecuting

and defending claims in litigation (including litigation by and against the Blue Water Parties and Vista Ridge with respect to those interests and other matters).

**3.02.** The following "administrative" matters have occurred in the Debtors' cases since the Petition Date:

(a) On November 23, 2021, Stephen W. Sather was appointed Subchapter V Trustee in each of the cases. The Trustee's Motion for Post-Petition Security Deposit was granted on February 1, 2021.

(b) On November 24, 2021, after expedited hearings, orders were entered granting Met Water's Motions for Authority to Maintain Certain Pre-Petition Bank Accounts and for Authority to Timely Make Pre-Petition Royalty and Delay Rental Payments.

(c) On November 29, 2021, after an expedited and contested hearing, an order was entered granting the Debtors' Motion to Jointly Administer their cases.

(d) The Section 341 Creditors Meeting was conducted and concluded by the United States Trustee on December 17, 2021. The Debtors have filed their Small Business Debtor documents and, as of the filing of this Plan, are current in the filing of their monthly operating reports.

(e) On January 18, 2022, the status conferences required in Subchapter V Chapter 11 cases were held and concluded in each of the Bankruptcy Cases.

(f) On January 19, 2022, an order was entered approving the Debtors' employment of B. Weldon Ponder, Jr., and Catherine Lenox as bankruptcy counsel.

(g) On March 4, 2022, Met Water's Motion to Keep Open, But Not Use, Certain Pre-Petition Bank Accounts was granted.

(h) On March 11, 2022, Met Water requested, and on April 5, 2022, the Court approved, that Debtor's employment of Atchley & Associates, LLP, as its accountants.

(i) On May 12, 2022, Met Water amended Schedule F to add another claim of an already scheduled creditor and Schedule G to add and delete certain executory contracts.

**3.03.** The following matters and orders concerning the Plan and Confirmation of the Plan have been filed and entered in the cases to date:

(a) On February 22, 2022, the Debtors timely filed their original joint Plan (the "Original Plan"), within 90 days of the Petition Date.

(b) On March 25, 2022, the Court entered a Scheduling Order with respect to the Original Plan and its Confirmation, setting certain deadlines and hearings including deadlines related to discovery in connection with the Plan, voting on and objecting to the Plan, and the hearing on Confirmation of the Plan. Certain of those deadlines were later extended by order entered April 22, 2022. A number of motions to compel discovery responses and to quash discovery requests were filed and have been opposed, heard and ruled on. July 29, 2022, was the last date for discovery to be conducted under the Scheduling Order, unless extended by agreement by the parties.

(c) On May 2, 2022, the Debtors filed their First Amended Plan.

(d) On August 4, 2022, the Court denied the Debtors' request to extend the deadline of August 8, 2022, for filing modifications to the First Amended Plan.

**3.04.** The following contested matters have been resolved or are pending as of the filing of this Plan:

(a) On December 3, 2021, the Blue Water Parties filed a Motion for Relief from Automatic Stay seeking to pursue the Washington County Litigation. On December 9, 2021, the Debtors removed that suit from that Court to the Bankruptcy Court. The Blue Water Parties, joined by Vista Ridge and the Trust, requested the Court to remand the suit, and on January 7, 2022, the Court held an expedited hearing on the Motion for Relief from Automatic Stay and the Motion to Remand. At the conclusion of that hearing, the Court ruled that the suit would be sent back to Washington County District Court, and on that date an order was entered granting the Motion for Relief from Automatic Stay and remanding the suit, except as to collection of any judgment entered against either or both of the Debtors.

(b) After a contested hearing and with some conditions, on January 19, 2022, the Court approved the Debtors' employment of Howry Breen & Herman, L.L.P., as their Special Litigation Counsel.

(c) In preparation for the hearing on its Motion for Enforcement of the Automatic Stay (*see* below on pending contested matters), MWVR filed a notice of intent to depose SAWS, and SAWS in response filed a Motion to Quash the subpoena it received for that deposition. The hearing on the Motion to Quash was held on February 15, 2022, and the Bankruptcy Court ruled that the deposition and document production would go forward as noticed with limited exceptions.

(d) MWVR filed a Motion for Enforcement of the Automatic Stay, by which it sought an order holding Vista Ridge in contempt for its alleged continuing violation of the stay by withdrawing and selling water from the Baldwin Lease, without the consent of MWVR and without compensating it. MWVR also requested the Bankruptcy Court to impose a fine on Vista Ridge for each day it continued such actions. The Blue Water Parties and Vista Ridge opposed MWVR's Motion. On February 24, 2022, the Bankruptcy Court held an expedited

hearing, after which it denied the Motion. In doing so, it held that Vista Ridge's conduct did not violate the automatic stay.

(e) On March 22, 2022, Met Water filed a motion to assume its office lease, and MWVR filed a motion to assume its groundwater leases. MWVR's motion was objected to by the Blue Water Parties, and both motions were objected to by certain limited partners of Met Water.[3] On June 19, 2022, Met Water filed a series of motions to assume all of its groundwater leases, and a motion to assume, to the extent required to maintain those interests, its reversionary interests in the groundwater leases it transferred to Vista Ridge, LLC. Objections to those motions were also filed: by the Trust with respect to the latter motion, and by the Blue Water Parties and by certain limited partners of Met Water with respect to all those motions. Hearings have been set on all those matters on August 29, 2022, when Confirmation is set.

(f) On May 2, 2022, the Bankruptcy Court held a status conference regarding both the Motion, filed by Blue Water Systems, LP, and Blue Water Vista Ridge, LLC, to Authorize Deposit of Contested Funds in the Registry of the 21st Judicial District Court, Washington County, Texas ("Blue Water's Motion on 2022 Payment") and the Motion, filed by Met Water, to Compel Turnover of Property of the Estate by Wilmington Trust, N.A., as Trustee of the Burleson/Milam Lease Trust and/or Blue Water Vista Ridge, LLC, pursuant to 11 U.S.C. § 542 (Met Water's "Turnover Motion"). At the conclusion of that hearing, the Court ruled that the 2022 Payment must be deposited into its registry, and on May 16, 2022, an order was entered requiring that deposit. The 2022 Payment, in the amount of $6,933,911.54 was received into the Registry on May 20, 2022.

(g) On June 20, 2022, certain Investors[4] filed a motion to remove Met Water and MWVR as debtors in possession. Certain limited partners[5] and the Blue Water Parties are supporting that motion. Met Water and MWVR oppose the motion. The matter is set for hearing on August 17, 2022.

(h) Certain limited partners of Met Water filed a motion on July 8, 2022, to determine the validity of certain disputed contracts of that Debtor. Met Water has filed a response to that motion and the matter is also set for hearing on August 29, 2022, along with Confirmation of the Plan.

