# IN THE UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| METROPOLITAN WATER COMPANY, L.P., | § § § | Chapter 11 Subchapter V Jointly Administered Case No. 21-10903 (hcm) |
| | § | |
| MET WATER VISTA RIDGE, L.P., | § § | CASE NO. 21-10904-hcm (Chapter 11 Subch. V) |
| *Jointly Administered Debtors-in-Possession.* | § § § | (Jointly Administered under CASE NO. 21-10903-hcm) |

## SUPPLEMENTAL OBJECTION OF CERTAIN LIMITED PARTNERS OF METROPOLITAN WATER COMPANY, L.P. TO DEBTORS' FIRST AMENDED JOINT SMALL BUSINESS SUBCHAPTER V PLAN OF REORGANIZATION DATED MAY 2, 2022, AS MODIFIED

TO THE HONORABLE H. CHRISTOPHER MOTT, U.S. BANKRUPTCY JUDGE:

COMES NOW Austin JSB, Ltd., Fox River Real Estate Holdings, Inc., M. Buckner Baccus, Daniel T. Cooper, Ross M. Cummings, Warren Demaio, Bruce F. Dickson, Keith K. Dickson, Eugene A. Frost, Jr., Mark A. Frost, and August J. Pellizzi, certain of the limited partners of Debtor Metropolitan Water Company, L.P. (collectively the "Met Water LPs"), and file this Supplemental Objection ("Supplemental Objection") to the Debtors' First Amended Joint Small Business Subchapter V Plan of Reorganization Dated May 2, 2022 ("Amended Plan") [ECF No. 206], as modified. In support of this Supplemental Objection, the Met Water LPs would show the following:

### I. INTRODUCTION

1. The Debtors have modified their Amended Plan twice in the month of August. The modified Amended Plan seeks to "substantively consolidate" the Debtors' estates. Substantive consolidation, in the manner proposed by the Debtors, would directly and adversely affect the

1

rights of the Met Water LPs. The Debtors' modifications also attempt to address creditor and interest holder concerns over the involvement of Scott Carlson in Met Water's business. The modified Amended Plan, however, still seeks authority for Met Water to assume two disputed contracts, which appear to be fraudulent, and designed to legitimize the siphoning of substantial funds away from Met Water to entities wholly controlled by Carlson. Thus, the Met Water LPs file this Supplemental Objection to the Debtors' Amended Plan, as modified.

## II. BACKGROUND

2. On May 2, 2022, the Debtors filed their Amended Plan.

3. On June 20, 2022, the Met Water LPs filed their Objection to Debtors' First Amended Joint Small Business Subchapter V Plan of Reorganization Dated May 2, 2022 ("LP Objection") [ECF No. 245]. The Met Water LPs objected to the Amended Plan, among other reasons, because the Amended Plan was not proposed in good faith (11 U.S.C. § 1129(a)(3)), the Amended Plan is not feasible (11 U.S.C. § 1129(a)(11)), the Amended Plan is not fair and equitable (11 U.S.C. § 1191(b)), and the Amended Plan does not make adequate disclosures (11 U.S.C. § 1125). Other parties in interest also objected to the Amended Plan.[1]

4. On August 8, 2022, the Debtors filed their Pre-Confirmation Modifications Dated August 8, 2022 to Debtors' First Amended Plan of Reorganization Dated May 2, 2022 [ECF No. 365].

---

[1] *See* Objection and Reservation of Rights of Blue Water Systems, LP and Blue Water Vista Ridge, LLC to Confirmation of the First Amended Joint Small Business Subchapter V Plan of Reorganization Dated May 2, 2022, Proposed by Debtors Metropolitan Water Company, L.P. and Met Water Vista Ridge, L.P. [ECF No. 246]; Objection to Debtors' First Amended Joint Small Business Subchapter V Plan of Reorganization [ECF No. 243], filed on behalf of Wallace J. Luke, III, Steven J. Hubbell, H&V Holdings, Ltd., and David J. Weber; Joinder of Paul Keller & Keller Shoreline Investments, Ltd. in Objection to Confirmation of Debtors' First Amended Joint Small Business Subchapter V Plan of Reorganization Filed by Wallace J. Luke, III, Steven J. Hubbell, H&V Holdings, Ltd., and David J. Weber [ECF No. 244].