(i) On July 25, 2022, the Court held a hearing on the Motion for Relief from Stay filed by the Blue Water Parties, seeking to modify the automatic stay to allow the Baldwin Lease Litigation, and a second lawsuit (the "") pending in the 21st Judicial District Court of Washington County, involving certain claims related to the 130 Project, which was severed from the Washington County Suit, to proceed. The Motion was denied with respect to the

---

3. In particular, an objection to each motion was filed jointly by M. Buckner Baccus, Daniel T. Cooper, Ross M. Cummings, Warren Demaio, Bruce F. Dickson, Keith K. Dickson, Fox River Real Estate Holdings, Inc., Mark A. Frost, Eugene A. Frost Jr., and August J. Pellizzi.

4. David Weber, Wallace J Luke, Steven J Hubbell, and H&V Holdings, Ltd.

5. *See* footnote 3 above.

Baldwin Lease Litigation, but was granted with respect to the Severed Washington County Suit to the extent it allows that case to proceed to a final, non-appealable judgment on any and all claims by any party, but not to allow any collection of a judgment from either of the Debtors or from property of either Debtors' Estate.

    (j)  On August 4, 2022, the Court held hearings on the Subchapter V Trustee's fee applications requesting compensation and reimbursement of expenses in each Debtor's case, and on the first interim fee application of Catherine Lenox, co-counsel for the Debtors. Also set that day was Met Water's motion to use the Bankruptcy Court Registry Funds to pay professionals' fees and other administrative expense claims.  The Subchapter V Trustee's fees and expenses with respect to the Met Water case, and Ms. Lenox's fees and expenses for her representation of Met Water, were approved and ordered paid from the Registry; the other relief requested by Met Water in that motion was denied. The Subchapter V Trustee's fees with respect to the MWVR case, and Ms. Lenox's fees for her representation of MWVR, were also approved and administrative expense claims against MWVR allowed for those fees.

    (k)  Finally, a number of objections to Claims and motions to temporarily allow claims have been filed: an objection to the Claim of Howry Breen by certain limited partners of Met Water[5]; an omnibus objection by the Blue Water Parties to the Claims of Howry Breen, Alexander DuBose, Met Water Texas and Carrizo-Wilcox Water Works, L.P.; a motion of Howry Breen to temporarily allow its Claim for voting purposes; and a motion of certain Investors[4] to temporarily allow their Claims for voting purposes. Although responses have been filed, no hearings have yet been set on these matters.

ARTICLE IV

**THE DEBTORS' PLAN**

**4.01.**  All Allowed Claims shall be paid in full, by the distribution to the Debtors' Creditors of proceeds from the sales of water from the Debtors' groundwater leases, which each will assume. Payments to Creditors shall also be made from any recovery from any of the Litigation or Litigation Assets. The Bankruptcy Estates of the Debtors shall be substantively consolidated after their assumption of leases and executory contracts and effective as of the Effective Date, with MWVR being dissolved and its equity interests extinguished, and Met Water being the Reorganized Debtor, the surviving entity. Payments on Allowed Claims against MWVR shall only be made after payment in full of all Met Water's Creditors' Allowed Claims.

## **Unclassified Claims**

**4.02.**   <u>Administrative Expenses</u>. The administrative expenses of the Debtors' respective Bankruptcy Cases that are allowed pursuant to § 503(b) of the Code and given priority pursuant to § 507(a)(1) of the Code, shall be paid in full upon the later of the Effective Date or upon entry of an order allowing the Administrative Expense, unless otherwise agreed to in writing between the relevant Debtor and the holder of such Allowed Claim. In particular, MWVR's unpaid administrative expense claims, consisting as of the filing of this Plan of the fees of the Subchapter V Trustee and of Catherine Lenox, MWVR's co-counsel, shall be paid by the Reorganized Debtor only after payment in full of all Allowed Claims against Met Water.

**4.03.**   The deadline for filing a claim for an Administrative Expense, other than professional fee applications, shall be thirty (30) days from Confirmation. The deadline for filing a claim for an Administrative Expense that is a professional's fees and/or expenses, shall be one hundred twenty (120) days from the Effective Date. The Administrative Claims in these Bankruptcy Cases are those unpaid post-petition claims which are or will be owed to Debtors' counsel, to their Special Litigation Counsel, and to Met Water's accountant, and those which are or will be owed to the Subchapter V Trustee. Such Claims are estimated as of the filing of this Plan to total $750,000 as of Confirmation.

**4.04.**   <u>Other Priority Claims</u>. There are no known priority claims, other than administrative expense claims, in these cases.

## **Classified Claims and Interests**

**4.05.**   Claims against the Debtors, other than Administrative Expense Claims and Priority Claims, and Interests in the Debtors are classified by each Debtor by priority and type. The

treatment described below shall apply to all Claims or Interests of the given Class against or in each Debtor.

Class 1: All Allowed General Unsecured Claims against Met Water

Class 2: All Allowed General Unsecured Claims against MWVR

Class 3: All Allowed Equity Interests in Met Water

Class 4: All Allowed Equity Interests in MWVR

**Treatment of Claims**

**4.06.** <u>Class 1: Impaired</u>. The Allowed General Unsecured Claims against Met Water shall be paid in full over the Plan Term. In particular, the Plan Trustee as the Plan Disbursement Agent shall pay the Reorganized Debtor's Disposable Income *Pro Rata* to the Creditors of Met Water with Allowed General Unsecured Claims, until the earlier of five (5) years from the First Payment Date (*see* below) or the date each such Claim has been paid in full. Such payments shall commence on the first business day of the month following the first full month after the Effective Date (hereinafter Met Water's "First Payment Date"). The Plan shall operate as Met Water's demand for payment to it of the Bankruptcy Court Registry Funds on or before the Effective Date, and for the Plan Trustee's control of those Funds and authority to make Plan Payments from those Funds. Payments after the First Payment Date shall be made annually, on the anniversary of the First Payment Date, except for additional payments, if any, that shall be made from Met Water's and/or the Reorganized Debtor's Disposable Income, if and when received from the Registry Funds and/or the Bankruptcy Court Registry Funds. Such additional payment(s) to Creditors shall be made on the first business day of the month following the first full month after receipt by the Plan Trustee of such Funds, if there are no restrictions on using them to make Plan payments.