5. On August 24, 2022, the Debtors filed their Debtors' (Second) Pre-Confirmation Modifications Dated August 24, 2022, to Debtors' First Amended Plan of Reorganization Dated May 2, 2022 ("Modified Amended Plan") [ECF No. 420].

## V. SUPPLEMENTAL OBJECTIONS

6. The Met Water LPs adopt and incorporate the facts, law, and argument as set forth in the LP Objection.

### A. Substantive Consolidation of the Debtors is Improper

7. Section 5.02 of the Modified Amended Plan provides that as of the effective date of the plan, "MWVR shall be substantively consolidated with Met Water and all equity interests in MWVR shall be extinguished without consideration to the holders." According to Section 6.11 of the Modified Amended Plan, the debts of MWVR will be paid from the assets of Met Water, after the claims against Met Water are paid in full. Thus, dollars that otherwise would be distributed to Met Water equity – including the Met Water LPs – will instead be diverted to payment of MWVR's creditors. The Debtors' effort to substantively consolidate their estates, effectively subordinating the Met Water LPs' interests to the claims against MWVR, is improper, and is not justified by the facts of this case, or the case law providing for substantive consolidation.

8. The Court of Appeals for the Fifth Circuit has not provided detailed guidance on the issue of substantive consolidation. In *In re Amco Inc.*, 444 F.3d 690 (5th Cir. 2006), the Fifth Circuit observed that "substantive consolidation affects the substantive rights of the parties and is subject to heightened judicial scrutiny." *Amco*, 444 F.3d at 695 (quoting *In re Babcock & Wilcox Co.*), 250 F.3d 955, 959 n. 6 (5th Cir. 2001)). The *Amco* court also stated: "Without deciding whether the bankruptcy court has the power to order substantive consolidation, we do note that those jurisdictions that have allowed it emphasize that substantive consolidation should be used

'sparingly.'" *Id*. at 696 n. 5 (quoting *In re Owens Corning*, 419 F.3d 195, 208-09 (3rd Cir. 2005)). The *Amco* court also characterized substantive consolidation as "an extreme and unusual remedy." *Id*. (quoting *In re Gandy*, 299 F.3d 489, 499 (5th Cir. 2002). Finally, the 5th Circuit quoted from *Owens Corning* on the issue: "Indeed, because substantive consolidation is extreme . . . and imprecise, this 'rough justice' remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies." *Id*. (quoting *Owens Corning*, 419 F.3d at 211).

9. In the current case, the rationale for the "rough justice" of substantive consolidation appears to be the fact that MWVR has no assets of real value. MWVR has generated liabilities in the pursuit of its own interests, primarily attorneys' fees. MWVR's obligations to its attorneys are the direct result of MWVR's efforts to compete with Met Water, and to acquire assets contrary to the interests of Met Water. In fact, the testimony and other evidence in these cases establishes that MWVR was created in 2015 by Carlson to compete with the interests of Met Water for his personal benefit.

10. There is no clearer example of this than the issues surrounding the Baldwin Lease – after supposedly learning that the Met Water interest in the Baldwin Lease was "invalid" on September 1, 2016, Carlson immediately set to work persuading Mr. Baldwin to sign a nearly identical lease with MWVR, an entity wholly owned and controlled by Carlson. Carlson's attempted use of MWVR to siphon assets away from Met Water for his personal benefit continued after the Petition Date in the Debtors' cases. As noted in the LP Objection, MWVR's Motion to Enforce Stay [ECF No. 94], was an effort to have the Court sanction and protect Carlson's self-dealing with respect to the Baldwin Lease. Through the MWVR Motion to Enforce Stay, MWVR sought an order from the Court requiring parties to "immediately cease . . . all activities related to extraction and/or sale of groundwater" from the Baldwin Lease. Such relief would have certainly

caused harm to Met Water, the creditors of Met Water, and the Met Water LPs. Thus, through substantive consolidation, the Debtors are effectively seeking to have Met Water fund the efforts of MWVR to harm Met Water and its interests.