4.07.    Class 2: Impaired. The Allowed General Unsecured Claims against MWVR shall be paid *Pro Rata*, in full over the Plan Term from the Reorganized Debtor's Disposable Income, but only after payment in full of Class 1 Claims. In particular, payments on the Class 2 Claims shall be made by the Plan Trustee as the Plan Disbursement Agent and shall commence on: (1) that date Class 1 Claims are paid in full, provided there are funds available on that date after paying the Class 1 Claims; or (2) the first business day of the month following the first full month thereafter that revenues from water sales from the Vista Ridge Project are received by the Plan Trustee (hereinafter MWVR's "First Payment Date"). Payments after the First Payment Date will be made annually, on the anniversary of the First Payment Date, and shall continue until the earlier of the end of the fifth (5th) year after Met Water's First Payment Date, or the date such Claims have been paid in full.

4.08.    Class 3: Impaired. During the Plan Term, the holders of Allowed Equity Interests in Met Water shall retain those Interests according to the terms of their agreements governing their Interests and Texas law.  In accordance with such agreements and Texas law, no payments shall be made during the Plan Term unless and until all Allowed Claims have been paid in full.

4.09.    Class 4: Impaired. The Allowed Equity Interests in MWVR shall be terminated, without consideration to the holders, as of the Effective Date.

**Other Payment Provisions of the Plan**

4.10.    Payments to Creditors with Claims Not Yet Allowed as of the First Payment Date. Payments under the Plan on a General Unsecured Claim that is not allowed until after the First Payment Date shall commence on the next date that payments are due under the Plan after the allowance of such Claim by final, non-appealable judgment and/or order. Until such newly Allowed General Unsecured Claim is paid the same *Pro Rata* percentage previously received by

all other Creditors in its Class, no other Allowed General Unsecured Claims in the Class that have received more shall be paid.

4.10. <u>Appointment under the Plan of the Subchapter V Trustee as the Plan Trustee, and Plan Payments by Him as Plan Disbursement Agent</u>. Whether or not the Plan is consensually confirmed, the Subchapter V Trustee shall be appointed as "Plan Trustee" effective as of the Effective Date, and shall be empowered and required to make all payments under the Plan to the Creditors, as the Plan Disbursement Agent. *See* Sections 5.02-5.07 below.

4.11. <u>Agreed Modification of an Individual Creditor's Treatment under the Plan</u>. The Reorganized Debtor and any particular Creditor provided for in this Plan may enter into any agreement after Confirmation that modifies that Creditor's treatment and payment terms, so long as such agreement is reduced to writing, is signed by the Reorganized Debtor and such Creditor's authorized representative, and does not provide for treatment that produces a recovery under this Plan better than the other Creditors in the same class. In such event, any modified agreement shall be deemed to supersede the terms of this Plan.

4.12. <u>Delivery of Distributions</u>. All distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of claim filed in the relevant Debtor's Bankruptcy Case or, if the distribution is to be made based on a Claim reflected as allowed in the Schedules, at the address reflected in the Schedules. Any such distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States mail, postage prepaid, addressed as required in the preceding sentence. If any distribution is returned as undeliverable, it shall be held by the Plan Trustee and no further distribution shall be made on account of such Allowed Claim unless and until the Plan Trustee as Plan Disbursement Agent is notified of such holder's then current address, at which time

all missed distributions shall be made to the holder of such Allowed Claim. However, all notices to the Plan Trustee reflecting new or updated addresses for undeliverable distributions shall be made on or before one hundred twenty (120) days after the date when the Plan Trustee files with the Bankruptcy Court a notice of the unsuccessful attempted distribution or such longer period as the Plan Trustee may fix in the exercise of his sole discretion. After such date, all unclaimed property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

**4.13.**  Time Bar to Cash Payments. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Plan Trustee by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Plan Trustee may fix. After such deadline has passed, the Plan Trustee has filed a subsequent related notice with the Bankruptcy Court, and no Claim in respect to such a voided check has been made within ten (10) days thereafter, such Claim in respect of such void check shall be discharged and forever barred.

ARTICLE V

**MEANS OF IMPLEMENTATION**

**5.01.**  Implementation of the Debtors' Plan depends on the continuing operation of their groundwater leases, the continuation of the Debtors' rights and obligations under their contracts, the final resolution of the Litigation Claims and the realization of certain of the Litigation Assets. Effective as of the Effective Date of the Plan, MWVR shall be substantively consolidated with Met Water and all equity interests in MWVR shall be extinguished without consideration to the

holders. The holders of such equity interests have agreed to this treatment. Met Water will continue as the Reorganized Debtor.

### Provisions Applicable to the Plan Trustee

**5.02.**    <u>Powers of the Plan Trustee</u>. In addition to making Plan payments (*see* Article IV above), the Plan Trustee shall have full checkbook control over the finances of the Reorganized Debtor, shall disburse company revenues as appropriate and shall have complete access to the Reorganized Debtor's financial books and business records, including historical books and records.  The Trustee within his discretion may allow the Reorganized Debtor to maintain a petty cash account for payment of non-recurring expenses by the Reorganized Debtor directly. Mr. Carlson shall have input about what needs to be paid, but the Plan Trustee shall have authority to make decisions about who gets paid and when, whether certain payments should be put on hold, and whether further guidance from the Bankruptcy Court is needed.

**5.03.**    <u>The Plan Trustee's and the Reorganized Debtor's Roles with Respect to Litigation Assets and Litigation Claims</u>.  To the extent either or both of the Debtors' Bankruptcy Estates have an interest in the Harris County Suit, the Plan Trustee shall control that interest and shall have the power to continue the prosecution and defense of that litigation and to sue and be sued.  In addition, the Plan Trustee shall have the power to sue and be sued with respect to either or both of the Debtors' pre-Confirmation contracts with third-party entities that are fully or partially controlled by Mr. Carlson, including but not limited to those contracts identified in the "Motion to Determine Validity of Certain Contracts" [ECF Document 266].  The Debtors' proposed assumption of all such contracts, by motion or under this Plan, shall be conditioned upon the final determination by the Bankruptcy Court as to those contracts' validity.

**5.04.** The Plan Trustee shall have the right to employ counsel to represent the Reorganized Debtor's interests in the litigation matters described in Paragraph 5.03 above, and shall have the right to pursue or not pursue such litigation, and to recommend settlement of such litigation to the Bankruptcy Court, to the extent such Court approval is required.

**5.05.** The Reorganized Debtor shall remain in control of any pending state court litigation other than the Harris County Suit, as well as pending or future contested matters in the Bankruptcy Court (other than matters placed under the Plan Trustee's control in Paragraph 5.03 above) and shall continue to employ its present counsel to handle such state court matters and contested matters in the Bankruptcy Court, or to select and employ new counsel if the Reorganized Debtor deems it appropriate to do so.

**5.06.** On litigation matters in which the Plan Trustee controls the Reorganized Debtor's interest, the Reorganized Debtor shall retain the right, through its management, to give its input to the Plan Trustee, and the right, through its counsel, to express its position in Court.