11. In considering the issue of substantive consolidation, Texas bankruptcy courts have surveyed authority from other jurisdictions, and examined the applicability of two primary "tests." *See, e.g., In re ADPT DFW Holdings, LLC*, 574 B.R. 87, 94 (Bankr. N.D. Tex. 2017)(identifying "two standards that have developed over the case law—(1) a more traditional, multi-factor test (which ultimately gets distilled down to two critical factors; and (2) a balancing of harm test"); *In re Introgen Therapeutics, Inc.*, 429 B.R. 570, 582 (Bankr. W.D. Tex. 2010)("there are two distinct types of tests . . . a more traditional factor based test and a balancing test").

12. The two "critical factors" of the multi-factor test are: "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit . . .; or (2) whether the affairs of the debtors are so entangled that consolidation would benefit all creditors." *See ADPT DFW Holdings*, 574 B.R. at 95 (citing *In re Augie Resitvo Baking Co.*, Ltd., 860 F.2d 515 (2d Cir. 1988)). In the current case, neither of the "critical factors" is present.

13. The Debtors have not presented any evidence supporting the notion that creditors regarded Met Water and MWVR as a "single economic unit." In fact, the efforts of the common general partner to both Debtor entities, Metropolitan Water Company of Texas, L.L.C. ("Met Water Texas"), have been to separate and segregate the "assets" of MWVR from those of Met Water precisely because of the different ownership of the two entities. On the one hand, Met Water has a majority of non-insider limited partners, whereas the limited partners of MWVR are undeniably Carlson-controlled insiders. Likewise, the "affairs" of Met Water and MWVR are not "so entangled that consolidation would benefit all creditors." As noted above, the primary claims

against MWVR are likely to be attorneys' fees for efforts that were in direct conflict with the interests of Met Water. Diverting funds from the assets of Met Water to pay the claims against MWVR thus benefits no creditors, other than those creditors who participated in efforts that were directly contrary to the interests of Met Water.

14. To the extent that substantive consolidation is an "equitable remedy," the equities of these cases do not support the diversion of funds as requested by the Debtors through substantive consolidation. *See In re DRW Property Co.* 82, 54 B.R. 489, 494 (Bankr. N.D. Tex. 1985)("Courts must, therefore, invoke their equitable power to grant substantive consolidation sparingly").

15. The "balancing of harms" test does not yield a different result in these cases. The *ADPT* court cited to authority applying this test, and stating that a "substantive consolidation analysis boils down to weighing the economic prejudice of separateness versus economic prejudice of consolidation." *ADPT DFW Holdings*, 574 B.R. at 100 (citing *In re Snider Bros., Inc.*, 18 B.R. 230, 234 (Bankr. D. Mass. 1982)). In the current cases, as noted above, the Debtors' proposal is to effectively subordinate the interests of the Met Water LPs (and other Met Water interest holders) to the unsecured creditors of MWVR, whose claims appear to primarily derive from efforts that would actually *harm* Met Water. The facts of these cases do not justify the "economic prejudice of consolidation."

16. Because substantive consolidation is not supported in these cases, the Modified Amended Plan should not be confirmed.

**B. Carlson Cannot Remain in Control of the Post-Confirmation Debtors**

17. In apparent response to the objections to the Amended Plan related to the involvement of Carlson in the affairs of the post-confirmation Debtors, the Debtors have proposed to install Stephen Sather as the "Plan Trustee" and "Plan Disbursement Agent." In those roles, the

Debtors propose that Mr. Sather "shall be empowered and required to make all payments under the Plan to the Creditors." *See* Modified Amended Plan, 4.11. The Modified Amended Plan further provides to Mr. Sather access to the "Reorganized Debtor's" books and records (5.03), control over the Reorganized Debtor's interests in the Harris County Suit, avoidance actions, and issues related to the Disputed Contract Litigation (5.04).