. **5.07.** The Plan Trustee's Compensation and the Continuation of Met Water Texas's Management Fee. The Plan Trustee shall be paid reasonable compensation for his time and reimbursed for his reasonable expenses incurred in making those payments, as agreed between the Debtors and the Plan Trustee. Absent such agreement, the Bankruptcy Court shall decide such compensation and expense reimbursement. Notwithstanding any other provision of this Plan, the $10,000 per month management fee payable to Met Water Texas under Met Water's Limited Partnership Agreement shall continue to be paid after Confirmation and during the Plan Term, absent further order of the Bankruptcy Court.

### Treatment of the Debtors' Executory Contracts and Groundwater Leases

**5.08.** <u>Executory Contracts</u>. A list of known contracts of each Debtor, and the other parties to them, are listed in their respective Schedule G filed in their Bankruptcy Cases, copies of which are attached hereto as Exhibits A and B. If not already assumed by Confirmation, effective as of Confirmation the Debtors shall assume each and every contract, if and to the extent executory, to which either or both Debtors are party. Even if not listed in Schedule G, the Debtors intend to assume each and every executory contract to which either or both are party, and Confirmation of the Plan shall act as assumption as to each such contract not already assumed, whether listed in Exhibits A and B or not, unless a contract is expressly identified as rejected in the Confirmation Order. The process for such assumption, including the determination of cure amounts, if any, is described below in Sections 5.11-5.15.

**5.09**. <u>Unexpired Leases</u>. Prior to the filing of this Plan, Met Water filed motions to assume its office lease and all its groundwater leases including its reversionary interests in the groundwater leases that are part of the Vista Ridge Project. MWVR also filed a motion to assume all its groundwater leases, including any interest it may have had in the Baldwin Lease. MWVR intends to amend that motion to abandon its request to assume the Baldwin Lease, and to make it clear that certain groundwater leases not originally scheduled are included in those to be assumed. Objections were filed to all those motions and they are set for hearing with the hearing on Confirmation of the Plan. <u>To be clear</u>, if not already assumed, under the Plan Met Water and MWVR will assume each and every groundwater lease to which each is a party, including Met Water's reversionary interests in the groundwater leases that are part of the Vista Ridge Project, effective as of Confirmation. Met Water's office lease and its groundwater leases that are not part of the Vista Ridge Project, and the parties to them, are listed in its Schedule G filed in its

Bankruptcy Case, a copy of which is attached hereto as Exhibit A. Met Water's reversionary interests in the groundwater leases that are part of the Vista Ridge Project are listed in its Schedule A, which is also included in Exhibit A hereto. MWVR's Burleson County groundwater leases are listed in its Schedule G, a copy of which is attached hereto as Exhibit B.  Also included in Exhibit B is a list of its Milam County groundwater leases, which are listed in its Amended Schedule G. The process for such assumption, including the determination of cure amounts, if any, is described below in Sections 5.11-5.15.

**5.10**.   Met Water requested and received authorization from the Bankruptcy Court to continue to pay its lessors after the Petition Date, and has done so. With assumption of its leases, the payments to Met Water's lessors that it is currently making will continue to be made by the Plan Trustee uninterrupted according to the terms of those leases. With MWVR's assumption under the Plan of its groundwater leases and its substantive consolidation with Met Water, payments during the Plan Term, if any, required to be made to its lessors under the terms of its leases will also be made by the Plan Trustee.

**5.11.**  <u>Process for Assumption</u>. Notice of the assumption of the Debtors' executory contracts and groundwater leases will be provided to the other parties to those contracts and leases prior to Confirmation and such assumption. The Debtors believe they are not in default of any of their executory contracts and unexpired leases and are current with respect to all payments they are required to make under those contracts and leases. Nevertheless, prior to Confirmation each non-Debtor party to an executory contract or unexpired lease will have an opportunity (and a deadline) to object to the assumption and, other than the non-Debtor parties to those contracts treated in Section 5.12 below, to dispute that Met Water or MWVR is not in default and therefore that no cure payment is required, and to provide evidence of any cure amount claimed to be owed.

The rights of the non-Debtor parties to those contracts treated in Section 5.12 to dispute cure amounts and their timing are governed by that Section.

**5.12.**  With respect to certain of the Debtors' executory contract(s) with the Blue Water Parties, it has been alleged in the Litigation that the Debtors have breached those agreements. Issues of whether either or both of the Debtors have breached any executory contract with the Blue Water Parties, and the amount of damages, if any, for any such breach(es), will be determined in the non-bankruptcy courts where the Litigation is pending. *See* Section 5.16 below. After such determination and liquidation by the entry of a final, non-appealable judgment, the Reorganized Debtor shall have ninety (90) days to file a motion with the Bankruptcy Court to determine the amount(s) needed for the Reorganized Debtor to cure any breach/default of any executory contract that it intends to assume, and the timing of any such cure. Any non-Debtor party to any such executory contract with the Blue Water Parties shall have the right to contest the amount and timing of any cure by objecting to the Reorganized Debtor's motion at that time.

**5.13.**  Finally, because Met Water will assume its Production Payment Allocation Agreement with Met Water Texas, and that Agreement requires Met Water Texas to make the production payments to the Investors from the payments it receives under that Agreement, any cure amount, and all future production payments owed to the Investors, shall be made by Met Water Texas. In the event and to the extent that the Reorganized Debtor actually makes any of those payments, Met Water Texas shall reimburse it immediately.

**5.14.**  Other than a Litigation Claim, a proof of a claim arising from the rejection of an executory contract must be filed no later than thirty (30) days after the Confirmation Date. Any such Allowed Claim arising from the rejection of an executory contract by Met Water shall be

treated as a Class 1 Claim, and any arising from a rejection by MWVR shall be treated as a Class 2 Claim.

**5.15.**    Except as provided with respect to the executory contracts described in Section 5.16 below, any disputed issue regarding assumption will be decided by the Bankruptcy Court at Confirmation.

### Liquidation and Allowance of Litigation Claims

**5.16.**    No claim shall be paid under the Plan until it is determined, liquidated, and allowed, by final, non-appealable judgment or order. In particular, Claims that are Disputed Claims will be paid after they are allowed as follows.