18. The Modified Amended Plan still proposes the assumption of the "Disputed Contracts" – i.e. the alleged Production Payment Allocation Agreement ("PPAA") between Met Water and its general partner, and the alleged Carrizo-Wilcox Production Payment Agreement, between Met Water and Carrizo-Wilcox Water Works, L.P. On the one hand, the Modified Amended Plan states that the "Debtors' proposed assumption of [the Disputed Contracts], by motion or under this Plan, shall be conditioned upon the final determination by the Bankruptcy Court as to those contracts' validity." *See* Modified Amended Plan 5.04. On the other hand, the Modified Amended Plan also states that Met Water "will assume" the PPAA, "and that agreement requires Met Water Texas to make the production payments to the Investors from the payments it receives under that Agreement." *See* Modified Amended Plan 5.14.

19. This plan provision further provides that payments pursuant to the PPAA will fund payments to the "Investors," to be made directly by general partner Met Water Texas. Thus, in effect, though the Modified Amended Plan purports to provide Mr. Sather with "full checkbook control over the finances of the Reorganized Debtor," it appears to be the expectation of the "Reorganized Debtor" that Mr. Sather will simply continue to make distributions to the general partner pursuant to the Disputed Contracts, and then the use of such funds by the general partner

(wholly controlled by Carlson) will be beyond the supervision or scrutiny of the Plan Trustee, the Court, or any other party in these cases.[2]

20. According to Exhibit C of the Modified Amended Plan, "Reorganized Debtor's Projections" [ECF No. 420-3], by far the greatest expenses of the Reorganized Debtor during the plan term, are payments to be made pursuant to the Disputed Contracts – estimated by Met Water to be $3,625,000.00 per year, or a total of $18,125,000.00 during the plan term. Given that these payments are proposed to be made to Met Water Texas and Carrizo-Wilcox Water Works, entities under the total control of Scott Carlson, the installation of Mr. Sather as the Plan Trustee and Plan Disbursement Agent, does little to address the concerns expressed by the Met Water LPs in the LP Objection, and by the other parties in their plan objections.

21. In fact, given the history of Mr. Carlson's "management" of the affairs of the Debtors, it is likely that confirmation of the Modified Amended Plan will be immediately followed by controversy over the conduct of Carlson, and his management of funds proposed to be distributed pursuant to the Disputed Contracts – again, these funds constitute the majority of the funds to be distributed under the Modified Amended Plan. Thus, any confirmation of the current plan, or any plan, should be conditioned upon full oversight, control, and transparency with respect to the usage of all moneys to be distributed by or on behalf of Met Water, including the usage of such funds by any entity under the influence or control of Scott Carlson.

22. Finally, although the Modified Amended Plan provides Mr. Sather with certain roles and oversight over certain of the Reorganized Debtor's post-confirmation activities, the Modified Amended Plan also leaves all other aspects of the management of Met Water in the hands

---

[2] According to the Investors' Motion for Removal of the Debtors-in-Possession [ECF No. 242], the Investors have not received payments in the amounts allegedly owed, or have not received payments at all, both on a pre and post-petition basis.

of Carlson, without any real oversight. The twelve pending legal actions related to the Debtors as of the Petition Date are the direct result of Carlson's unfettered management, and there is no reason to believe that the conduct resulting in those lawsuits will change on a post-confirmation basis. For the reasons set forth herein, and in the LP Objection, leaving Carlson in control of Met Water (to the extent not under the full control and supervision of a trustee), does not address the issues of good faith, feasibility, and other deficiencies identified by the Met Water LPs and the other objecting parties.

## VI. RESERVATION OF RIGHTS

23. The Met Water LPs have other concerns over discrete provisions of the Modified Amended Plan. Such issues will be presented by the Met Water LPs at the confirmation hearing. This Supplemental Objection is not intended to encompass every deficiency and ambiguity in the Modified Amended Plan, and the Met Water LPs reserve all rights to present additional argument, along with testimony and other evidence, at the confirmation hearing.

WHEREFORE, PREMISES CONSIDERED, for all of the foregoing reasons, the Met Water LPs pray that confirmation of the Modified Amended Plan be denied, and for such other and further relief to which the Met Water LPs may show themselves to be justly entitled.