(a) The Litigation Claims of Creditors, other than those listed in Sections 5.16(b) and (c) below, will be determined and liquidated (along with any Litigation Assets) in the non-bankruptcy courts in which they are pending:

(i)    Washington County Litigation, including the appeals pending in the Fourteenth Court of Appeals, Houston, Texas as Cause Nos. 14-20-00524-CV and 14-21-00403-CV;

(ii)    Severed Washington County Suit;

(iii)    Cause No. D-1-GN-18-001582 pending in the 261st Judicial District, Travis County, Texas, and styled as *Metropolitan Water Company, L.P., and Metropolitan Water Vista Ridge, L.P., v. Blue Water Systems, LP, and Blue Water Vista Ridge, LLC, and Blue Water 130 Project, LP*;

(iv)    Cause No. D-1-GN-20-003381 pending in the 201st District Court of Travis County, Texas, and styled as *Metropolitan Water Company, L.P., and Metropolitan Water Vista Ridge, L.P., v. Blue Water Systems, LP, Blue Water 130 Project, LP, and Blue Water Vista Ridge, LLC*; and

(v)    Cause No. D-1-GN-21-001598 pending in the 126th Judicial District Court of Travis County, Texas, and styled as *Metropolitan Water Company, L.P., v. Blue Water Vista Ridge, LLC, and Wilmington Trust, N.A., as Trustee for the Burleson/Milam Master Lease Trust, v. Keller Shoreline Investments, Ltd., and Paul W. Keller*, including the appeal pending in the Third Court of Appeals, Austin, Texas, as Cause No. 03-21-00206-CV.

After such determination and liquidation by final, non-appealable judgment, the holder of the Claim shall have thirty (30) days to amend its proof of claim to be consistent with the judgment. The Reorganized Debtor shall have sixty (60) days from such amendment to file an objection in the Bankruptcy Court to allowance of the amended Claim on any grounds not precluded by such judgment. Such allowance or disallowance shall be governed by the procedures of the claims allowance process described in Article X below.

(b) The Litigation Claims of the Investors against the Debtors that are asserted in the following suits (along with any Litigation Assets of either or both of the Debtors asserted in that Litigation) are duplicative of the Claims filed by the Investors in the Bankruptcy Cases and, therefore, along with the Debtors' related claims, will be determined, liquidated, and allowed or disallowed in the claims allowance process described in Article X below:

(i) Cause No. 29386 pending in the 21st Judicial District, Burleson County, Texas, and styled as *H&V Holdings, Ltd. (for itself and as agent or attorney-in-fact for Austin Aqua Management, LLC, Cap Tex Water Partners, LLC, Central Texas Water, LP, Rick Jamison, and Simsboro Water, LLC), and Jon Hildebrand and Harry Vowell v. Metropolitan Water Company, L.P., Metropolitan Water Company of Texas, LLC, and W. Scott Carlson*; and

(ii) Cause No. 30393 pending in the 335th Judicial District Court of Burleson County, Texas and styled as *David J. Weber, Wallace J. Luke, III, and Steven J. Hubbell v. Metropolitan Water Company, L.P., Metropolitan Water Company of Texas, LLC, and W. Scott Carlson*.

Following Confirmation, the Reorganized Debtor shall request abatement of each of the above-listed suits pending final non-appealable orders on allowance or disallowance of the Claims, and after the entry of such orders, the Reorganized Debtor shall request dismissal of each of the above-listed suits as mooted by the orders entered in the claims allowance process.

(c) Finally, Met Water asserts that the Claims of Creditors asserted in the Harris County Suit are derivative claims assertable by Met Water and therefore Litigation Assets and

property of Met Water's Bankruptcy Estate. Certain of the other parties to the Harris County Suit dispute this characterization. The prosecution of Met Water's claims and the defense of Claims against it, including but not limited to their settlement, shall be directed by the Plan Trustee after the Effective Date.

ARTICLE VI

**THE REORGANIZED DEBTOR'S ABILITY TO MAKE PLAN PAYMENTS**

**6.01.**    Exhibit C hereto contain projections covering the five years from the First Payment Date, based on stated sets of assumptions, regarding the amounts and timing of the Reorganized Debtor's gross income from all sources and its Expenses (including reserves for Expenses), its Disposable Income, and Plan payments to be made over that five-year period (the "Projections"). The Projections are Met Water's best estimates of how much, and when, payments may occur under the Plan, but given the large number of variables that will be determined by factors beyond Met Water's control (i.e., amounts of water sales and sales revenues, and the outcomes and timing of the various pieces of Litigation), the Projections of necessity are only examples of how much, and when, payments to Creditors under the Plan may occur.

**6.02.**    The Projections contemplate that the Reorganized Debtor will continue to prosecute and defend the Litigation involving the Blue Water Parties post-Confirmation. The Projections also contemplate that the Plan Trustee, prior to making payments to Creditors under the Plan, will pay (the Reorganized Debtor's ongoing expenditures necessary for the continuation, preservation or operation of its business, including but not limited to its ongoing payments to lessors, its ongoing litigation and reorganization expenses, and any anticipated Administrative Expense required to be paid upon allowance of such Claim (the "Expenses").

**6.03.**    Specifically, the Plan Trustee shall accumulate from Reorganized Debtor's income and hold in reserve sufficient funds to pay the Expenses the Reorganized Debtor proposes, and the

Plan Trustee agrees, are likely to come come due during the period before the next Plan payment is due.

**6.04** The Reorganized Debtor's income, after deduction for its Expenses (including the reserve for such Expenses) is its "Disposable Income." As required by 11 U.S.C. §§ 1190(1)(C) and 1191(c)(2), Plan payments to Creditors holding Allowed Claims are based on the projected Disposable Income of the Reorganized Debtor as set forth in Exhibit C, which includes all projected income from the operations of the Reorganized Debtor and the Bankruptcy Court Registry Funds, which are Met Water's payment for its share of water sales proceeds from the Vista Ridge Project for the year from approximately April 14, 2021, through April 14, 2022. The Bankruptcy Court Registry Funds shall be turned over to the Plan Trustee on or before the Effective Date. Because of the uncertainties involved, however, the Reorganized Debtor's projected Disposable Income as set forth in the Projections does not include income from the prosecution, liquidation, and collection of the Debtors' Litigation Assets—although as required by the Bankruptcy Code, under the Plan any such proceeds shall contribute to the Reorganized Debtor's Disposable Income and, to that extent, shall be used to fund the Plan. Even without including the proceeds of Litigation Assets, Exhibit C shows that all Allowed Claims can be expected to be paid in full within five years after the Effective Date.

**6.05.** The Reorganized Debtor's Income, Expenses, Reserves, Disposable Income, and Plan Payments. In particular, the Projections show that the Reorganized Debtor can reasonably be expected to receive approximately $1,070,000 in gross income during the first year of the Plan Term from water sales from the 130 Project alone, and that that amount is projected to remain substantially the same for the Plan Term.