Dated: August 26, 2022

Respectfully submitted,

**SPROUSE LAW FIRM**
901 Mopac Expressway South,
Building 1, Suite 300
Austin, TX 78746
(512) 658-1915 – Telephone
/s/ *Marvin E. Sprouse III*
Marvin E. Sprouse III
State Bar No. 24008067
Email: msprouse@sprousepllc.com

**COUNSEL FOR AUSTIN JSB, LTD., FOX RIVER REAL ESTATE HOLDINGS, INC., M. BUCKNER BACCUS, DANIEL T. COOPER, ROSS M. CUMMINGS, WARREN DEMAIO, BRUCE F. DICKSON, KEITH K. DICKSON, EUGENE A. FROST, JR., MARK A. FROST, AND AUGUST J. PELLIZZI**

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August 2022, I caused a true and correct copy of the foregoing to be served via the Court's CM/ECF Electronic notification system upon all parties registered for same, or via electronic delivery and/or regular U.S. Mail, postage prepaid upon the persons listed below:

| | |
|---|---|
| B. Weldon Ponder, Jr.<br>4408 Spicewood Springs Road<br>Austin, Texas 78759<br>Telephone: (512) 342-8222<br>Facsimile: (512) 342-8444<br>weldon@austin.rr.com | *Co-Counsel for Debtors in Possession, Metropolitan Water Company, L.P. and Met Water Vista Ridge, L.P.* |
| Catherine Lenox<br>P.O. Box 9904<br>Austin, Texas 78766<br>Telephone: (512) 689-7273<br>Facsimile: (512) 452-7273<br>clenox.law@gmail.com | *Co-Counsel for Debtors in Possession, Metropolitan Water Company, L.P. and Met Water Vista Ridge, L.P.* |
| Stephen W. Sather<br>Barron & Newburger, PC<br>7320 N. MoPac Expressway<br>Greystone II, Suite 400<br>Austin, Texas 78731<br>Telephone: (512) 916-5237<br>ssather@bn-lawyers.com | *Chapter 11 Subchapter V Trustee* |
| Shane P. Tobin<br>Office of the United States Trustee<br>shane.p.tobin@usdoj.gov<br>ustpregion07.au.ecf@usdoj.gov | *United States Trustee* |
| Brian Cumings<br>Graves Dougherty Hearon & Moody, PC<br>401 Congress Ave, Suite 2700<br>Austin, Texas 78701<br>bcumings@gdhm.com<br>*Counsel for H&V Holdings, Ltd. et al.* | |

Bryan Cave LLP
Two North Central Avenue
Suite 2100
Phoenix, AZ 85004-4406
Tricia.macaluso@bcplaw.com
*Counsel for Wilmington Trust, N.A. as Trustee for the Burleson/Milam Lease Master Trust*

Law Offices of Elizabeth G. Smith
6655 First Park Ten, Suite 240
San Antonio, TX 78213
beth@egsmithlaw.com
*Counsel for City of San Antonio, acting by and through San Antonio Water System*

United States Trustee – WA12
903 San Jacinto Blvd., Ste 230
Austin, TX 78701
ustregion07.au.ecf@usdoj.gov

Mike Stenglein
King & Spalding LLP
500 W. 2d St, Ste 1800
Austin, TX 78701
mstenglein@kslaw.com
*Counsel for Vista Ridge, LLC*

Kell C. Mercer, P.C.
901 S. Mopac Expy, Bldg. 1, Ste 300
Austin, TX 78746
kell.mercer@mercer-law-pc.com
*Counsel for Keller Shoreline Investments, Ltd.*

Sabrina L. Streusand
Streusand, Landon, Ozburn & Lemmon, LLP
1801 S. MoPac Expressway, Suite 320
Austin, Texas 78746
streusand@slollp.com
*Counsel for Alexander Dubose & Jefferson LLP*

James Hatchitt
Howry Breen & Herman, L.L.P.
1900 Pearl St.
Austin, Texas 78705-5408
jhatchitt@howrybreen.com
*Special Counsel to the Debtors*

                                        /s/ *Marvin E. Sprouse III*
                                        Marvin E. Sprouse III