**6.06.** Although the Registry Funds currently total more than $4.1 million and are indisputably Met Water's share of sales revenue from the Vista Ridge Project for the pre-petition year from approximately April 15, 2020, through April 14, 2021, the Projections show a worst case scenario under which the Reorganized Debtor would not receive those funds so long as the Washington County Litigation continues unless the Reorganized Debtor prevails in that Litigation. Rather, under the worst case scenario illustrated in Exhibit C, based on the assumption that the Blue Water Parties prevail in that Litigation, the Registry Funds will be used to partially pay the Blue Water Parties' Allowed Claim(s) after the conclusion of the Litigation, with the balance of such Allowed Claim(s) being paid from the Reorganized Debtor's Disposable Income.

**6.07.** The Reorganized Debtor's projected Disposable Income does, however, include its share of sales revenue from the Vista Ridge Project from approximately April 15, 2021, through April 14, 2022, that were paid into the Registry of the Bankruptcy Court on or about May 20, 2022 (the "Bankruptcy Court Registry Funds"), and for the Plan Term years thereafter. Under the Confirmed Plan, the Reorganized Debtor's future annual payments shall be paid to the Plan Trustee on the Reorganized Debtor's behalf, and used by the Plan Trustee to, among other things, make the payments required under the Plan. Because of the limited information available to Met Water at this time, the annual income that it anticipates that the Plan Trustee, on behalf of the Reorganized Debtor, will be paid from the Vista Ridge Project during the Plan Term is estimated very conservatively in the attached Projections at $7 million per year, based on the fact that Met Water's share of the April 2022 payment was $6,933,911.54. If the Plan Trustee does not obtain access to and use of the Bankruptcy Court Registry Funds and future payments from the Vista Ridge Project, payments under the Plan can be expected to be delayed, perhaps as long as the completion of the litigation over the Vista Ridge Project.

**6.08.** Finally, the Plan Trustee, on behalf of the Reorganized Debtor, will also receive proceeds from Litigation or Litigation Assets only when the relevant Litigation is concluded, by trial and appeal and final judgment, or by settlement, and only to the extent that Met Water and/or the Reorganized Debtor prevails in the Litigation or settles on terms that would result in payment(s) to the Plan Trustee. Those contingencies, because of their uncertainty as to likelihood, amounts and timing, are not included in Exhibit C.

**6.09.** As to its Expenses, Met Water estimates in the Projections that it will pay the lessors on the 130 Project leases approximately 14% of the sales revenue from that Project, or almost $150,000 during the first year of the Plan Term, assuming gross revenues of during that year of $1,070,000, as described above. Again, those amounts are not expected to change substantially during the Plan Term. Met Water currently has no obligation to make payments to lessors under the Vista Ridge Leases and is not expected to have any during the Plan Term. It is, however, bound under its Production Payment Allocation Agreement with Met Water Texas, and its Production Payment Agreement with Carrizo-Wilcox Water Works, L.P., to make production payments to those entities based not only on Project 130 water sales, but also Vista Ridge Project water sales. Those latter production payments will commence in Year 1 of the Plan Term, and are expected to be approximately $3,225,000/year that year, and projected to not change substantially during the Plan Term. Including the 130 Project lessors' royalty payments, Met Water projects Expenses of approximately $409,000 per month for the first year of the Plan Term. (These Expenses include ongoing legal expenses for the Litigation and reorganization of Reorganized Debtor.) As noted on the Projections, certain of those Expenses are assumed to increase by 3% per year during the Plan Term, while others are expected to remain relatively constant over that period.

**6.10.**  Underline: MWVR's Income, Expenses, Reserves, Disposable Income, and Plan Payments. As of the filing of this Plan, MWVR is receiving no income from any source. Six of the seven groundwater leases it listed on its Schedules as owned as of the Petition Date are not producing (they are within their primary terms). MWVR no longer claims an interest in the only producing lease, the Baldwin Lease.

**6.11.**  MWVR therefore does not have projected Disposable Income within the foreseeable future with which to make the Plan payments. Its management and equity holders have agreed to its substantive consolidation, effective as of the Effective Date, with Met Water (as the Reorganized Debtor), without consideration to the equity holders.  The Reorganized Debtor will become the owner of MWVR's assets, and will assume liability for its debts.  Those debts, however, will be paid under the Plan only after payment in full of all Allowed Claims against Met Water.  Those payments are included in the Reorganized Debtor's Projections in Exhibit C.

## ARTICLE VII
## LIQUIDATION ANALYSES

**7.01.**  To confirm the Plan, the Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claim and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis of each Debtor is attached to the Plan as Exhibit D. As set forth therein, the payments by each Debtor under the Plan are projected to equal or exceed the expected proceeds from a liquidation of assets of such Debtor in a hypothetical Chapter 7 liquidation.

## ARTICLE VIII
## ACCEPTANCE AND CONFIRMATION OF THE PLAN

**8.01.**  Classes Entitled to Vote. All Creditors in Impaired Classes of Claims (i.e., Classes 1 and 2) are entitled to vote to accept or reject the Plan.  The votes of Creditors in each such Class

shall be tallied separately. Class 3, consisting of the Allowed Equity Interests in Met Water, are Impaired and also entitled to vote to accept or reject the Plan. Class 4, consisting of the Allowed Equity Interests in MWVR, are deemed to reject it because they will receive nothing under the Plan.

**8.02.** Class Acceptance Rules. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan. A Class of Allowed Equity Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.

**8.03.** Request Pursuant to § 1191(b). This Section shall constitute the request by each of the Debtors, pursuant to § 1191(b) of the Bankruptcy Code, for the Bankruptcy Court to confirm this Plan notwithstanding the fact that the requirements of § 1129(a)(8), (a)(10) or (a)(15) of the Bankruptcy Code have not been met.

ARTICLE IX
**PROCEDURE FOR RESOLVING DISPUTED CLAIMS**

**9.01.** Confirmation of the Plan is not *res judicata* of any claim or defense in any of the Litigation. Notwithstanding any language herein to the contrary, nothing in this Plan or its Confirmation will enjoin, discharge, prohibit or otherwise impede the authority and ability of the Blue Water Parties or any other party to any Litigation to seek and obtain entry of a final judgment against either or both of the Debtors; provided, however, that the Reorganized Debtor reserves and preserves, and after the Effective Date shall have the right to object to and seek a determination from the Bankruptcy Court that (i) any portion of a final judgment against it or either or both of the Debtors that is based on a pre-petition general unsecured claim, which is reasonably allocable to post-petition interest, legal fees, expenses, and costs should not be part of an Allowed Claim,

and (ii) no Creditors shall be entitled to exercise setoff or recoupment rights, if any, that it might have except in accordance with the terms and provisions of this Plan, as confirmed.

10.02. <u>Filing Objections</u>. The Plan Trustee may, but shall have no obligation to, prepare, file or prosecute objections to Claims. The Reorganized Debtor shall be responsible for evaluating and, in its reasonable exercise of business judgment, pursuing, litigating, declining to pursue or compromising any objection to Claim. Unless otherwise provided in this Plan or the Confirmation Order, objections to Claims may be filed with the Bankruptcy Court and served upon each holder of the Claim to which an objection is filed not later than ninety (90) days after the Effective Date, unless such time period is extended by order of the Court. No distribution will be made on account of a Disputed Claim unless and until such Claim is allowed.

10.03. <u>Causes of Action Preserved and Prosecution Decisions</u>. The Debtors reserve and preserve all claims and causes of actions, Avoidance Actions, and the Litigation Assets, including without limitation Met Water's claims in the Harris County Suit and Cause No. D-1-GN-20-006113, pending in the 250th Judicial District Court of Travis County, Texas, styled *Blue Water Vista Ridge, LLC v. Vista Ridge, LLC v. Metropolitan Water Company, L.P.*

ARTICLE XI
**MISCELLANEOUS PROVISIONS**

11.01. <u>Vesting of Assets</u>. On the Effective Date, title to all assets and properties dealt with by the Plan, whether held by either Debtor, shall vest in the Reorganized Debtor, free and clear of all Claims and Interests.

11.02. <u>Closing of MWVR's Bankruptcy Case / Retention of Jurisdiction</u>. As soon as practicable after the Effective Date, the Reorganized Debtor shall file a motion to close MWVR's Bankruptcy Case, in light of its substantive consolidation with Met Water. Under §§ 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the

occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Cases of the Debtors and this Plan, to the fullest extent permitted by law, including, among other things, jurisdiction to:

(i) allow, disallow, determine, subordinate, litigate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest (whether filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including, without limitation, whether any Claim includes fees, costs, or charges arising or incurred after the Petition Date, the compromise, settlement and resolution of any request for payment of any Administrative Expense Claim or Priority Claim, the resolution of any Objections to the allowance or priority of Claims or Equity Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Equity Interest to the extent permitted under applicable law;

(ii) grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, including determining any dispute regarding reasonable compensation and reimbursed of reasonable expenses of the Subchapter V Trustee;

(iii) hear and determine any and all adversary proceedings (including any declaratory action), motions, applications, and contested or litigated matters, including, but not limited to, the Litigation Assets and all causes of action, and consider and act upon the compromise and settlement of any Claim of or against either or both of the Debtors, any Litigation Asset or any cause of action;

(iv) determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which either or both of the Debtors is or was a party, or with respect to which either or both of the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(v) ensure that all distributions to holders of Allowed Claims under this Plan and the performance of the provisions of this Plan are accomplished as provided herein and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of this Plan;

(vi) construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with § 1142 of the

Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, other agreements or documents created in connection with this Plan, including, without limitation, the Confirmation Order, for the maintenance of the integrity of this Plan in accordance with §§ 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

(vii)    determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all exhibits and schedules to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(viii)    modify this Plan before or after the Effective Date pursuant to § 1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code and this Plan;

(ix)    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(x)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(xi)    determine any other matters that may arise in connection with or relating to this Plan and the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order;

(xii)    determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xiii)    hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(xiv)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case of either Debtor or the Reorganized Debtor;

(xv)     determine and resolve controversies related to either or both of the Debtors or either or both of their Estates before the Effective Date or related to the Reorganized Debtor after the Effective Date;

(xvi)    hear and determine any other matter relating to this Plan;

(xvii)   enter orders discharging the Debtors; and

(xviii) enter a final decree closing these Bankruptcy Cases and reopening either or both of the Bankruptcy Cases for any purpose permitted by the Bankruptcy Code.

**11.03.** Adversary Proceedings and Retained Claims. The Debtors reserve the right, consistent with the terms of this Plan, and such shall right inures to the Reorganized Debtor, to begin or continue any adversary proceeding permitted under the Code and the applicable Federal Rules of Bankruptcy Procedure.

**11.04.** Modification of Plan. This Plan may be modified or corrected upon motion of either or both of the Debtors pursuant to § 1193(a) prior to Confirmation. Modifications or corrections may be made by without additional disclosure provided that the Court finds that the modifications or corrections do not adversely affect any Claim or Interest or classes of Claims or Interests. After the Confirmation Date, the Reorganized Debtor may modify the Plan upon order of the Bankruptcy Court and in accordance with § 1193(b).

ARTICLE XII

**DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

**12.01.** Plan Creates New Obligations. The obligations to Creditors in the Confirmed Plan replace those obligations to Creditors that existed prior to the Effective Date of the Plan. The obligations under the Confirmed Plan constitute a binding contractual promise that, if not satisfied

through performance of the Plan, create a basis for an action for breach of contract under Texas law.

12.02. <u>Discharge</u>. Each of the Debtors is entitled to a discharge under 11 U.S.C. § 1141(d)(1), made applicable herein pursuant to 11 U.S.C. § 1192, upon completion of all payments by the Reorganized Debtor due within the Plan Term. The Reorganized Debtor intends to request the Court to enter a discharge order for each Debtor upon completion of the Plan payments, after notice to all Creditors.

12.03. <u>Legally Binding Effect</u>. The provisions of this Plan shall bind Creditors and holders of Equity Interests, whether or not they accept this Plan. On and after the Effective Date, except as provided in the Plan and the Confirmation Order, all holders of Claims shall be precluded and forever enjoined from asserting any Claim against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date.

12.04. <u>Injunction</u>. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against either or both of the Debtors and their assets and properties, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order all persons who have held, may have held, hold, or may hold Claims against either or both of the Debtors are permanently enjoined on and after the Effective Date from

> (i) commencing or continuing in any manner any action or other proceeding of any kind against either or both of the Debtors or the Reorganized Debtor, with respect to any such Claim;

> (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against either or both of the Debtors or the Reorganized Debtor, or the property of any of them;

38

(iii)    creating, perfecting, or enforcing any encumbrance of any kind against either or both of the Debtors or the Reorganized Debtor, or the property of any of them, with respect to such Claim;

(iv)    asserting any right of subrogation of any kind against any obligation due to either or both of the Debtors or the property of either Debtor or either or both of their Estates with respect to any such Claim; and

(ii)    asserting any right of setoff or recoupment against either or both of the Debtors or the Reorganized Debtor, or the property of any of them, except as specifically permitted by this Plan. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays, if any, provided for in these Bankruptcy Cases pursuant to § 105 or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

## ARTICLE XIII

### DEFAULT

**13.01.** In the event of a non-monetary or monetary default by the Reorganized Debtor under the Plan, the affected Creditor shall provide written notice of such default to the Reorganized Debtor and its bankruptcy counsel by United States certified mail-return receipt requested, by United States first class mail, postage prepaid, and by e-mail. The Reorganized Debtor shall have thirty (30) days to cure from the earlier to occur of:

(i)    the date of receipt of the written notice sent by certified mail; or

(ii)    the date of receipt of the written notice sent by first class mail to cure the default.

(For the purposes of the written notice by United States first class mail, postage prepaid, such notice will be deemed received five (5) days after depositing the same in the United States mail.) In the event the Reorganized Debtor does not cure the default within the thirty (30) day period provided herein, the affected Creditor or holder of an Equity Interest shall be entitled to seek relief from the Bankruptcy Court or, if such Court does not exercise jurisdiction as to the matter, any other court of competent jurisdiction.

**13.02.** The Reorganized Debtor must remain current with respect to all post-petition federal tax obligations, including but not limited to making timely federal tax deposits, the timely filing of any tax returns and the payment of all tax liabilities required by applicable law during the term of the Plan. Failure to remain current with respect to one or more post-petition federal tax liabilities shall constitute an event of default under of the Plan.

**13.03.** Subject to the provisions of Section 13.01, upon a final and non-curable default of the Plan by the Reorganized Debtor, if any, a Creditor may pursue any and all available state and federal rights and remedies as provided by law without further order of the Bankruptcy Court.

**13.04.** In the event the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the following additional default provisions shall apply: Pursuant to 11 U.S.C. § 1191(c)(3), in the event that payments are not made by the Reorganized Debtor as required by the Plan and Confirmation Order, Creditors and parties-in-interest shall have the right to seek dismissal or conversion of Met Water's Bankruptcy Case.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: August 8, 2022.

*Drafted by:*

    / s / Weldon Ponder       .
B. WELDON PONDER, JR.
Attorney at Law
State Bar of Texas No. 16110400
4408 Spicewood Springs Road
Austin, Texas 78759
512.342.8222 / 512.342.8444 fax
welpon@austin.rr.com

and

    / s / Catherine Lenox       .
CATHERINE LENOX
Attorney at Law
State Bar of Texas No. 12204350
Post Office Box 9904
Austin, Texas 78766
512.689.7273 / 512.451-7273 fax
clenox.law@gmail.com

COUNSEL FOR PLAN PROPONENTS
and DEBTORS IN POSSESSION,
METROPOLITAN WATER COMPANY,
L.P., and MET WATER VISTA RIDGE, L.P.

Respectfully submitted,

METROPOLITAN WATER COMPANY, L.P.

By: METROPOLITAN WATER COMPANY
      OF TEXAS, L.L.C.

      By:    *W. Scott Carlson*       .
         W. Scott Carlson, its Managing Member

and

MET WATER VISTA RIDGE, L.P.

By: METROPOLITAN WATER COMPANY
      OF TEXAS, L.L.C.

      By:    *W. Scott Carlson*       .
         W. Scott Carlson, its Managing Member

PLAN PROPONENTS and DEBTORS IN
POSSESSION

AGREED:

METROPOLITAN WATER COMPANY OF TEXAS,
L.L.C.

By:    *W. Scott Carlson*          .
      W. Scott Carlson, its Managing Member

and

CARRIZO-WILCOX WATER DEVELOPMENT
COMPANY, L.L.C.

By:    *W. Scott Carlson*          .
      W. Scott Carlson, its Managing Member

## CERTIFICATE OF SERVICE

I hereby certify that August 8, 2022, a true and correct copy of the foregoing Debtors' Pre-Confirmation Modifications Dated August 8, 2022, to their First Amended Joint Small Business Subchapter V Plan of Reorganization Dated May 2, 2022, was served via email on the persons named below, at the addresses listed.

_/ s / Weldon Ponder_____.
B. WELDON PONDER, JR.

W. Scott Carlson
for Debtors Met Water Vista Ridge, L.P., and
Metropolitan Water Company, L.P.
at wsc@metwatertexas.com

Stephen W. Sather, Subchapter V Trustee
at ssather@bn-lawyers.com

Shane P. Tobin, Casey Roy for the United
States Trustee at shane.p.tobin@usdoj.gov and
casey.roy@usdoj.gov

Randy Ray Howry and James Hatchitt
for Howry Breen & Herman, LLP, for Debtors
Met Water Vista Ridge, L.P., and Metropolitan
Water Company, L.P.
at rhowry@howrybreen.com and
jhatchitt@howrybreen.com

Mike Stenglein and Brooke Bean for Vista
Ridge, LLC at mstenglein@kslaw.com and
bbean@kslaw.com

Brian Talbot Cumings for Creditors Cap Tex
Water Partners, LLC, Central Texas Water,
LP, Harry Vowell, H&V Holdings, Ltd,
Simsboro Water, LLC, Jon Hildebrand and
Rick Jamison at bcumings@gdhm.com, and
ctrickey@gdhm.com

Marvin Sprouse
for Creditor Austin JSB, Ltd.
at msprouse@sprousepllc.com

Paul Terrill and Ryan Greene on behalf
of Creditors Blue Water Systems. LP,
and Blue Water Vista Ridge, LLC
at rgreene@terrillwaldrop.com,
pterrill@terrillwaldrop.com and
bfigg@terrillwaldrop.com

Seth E. Meisel and William Rhea
for Creditors Blue Water Systems, LP, and
Blue Water Vista Ridge, LLC,
at smeisel@dbcllp.com, bhrea@dbcllp.com,
and lsnedden@dbcllp.com

Kyle Hirsch and Tricia W. Macaluso
for Wilmington Trust, N.A., as Trustee
for Burleson/Milam Lease Trust
at kyle.hirsch@bryancave.com and
tricia.macaluso@bclplaw.com

Elizabeth Grace Smith for the City of San
Antonio acting by and through SAWS
at beth@egsmithlaw.com

Kell C. Mercer for Creditors Keller Shoreline
Investments, Ltd., Paul B. Keller
at kell.mercer@mercer-law-pc.com

Sabrina L. Streusand for Creditor
Alexander Dubose & Jefferson LLP
at streusand@slollp.com

Catherine Lenox for Debtors at
clenox.law@gmail.com

# EXHIBITS

Exhibit A –  Met Water's Contracts and Leases:

        Exhibit A-1 – Met Water's Contracts

        Exhibit A-2 – Met Water's Groundwater Leases

        Exhibit A-3 – Met Water's Reversionary Interests in Groundwater Leases Held by the Trust

Exhibit B –  MWVR's Contracts and Leases:

        Exhibit B-1 – MWVR's Contracts

        Exhibit B-2 – MWVR's Groundwater Leases

Exhibit C –  Plan Projections

Exhibit D –  Liquidation Analysis of each Debtor