**The relief described hereinbelow is SO ORDERED.**

**Signed September 13, 2022.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| METROPOLITAN WATER COMPANY, L.P. | § | Case No. 21-10903-hcm |
| MET WATER VISTA RIDGE, L.P. | § | Case No. 21-10904-hcm |
| Debtors.[1] | § | (*Jointly Administered under* |
| | § | *Case No. 21-10903-hcm*) |

**ORDER CONFIRMING SUBCHAPTER V**
**PLAN OF REORGANIZATION (CRAMDOWN UNDER § 1191(b))**

On August 29, August 30, September 1, and September 8, 2022, the Court conducted a hearing on the confirmation of the First Amended Joint Subchapter V Plan of Reorganization dated May 2, 2022, with Pre-Confirmation Modifications dated August 8, 2022 (collectively "Plan") (dkt# 365). The Plan was filed by Metropolitan Water Company, L.P. ("Met Water") and Met Water Vista Ridge, L.P. ("MWVR"), as debtors-in-possession in these jointly administered cases (collectively "Debtors").

Numerous creditors and parties in interest appeared at the confirmation hearing, including the Debtors, counsel for the Debtors, counsel for Blue Water Systems, L.P. and Blue Water Vista Ridge, LLC (collectively "Blue Water"), counsel for Austin JSB, Ltd., *et al.* (collectively "Adverse LPs"), counsel for Wallace J. Luke, III, *et al.* (collectively

---

1. Debtor Metropolitan Water Company, L.P., is also known as "Met Water" and "Metropolitan Water Company," its federal tax identification number is 76-0626172, and its mailing address is PO Drawer 1146, Brenham, Texas 77834. Debtor Met Water Vista Ridge, L.P., is also known as "Met Water Vista Ridge," its federal tax identification number is 47-4902308, and its mailing address is PO Drawer 1146, Brenham, Texas 77834.

"Investors"), counsel for Paul Keller and Keller Shoreline Investments, Ltd. (collectively "Keller"), and the Subchapter V Trustee in the Debtors' jointly administered cases.

During the hearing, the Court advised the Debtors that the Plan could be confirmed by the Court only if certain additional clarifications and modifications were made to the Plan. The Debtors agreed to make such additional clarifications and modifications, which are reflected in a Modified First Amended Joint Plan of Reorganization dated September 12, 2022 ("Modified Plan") (dkt# 466) and this Confirmation Order.  A copy of the Modified Plan[2] (without Exhibits A and B) is attached hereto as Exhibit 1.

The Court has considered the Plan, the Modified Plan, the evidence, the certificates of mailing and service of the Plan and related materials, the evidence, the ballot summaries filed by the Debtors, the agreements, statements, and arguments of counsel and the parties, the file and record in these bankruptcy cases, and hereby **FINDS AS FOLLOWS**:

A.     The Court has jurisdiction over these bankruptcy cases, the Debtors, and the subject matter of the confirmation hearing under 28 U.S.C. §§ 157 and 1334. Confirmation of the Modified Plan is a "core proceeding" under 28 U.S.C. § 157(b)(2) and the Court has jurisdiction and authority to enter this Confirmation Order.

B.     The Debtors are small business debtors and have properly elected treatment under Subchapter V of the Bankruptcy Code.

C.     Reasonable, adequate, and sufficient notice of the hearing on confirmation of the Plan, the Modified Plan, as well as the Plan voting and Plan objection deadlines set by the Court, has been provided to all creditors, parties in interest, and other parties entitled to notice and has complied with the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the Bankruptcy Code.

D.     The clarifications and modifications to the Plan by the Debtors reflected by the Modified Plan comply with all applicable requirements of 11 U.S.C. § 1193(a) and Bankruptcy Rule 3019.

E.     The contents of the Modified Plan satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the Bankruptcy Code.

F.     The Modified Plan and the Debtors have satisfied all applicable requirements for confirmation of the Modified Plan under 11 U.S.C. § 1129(a), except for 11 U.S.C. § 1129(a)(8) and § 1129(a)(10). However, the Modified Plan can and should be confirmed under 11 U.S.C. § 1191(b), as the Modified Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims and interests that have not accepted the Plan.

---

2. All capitalized terms in this Confirmation Order shall have their defined meanings as set forth in the Modified Plan, unless otherwise defined in this Confirmation Order.

G.     The Modified Plan and the Debtors have satisfied any and all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Modified Plan.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS**:

1.     The Modified First Amended Joint Plan of Reorganization dated September 12, 2022, ("herein Modified Plan") (dkt # 466) filed by the Debtors, is hereby CONFIRMED under **11 U.S.C. § 1191(b) (cramdown)**.  A copy of the Modified Plan (without Exhibits A and B) is attached hereto as <u>Exhibit 1</u>.

2.     To the extent any objections to confirmation of the Plan and Modified Plan have not been withdrawn, any such objections are hereby denied and overruled.

3.     Effective as of the Effective Date, the Subchapter V Trustee, Mr. Stephen W. Sather, is appointed and shall serve as the Plan Trustee (the "Plan Trustee") under the Modified Plan. The Plan Trustee shall be responsible for disbursing all payments to creditors and equity holders as required and permitted by the Modified Plan. The future earnings and other future income of Met Water shall be submitted to the supervision and control of the Plan Trustee as is necessary for the execution of the Modified Plan, as provided for by 11 U.S.C. § 1190(2).

4.     Met Water will be entitled to a discharge only upon completion of all payments due under the Modified Plan as provided by 11 U.S.C. § 1192; notwithstanding any provision in the Plan to the contrary, however, to the extent that the Blue Water Litigation has not been reduced to a final, non-appealable judgment awarding monetary and/or non-monetary relief to the Blue Water Parties during the Plan Term, or otherwise been fully satisfied during the Plan Term, such judgment shall not be discharged at the end of the Plan Term and may be enforced by the Blue Water Parties against Met Water, MWVR, or the Reorganized Debtor in accordance with applicable state law except to the extent that the Bankruptcy Court determines that any of the monetary relief awarded is not part of the Blue Water Parties' Allowed Claim.

5.     Property of Met Water's bankruptcy estate shall include all property acquired by Met Water and all earnings from services performed by Met Water after commencement of its bankruptcy case and before its bankruptcy case is closed, dismissed, or converted as provided by 11 U.S.C. § 1186(a), in addition to the property of Met Water as of commencement of the bankruptcy case under 11 U.S.C. § 541.  If Met Water's bankruptcy case is subsequently converted to Chapter 7, all property of Met Water shall automatically revest and become property of the bankruptcy estate of Met Water in the converted Chapter 7 case.

6.     Property of MWVR's bankruptcy estate shall include all property acquired by MWVR and all earnings from services performed by MWVR after commencement of its bankruptcy case and before its bankruptcy case is converted as provided by 11 U.S.C.

§ 1186(a), in addition to the property of MWVR as of commencement of its bankruptcy case under 11 U.S.C. § 541. Upon conversion of MWVR's bankruptcy case to a case under Chapter 7, all property of MWVR's estate shall automatically revest and become property of the bankruptcy estate of MWVR in the converted Chapter 7 case.

7.      The terms of the Modified Plan and this Confirmation Order will be binding upon the Debtors, the Reorganized Debtor, all creditors, and all equity holders, whether or not such creditors and equity holders are impaired under the Modified Plan or have accepted the Modified Plan, as provided by 11 U.S.C. § 1141(a).

8.      Within 3 business days after the Effective Date of the Modified Plan, counsel for the Debtors shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Modified Plan (the "Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties in interest by first class mail, postage prepaid. Counsel for the Debtors shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

9.      Within 14 days after substantial consummation of the Modified Plan, counsel for the Debtors shall serve notice of such substantial consummation pursuant to 11 U.S.C. § 1183(c)(2) (the "Substantial Consummation Notice"). The Substantial Consummation Notice shall be sent to all creditors and parties in interest by first class mail, postage prepaid. Counsel for the Debtors shall thereafter promptly file a copy of such Substantial Consummation Notice with proof of mailing with the Court.

10.      The Debtors, the Reorganized Debtor, the Plan Trustee, and their respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Modified Plan and to perform all acts and execute and deliver such documents as are necessary or appropriate under the Modified Plan and this Confirmation Order.

11.      In the event of any conflict between the terms of the Modified Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

12.      The Plan contains the Debtors' version of certain background facts, many of which are disputed by parties in interest.  Confirmation of the Plan, and entry of this Order, shall not constitute a judicial determination of any disputed background fact set forth in the Plan, and shall not be construed as *res judicata* on the issue of any such disputed fact.

13.      The Effective Date of the Modified Plan shall be September 30, 2022 (herein "Effective Date").

14.      As contemplated by Sections 5.09(b) and 5.21(a) of the Modified Plan, as of the Effective Date the automatic stay of 11 U.S.C. § 362(a) is hereby modified as to the suit styled *Fox River Real Estate Holdings, Inc., et al. v. Metropolitan Water Company,*

*L.P., et al.,* pending in the 215th District Court of Harris County, Texas (the "Harris County Suit"), to permit the Suit to proceed through entry of a final, non-appealable judgment but not to permit execution on such judgment. The Plan Trustee is hereby directed to pursue the removal of the Harris County Suit as soon as practicable upon his appointment as of the Effective Date, but in any event no later than 30 days after the Effective Date.

15.     Mr. W. Scott Carlson, Met Water Company of Texas, L.L.C. (the general partner of Met Water), and the Reorganized Debtor shall cooperate with the Plan Trustee to enable the Plan Trustee to fulfill his duties, responsibilities, and powers under the Modified Plan.

16.     As soon as practicable after the Effective Date, the Plan Trustee is authorized to transfer the reconciled balance of the funds in Met Water's debtor-in-possession bank account, Wells Fargo Bank Acct. No.XXXXXX2919, to its pre-petition operating account, Citizen's State Bank Acct. No. XX3685, and to thereafter close the debtor-in-possession account as soon as practicable.

17.     On or after the Effective Date, the Plan Trustee, on behalf of Met Water, shall file a separate Motion for disbursement of the Bankruptcy Court Registry Funds to be used to make payments under the Modified Plan, as contemplated by Sections 4.06 and 6.04 of the Modified Plan.

18.     On the Effective Date of the Modified Plan, MWVR shall file and serve a Motion to Convert the Chapter 11 case of MWVR to a Chapter 7 case in case no. 21-10904-hcm, which will be granted by the Court. Upon conversion to Chapter 7, MWVR's case shall cease to be jointly administered in this Chapter 11 case no. 21-10903-hcm, and MWVR's Chapter 7 case shall proceed under case no. 21-10904-hcm.

19.     Mr. Sather as Subchapter V Trustee shall procure a case-specific bond in favor of the United States of America subject to the United States Trustee's determination of the amount and sufficiency of that bond pursuant to 11 U.S.C. § 322(b). The Subchapter V Trustee shall monitor the bond and ensure that it is maintained in an appropriate amount until termination and discharge of the Subchapter V Trustee. The Subchapter V Trustee must promptly notify the United States Trustee of any significant increases in bank balances or any anticipated increases in funds that might warrant an increase in the Subchapter V Trustee's bond and adjust the bond as required by the United States Trustee.

20.     Met Water's assumption as of the entry of this Order of all its executory contracts and unexpired leases, as provided in the Plan, is hereby approved; provided, however, that its assumption of the Disputed Contracts is expressly conditioned upon the final determination by this Court as to those Contracts' validity.

21.     MWVR's assumption as of the entry of this Order of all its executory contracts and unexpired leases as provided in the Plan, is hereby approved.

22.     The findings of fact and the conclusions of law stated in the Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

23.     This Confirmation Order is a final order and the time period in which any appeal must be filed shall commence immediately upon the entry hereof.

# # #

**<u>APPROVED AS TO FORM ONLY:</u>**


_/ s /  Weldon Ponder_            .
B. WELDON PONDER, JR.
Attorney at Law
State Bar of Texas No. 16110400
4408 Spicewood Springs Road
Austin, Texas 78759
512.342.8222 / 512.342.8444 fax
welpon@austin.rr.com

COUNSEL FOR PLAN PROPONENTS
and DEBTORS IN POSSESSION,
METROPOLITAN WATER COMPANY, L.P.,
and MET WATER VISTA RIDGE, L.P.


_/ s /  Stephen W. Sather_            .
Stephen W. Sather
State Bar of Texas No. 17657520
7320 N. MoPac Expy., Suite 400
Austin, Texas 78731
512.476.9103 Ext. 220 / 512.476.9253 fax
ssather@bn-lawyers.com

SUBCHAPTER V TRUSTEE


_Order submitted by:_
B. WELDON PONDER, JR.

# EXHIBIT 1

## DEBTORS' MODIFIED FIRST AMENDED PLAN OF REORGANIZATION DATED SEPTEMBER 12, 2022

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| *In re:* | § | |
| **METROPOLITAN WATER COMPANY, L.P.,** | § | **Case No. 21-10903-HCM** |
| **MET WATER VISTA RIDGE, L.P.,** | § | **Case No. 21-10904-HCM** |
| *Debtors in Possession.*[3] | § | *(Jointly Administered* |
| | § | *under Case No. 21-10903-HCM)* |

## DEBTORS' MODIFIED FIRST AMENDED PLAN OF REORGANIZATION DATED SEPTEMBER 12, 2022

Metropolitan Water Company, L.P. ("Met Water"), and Met Water Vista Ridge, L.P., ("MWVR," together with Met Water, the "Debtors"), the debtors in possession in the above-styled and numbered jointly administered bankruptcy cases, pursuant to 11 U.S.C. § 1127(a) hereby file their Modified First Amended Plan of Reorganization dated September 12, 2022 (the "Plan"), pursuant to Subchapter V of Chapter 11 of Title 11, United States Code (hereinafter the "Bankruptcy Code" or "Code").

ARTICLE I

**DEFINITIONS**

Except as otherwise indicated in this Plan, the terms used in this Plan have the definitions used in the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court and the United States District Court for the Western District of Texas. In addition, the following terms shall have the following meanings:

**1.01.** **130 Project** shall mean the wellfield, pipeline, and associated infrastructure for the supply of water from certain of Met Water's groundwater leases in Burleson and Milam Counties in Texas, to wholesale water purchasers in various communities in Bastrop and Travis Counties in Texas.

---

3. The last four digits of the Debtors' federal tax identification numbers are: Metropolitan Water Company, L.P. (6172); Met Water Vista Ridge, L.P. (2308). The Debtors' mailing address is P.O. Drawer 1146, Brenham, TX 77834-1146.

**1.02.    Administrative Expense** shall mean those Claims entitled to priority under § 507(a)(1), § 503(b) and § 330 of the Code, which include fees and expenses of the bankruptcy attorneys for the Debtors and their Special Litigation Counsel and of Met Water's accountants, and shall include, without limitation, any actual and necessary expenses of preserving the Estates of the Debtors, any actual and necessary expenses of the Debtors' business, any fees and expenses of the Subchapter V Trustee and of his professionals, and any fees or charges assessed against either or both of the Debtors' Estates under Chapter 123, Title 28, United States Code.

**1.03.    Allowed Claims** shall mean a Claim:

(a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by the Bankruptcy Rule 3003, in a liquidated non-contingent amount; or

(b) scheduled in the Schedule of Liabilities prepared and filed with the Court by either Met Water or MWVR pursuant to Federal Rule of Bankruptcy Procedure 1007(b) and not listed as disputed, contingent, or unliquidated as to amount in those Schedules, and

(c) in either case (i.e., (a) or (b) above), as to which no objection to the allowance thereof has been filed, or as to which any such objection has been determined by a final order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated hereafter in the Plan or expressly permitted by the Bankruptcy Court.

**1.04.    Allowed Equity Interest** shall mean each of the current general and limited partner interests in Met Water or MWVR.

**1.05.    Allowed Secured Claim** shall mean an Allowed Claim secured by a lien, security interest, mortgage or other interest in property in which either Debtor has an interest, or which is subject to set-off under § 553 of the Code, to the extent of the value of such property securing the Allowed Secured Claim pursuant to § 506(a) of the Code or to the extent the amount is subject to said set-off, as the case may be. An Allowed Secured Claim may include post-petition interest if permitted under § 506 of the Code. The Debtors do not believe there are any Allowed Secured Claims against either of them.

**1.06.    Avoidance Action** shall mean any and all rights, claims or actions that at the time of Confirmation are assertable as of Confirmation by a Debtor against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under §§ 542, 544, 545, 546, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any preference or fraudulent transfer action under any applicable state law, except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan.

**1.07.    Baldwin Lease** shall mean that certain groundwater lease dated September 1, 2016, between Joe Baldwin, as Lessor, and MWVR., as Lessee, that concerns a tract of land in Burleson County, Texas (the only groundwater lease in which MWVR claims an interest that is currently

producing), more particularly described as 3.77 acres of land, more or less, a part of the Euclid M. Cox Survey, Abstract 82, Burleson County, Texas, and being the same land as described in a Deed dated April 25, 2014 from Daniel Lee Tucker to Joe Baldwin, recorded in Volume 943, Page 619 of the Official Public Records of Burleson County, Texas.

**1.08.** **Baldwin Lease Litigation,** part of the Vista Ridge Litigation, shall mean the lawsuit that was pending as of the Petition Date in the federal District Court for the Western District of Texas between MWVR, Vista Ridge and the Trust, and in which Blue Water Vista Ridge, LLC, intervened. The suit was dismissed with prejudice by Final Judgment entered June 16, 2022.

**1.09.** **Bankruptcy Case** and **Bankruptcy Cases** shall mean the case commenced by Met Water and/or the case commenced by MWVR, depending on the context, upon the filing of such Debtor's voluntary petition under the Bankruptcy Code on the Petition Date.

**1.10.** **Bankruptcy Code or the Code** shall mean the United States Bankruptcy Code as contained in 11 U.S.C. § 101, et seq., and all applicable amendments thereto.

**1.11.** **Bankruptcy Court Registry Funds** shall mean Met Water's second payment from the Vista Ridge Project that was deposited into the registry of the Bankruptcy Court on May 20, 2022, in the amount of $6,933,911.54 as of that date, and including all accrued interest thereon.

**1.12.** **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure, as amended.

**1.13.** **Bar Date** shall mean the last date on which a proof of Claim may be timely filed against Met Water and/or MWVR, unless otherwise extended by a Final Order of the Bankruptcy Court, which deadline was January 31, 2022.

**1.14.** **Blue Water Litigation** shall mean any or all of the following litigation and any related matters filed in the appellate courts:

(i)     Washington County Litigation, including the appeals pending in the Fourteenth Court of Appeals, Houston, Texas as Cause Nos. 14-20-00524-CV and 14-21-00403-CV;

(ii)     Severed Washington County Suit;

(iii)     Cause No. D-1-GN-18-001582 pending in the 261st Judicial District, Travis County, Texas, and styled as *Metropolitan Water Company, L.P., and Metropolitan Water Vista Ridge, L.P., v. Blue Water Systems, LP, and Blue Water Vista Ridge, LLC, and Blue Water 130 Project, LP*;

(iv)     Cause No. D-1-GN-20-003381 pending in the 201st District Court of Travis County, Texas, and styled as *Metropolitan Water Company, L.P., and Metropolitan Water Vista Ridge, L.P., v. Blue Water Systems, LP, Blue Water 130 Project, LP, and Blue Water Vista Ridge, LLC*;

(v)     Cause No. D-1-GN-21-001598 pending in the 126th Judicial District Court of Travis County, Texas, and styled as *Metropolitan Water Company, L.P., v. Blue Water Vista Ridge, LLC, and Wilmington Trust, N.A., as Trustee for the Burleson/Milam Master Lease Trust, v. Keller Shoreline Investments, Ltd., and Paul W. Keller*, including the appeal pending in the Third Court of Appeals, Austin, Texas, as Cause No. 03-21-00206-CV; and

(vi)    Cause No. D-1-GN-20-006113 pending in the 250th Judicial District Court of Travis County, Texas, and styled as *Blue Water Vista Ridge, LLC v. Vista Ridge, LLC.*

**1.15.    Blue Water Parties** shall mean any or all of Blue Water Vista Ridge, LLC, Blue Water Regional Supply Project, LP, Blue Water 130 Project, LP, and Blue Water Systems, LP.

**1.16.    Carlson** or **Mr. Carlson** shall mean W. Scott Carlson, the principal of Met Water Texas, the general partner of each of the Debtors.

**1.17.    Claim** shall have the meaning given in 11 U.S.C. § 101(5).

**1.18.    Class** shall mean a group of Claims or Interests classified together in accordance with 11 U.S.C. § 1123.

**1.19.    Confirmation Date** shall mean the date upon which the Confirmation Order is entered by the Court.

**1.20.    Confirmation Order** shall mean the order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

**1.21.    Court or Bankruptcy Court** shall mean the United States Bankruptcy Court for the Western District of Texas in which the Debtors' Bankruptcy Cases are pending.

**1.22.    Creditor** shall mean any party or entity having a Claim against either or both of the Debtors, including but not limited to the following: Administrative Expense Creditors, Unsecured Creditors, and Insiders as herein defined.

**1.23.    Debt** shall have the same meaning ascribed to it in § 101(12) of the Bankruptcy Code.

**1.24.    Debtor** or **Debtors** shall mean Met Water and/or MWVR, the debtors in possession and proponents of this Plan of Reorganization, depending on the context.

**1.25.    Disallowed** shall mean, when used with respect to a Claim, any portion thereof, that: (a) has been disallowed by either a Final Order or pursuant to a settlement; (b) has been withdrawn by the holder of the Claim; or (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which the Bar Date has been established but no proof of Claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the

Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

**1.26.** **Disposable Income** shall have the same meaning as set forth in 11 U.S.C. § 1191(d) and, with respect to Met Water, shall mean its income after deduction for its Expenses (including a reserve for such Expenses).

**1.27.** **Disputed** shall mean the portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim as to which: (a) a proof of claim has been filed, or deemed filed under applicable law or order of the Bankruptcy Court; (b) an objection has been or may be timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order. Before the time that an objection has been or may be filed, and unless otherwise, formally allowed pursuant to an order of the Bankruptcy Court, a Claim shall be considered a Disputed Claim (i) if the amount or classification of the Claim specified in the proof of claim exceeds the amount or classification of any corresponding Claim listed by Met Water or MWVR in its Schedules, to the extent of such excess; (ii) in its entirety, if any corresponding Claim is listed by such Debtor in its Schedules as disputed, contingent, or unliquidated; or (iii) in its entirety, if no corresponding Claim has been listed by such Debtor in its Schedules.

**1.28.** The **Disputed Contracts** shall mean the Met Water's Production Payment Allocation Agreement with Met Water Texas and Met Water's Production Payment Agreement with Carrizo-Wilcox Water Works, L.P.

**1.29.** The **Disputed Contract Litigation** shall mean any litigation concerning the validity and enforceability of the Disputed Contracts, including but not limited to Adversary No. 22-1053 filed in the Bankruptcy Cases and styled *Blue Water Systems, LP, Blue Water Vista Ridge, LLC, and Blue Water 130 Project, LP, v. Met Water Texas and Carrizo-Wilcox Water Works, LP.*, and, to the extent it involves the Disputed Contracts, the Harris County Suit.

**1.30.** **Effective Date** shall mean September 30, 2022.

**1.31.** **Estate or Bankruptcy Estate** shall mean the bankruptcy estate of Met Water or MWVR, depending on the context, created upon the commencement of the Bankruptcy Case pursuant to § 541 of the Bankruptcy Code.

**1.32.** **Expenses** shall mean the post-Confirmation ongoing expenditures of Met Water that are necessary for the continuation, preservation or operation of its business, including but not limited to its ongoing payments to lessors, its ongoing litigation and reorganization expenses, and any anticipated Administrative Expense required to be paid upon Allowance of such Claim.

**1.33.** **First Payment Date** shall mean the date that the first payment to General Unsecured Creditors under the Plan is required to be made; the First Payment Date under this Plan is the first business day of the month following the first full month after the Effective Date.

**1.34.** **Harris County Suit** shall mean the lawsuit pending as of the Petition Date in the 215th District Court of Harris County, Texas, by and between Fox River Real Estate Holdings, Inc., Austin JSB, Ltd., M. Buckner Baccus, Daniel T. Cooper, Ross M. Cummings, Warren Demaio, Bruce F. Dickson, Keith K. Dickson, Eugene A. Frost, Jr., Mark A. Frost, and August J. Pellizzi (and R. Hal Moorman, Milton Y. Tate and Lynette Dahmann as Intervenors) on the one hand, and Mr. Carlson, Met Water Texas, and MWVR on the other.

**1.35.** **Impaired** shall have the same meaning as set forth in § 1124 of the Bankruptcy Code.

**1.36.** **Investors** shall mean those persons who advanced funds, directly or indirectly, to Met Water beginning in 2004, for the purpose of enabling it to purchase groundwater leases for the 130 Project and/or the Vista Ridge Project.

**1.37.** **Litigation** shall mean any or all of the lawsuits in which Met Water or MWVR was a party on the Petition Date, and includes but is not limited to the Vista Ridge Litigation and the Harris County Suit.

**1.38.** **Litigation Assets** shall mean any claim, offset, Avoidance Action, cause of action of any kind, suit, controversy, right to payment, whether legal or equitable, known or unknown, liquidated or unliquidated, fixed or contingent, of, belonging to, owned by, or assertable by, Met Water and/or MWVR, whether listed in either or both of the Debtors' Schedules (as amended, supplemented and/or modified from time to time), the Plan, the Confirmation Order or any pleading in either or both Debtor's Bankruptcy Case, including without limitation the scheduled claims against any or all of the Blue Water Parties, Vista Ridge and/or the Trust, and the plaintiffs' claims in the Harris County Suit.

**1.39.** **Litigation Claims** shall mean any Claim, offset, cause of action of any kind, suit, controversy, or right to payment arising before the Petition Date, whether legal or equitable, known or unknown, liquidated or unliquidated, fixed or contingent, of any person against Met Water, whether filed as a proof of claim or listed in Met Water's Schedules (as amended, supplemented and/or modified from time to time), the Plan, the Confirmation Order or any pleading in the Bankruptcy Cases, including without limitation the scheduled or filed Claims of any or all of the Blue Water Parties and Vista Ridge.

**1.40.** **Met Water** shall mean Metropolitan Water Company, L.P., the debtor in possession in Case No. 21-10903 and one of the joint proponents of this Plan, and the Reorganized Debtor on and after the Effective Date.

**1.41.** **Met Water Texas** shall mean Metropolitan Water Company of Texas, L.L.C., the general partner of Met Water and of MWVR.

**1.42.** **MWVR** shall mean Met Water Vista Ridge, L.P., the debtor in possession in Case No. 21-10904 and one of the joint proponents of this Plan.

**1.43.    Petition Date** shall mean November 22, 2021, the date that the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code, commencing these jointly administered cases.

**1.44.    Plan** shall mean this Debtors' Modified First Amended Joint Small Business Subchapter V Plan of Reorganization, including any modification, amendments or supplements thereto.

**1.45.    Plan Disbursement Agent** shall mean that person that delivers payments to Creditors from and after Confirmation of the Plan, under the Plan; the Plan Trustee shall be the Plan Disbursement Agent under the terms of the Plan.

**1.46.    Plan Term** shall mean that period after the Effective Date during which payments are being made to Creditors; the Plan Term for this Plan will end on the earlier of: (i) the date that all Allowed Claims against that Debtor have been paid in full, or (ii) the date five (5) years from Met Water's First Payment Date.

**1.47.    Plan Trustee** shall mean Stephen W. Sather, or any successor to him appointed in accordance with Section 4.11 below, in such person's role following Confirmation of the Plan and for the duration of the Plan Term; such role, and the Plan Trustee's powers and duties, are set forth in the Plan and the Confirmation Order.

**1.48.    *Pro Rata*** shall mean the proportion that any Allowed Claim in any Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.49.    Production Payment Agreement** shall mean the Production Payment Agreement dated effective March 6, 2012, by and between Met Water and Carrizo-Wilcox Water Works, L.P.

**1.50.    Production Payment Allocation Agreement** shall mean the Production Payment Allocation Agreement dated effective October 23, 2004, by and between Met Water and Met Water Texas.

**1.51.    Registry Funds** shall mean Met Water's first payment from the Vista Ridge Project that were interpleaded into the registry of the Washington County District Court on October 22, 2021, in the amount of $4,131,778.58 as of that date, and including all accrued interest thereon.

**1.52.    Reorganized Debtor** shall mean Met Water on and after the Effective Date.

**1.53.    SAWS** shall mean the City of San Antonio acting by and through the board of trustees of the San Antonio Water System, the entity that purchases water from the Vista Ridge Project to supply the City of San Antonio.

**1.54.    Severed Washington County Suit** shall mean the litigation, pending as Cause No. 37,793, by and between Blue Water 130 Project, LP, and Metropolitan Water Company, L.P., and intervenor Blue Water Systems, LP.  Alignment of the parties in the Severed Washington County Suit is disputed. It is Met Water's position that, having non-suited its claims prior to the severance,

it is the defendant, and that Blue Water 130 Project, LP, is the plaintiff and Blue Water Systems, LP, is the intervenor-plaintiff in the Severed Washington County Suit. The Blue Water Parties dispute Met Water's characterization.

**1.55. Subchapter V Trustee** shall mean Stephen W. Sather as the Subchapter V Trustee appointed by the United States Trustee in each of these jointly administered bankruptcy cases, or any successor to him.

**1.56. Trust** shall mean the Burleson/Milam Master Lease Trust acting through its trustee, Wilmington Trust.

**1.57. Unimpaired Claim** shall mean any Claim or any Class of Claims that are not Impaired under the Plan. The term **Impaired** as used in this definition refers to and is governed by the language of § 1124 of the Code.

**1.58. Unsecured Claim** shall mean any Allowed Claim against Met Water and/or MWVR for which the holder has no security for the repayment thereof, or the portion of an Allowed Secured Claim for which the security held by the holder of that claim is insufficient to fully satisfy the Claim. This category includes all Claims deemed unsecured pursuant to § 506(a) of the Code.

**1.59. Vista Ridge** shall mean Vista Ridge, LLC.

**1.60. Vista Ridge Litigation** shall mean the Baldwin Lease Litigation pending in federal District Court of the Western District of Texas and the lawsuits pending in Texas State Courts as of the Petition Date by and between Met Water and, sometimes, MWVR on the one hand, and one or more of the Blue Water Parties, Vista Ridge and/or the Trust, on the other hand, and includes the Washington County Litigation.

**1.61. Vista Ridge Project** shall mean the wellfield, pipeline, and associated infrastructure originating in Burleson and Milam Counties in Texas that supply water from certain of Met Water's groundwater leases to SAWS as the wholesale purchaser and residents of San Antonio as the ultimate consumers/purchasers.

**1.62. Washington County Litigation**, part of the Vista Ridge Litigation, shall mean the lawsuit pending as of the Petition Date in the 21st District Court of Washington County, Texas, currently by and between Blue Water Systems, LP, and Blue Water Vista Ridge, LLC, on the one hand, and Met Water and MWVR on the other hand.

ARTICLE II

## DESCRIPTION AND BRIEF HISTORY OF EACH DEBTOR'S BUSINESS AND DESCRIPTION OF THE DEBTORS' ESTATES
### Metropolitan Water Company, L.P.

**2.01.**   Met Water is a Texas limited partnership formed in December of 1999. Its general partner is Metropolitan Water Company of Texas, L.L.C. ("Met Water Texas"), which is controlled by W. Scott Carlson ("Mr. Carlson"). Met Water was the original lessee under approximately 6500 groundwater leases, primarily in Burleson and Milam Counties in Texas.

**2.02.**   Met Water began acquiring groundwater leases in December of 1999. It initially marketed groundwater for sale itself, and later contracted with business partners to market groundwater for sale, including Blue Water Systems, LP.

**2.03.**   In 2004, it became apparent that the original funding from the limited partners of Met Water would not be sufficient to allow it to acquire the number of groundwater leases needed for the success of its business, so additional investors were sought and obtained by it and Met Water Texas for that purpose (the "Investors").  With the knowledge and acquiescence of the existing limited partners, more than $6 million in additional capital was raised from the Investors and contributed to Met Water. In exchange, the Investors are entitled to be paid by Met Water Texas a portion of the production payments that it receives from Met Water.

**2.04.**   The first water sales from Met Water's groundwater leases occurred in 2011, when a 53-mile pipeline from Burleson County to eastern Travis County was completed.  That water supply project, referred to by the participants as the "130 Project" (the wellfield, pipeline, and associated infrastructure for the supply of water to wholesale water purchasers), currently produces approximately 3–4 million gallons of water per day to several customers.

**2.05.**   As of the filing of this Plan, approximately 451 of Met Water's groundwater leases are not yet producing. Almost 304 of Met Water's groundwater leases are producing as part of the

130 Project. The few leases under which Met Water is lessee which are not part of the 130 Project are held by delay rentals or are paid-up leases still within their primary terms.

2.06.    Met Water is current on all of its payments to lessors on its groundwater leases that are part of the 130 Project.

2.07.    Met Water also holds reversionary lessee's interests in an additional approximately 1,300 groundwater leases in Burleson County and Milam County. In October 2014, Met Water transferred the lessee's present interests in these leases, ultimately to the Burleson/Milam Master Lease Trust (the "Trust"), for the purpose of financing a regional water supply project to supply water to the City of San Antonio, Texas (the "Vista Ridge Project").  In exchange for such transfer, Met Water is entitled to receive production payments from the Vista Ridge Project. The Vista Ridge Project, and Met Water's participation in the Vista Ridge Project and right to receive each and every one of those payments are, among other things, the subjects of a number of lawsuits in Texas State Courts between Met Water and, sometimes, MWVR on the one hand, and one or more of the Blue Water Parties, Vista Ridge and/or the Trust, on the other hand (collectively, the "Vista Ridge Litigation").

2.08.    In particular, the Blue Water Parties claim (among other things) that Met Water is not entitled to its payments to the extent that it is liable to or otherwise owes one or more of the Blue Water Parties, and because of those claims the Trust interpleaded Met Water's first payment from the Vista Ridge Project, in the amount of $4,131,778.58 (as of October 22, 2021[4]) into the registry of the Washington County District Court, one of the Courts where the Vista Ridge Litigation was pending as of the Petition Date (the "Registry Funds").  The Registry Funds, which

---

4. These funds in the registry of the Court continue to accrue interest.

Met Water claims and no party disputes are its funds, remain in that Court's registry as of the filing of this Plan.

**2.09.**    To the best of Met Water's knowledge, all of the payments under the Vista Ridge Project leases are current, although it is not privy to the administration of those leases so long as it holds only reversionary interests in them. The reversionary interests are not expected to revert to Met Water until the end of the Vista Ridge Project contracts to supply water to SAWS, which are expected to last at least sixty (60) years.

**2.10.**    In 2012, Carrizo-Wilcox Water Works, L.P., and Met Water entered into a Production Payment Agreement under which the former receives production payments from the 130 Project and the Vista Ridge Project in consideration of its investment of approximately $635,000.

### Met Water Vista Ridge, L.P.

**2.11.**    MWVR is a Texas limited partnership formed in July of 2015. Its general partner is also Met Water Texas, which is controlled by Mr. Carlson. Its sole limited partner is Carrizo-Wilcox Water Development, L.L.C. ("Carrizo-Wilcox Development"). Mr. Carlson and his family members own 100% of the equity of Carrizo-Wilcox Development, and he is in control of that entity as its managing member.

**2.12.**    MWVR originally scheduled interests in its Bankruptcy Case as the lessee under three groundwater leases in Burleson County, Texas. MWVR came into ownership of those three groundwater leases beginning in 2016. It later added to its Schedules its lessee's interests under another four groundwater leases in Milam County. Two of MWVR's Burleson County leases, as well as all its Milam County leases, are not producing and are still within their primary terms. It is MWVR's opinion that those six non-producing leases have *de minimis* value at this time, but that the expense of holding the leases is also *de minimus*.

**2.13.**    The third lease in Burleson County that MWVR scheduled as owned by it, referred to herein as the "Baldwin Lease," has two wells on it that are producing, and the water being withdrawn is being taken and sold by Vista Ridge. The Baldwin Lease was the subject of litigation, pending as of the Petition Date with the Blue Water Parties and Vista Ridge, which claimed that MWVR and/or Met Water should be compelled to transfer that lease to the Blue Water Parties. The dispute over the Baldwin Lease was also one of the issues in the Washington County Litigation. Finally, it was the subject of the suit in the federal District Court in the Western District of Texas (the "Baldwin Lease Litigation").   In an interlocutory ruling, the Washington County Court granted a partial summary judgment against MWVR. In addition, the Bankruptcy Court ruled that Vista Ridge's withdrawal of water from the real estate covered by the Baldwin Lease does not violate the automatic stay.  That ruling, because made in connection with automatic stay litigation, was also not a final, enforceable decision regarding MWVR's rights and property interests. However, on June 16, 2022, the United States District Court in the Baldwin Lease Litigation found adversely to MWVR as to its claim to its Baldwin Lease and its entitlement to the water withdrawn from the property covered by that Lease, dismissing MWVR's claims with prejudice pursuant to a Final Judgment. Neither Met Water (which was also a party to that suit) or MWVR has appealed that Final Judgment.

ARTICLE III

**BANKRUPTCY**

**3.01.**    On November 22, 2021 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code, which commenced their respective Bankruptcy Cases. Each of the Debtors, as a debtor in possession, continues to manage its assets and financial affairs and operate its business. That includes owning the lessees' interests under their groundwater leases and administering some of those interests, and prosecuting

12

and defending claims in litigation (including litigation by and against the Blue Water Parties and

Vista Ridge with respect to those interests and other matters).

    **3.02.** The following "administrative" matters have occurred in the Debtors' cases since

the Petition Date:

        (a) On November 23, 2021, Stephen W. Sather was appointed Subchapter V Trustee in each of the cases. The Trustee's Motion for Post-Petition Security Deposit was granted on February 1, 2021.

        (b) On November 24, 2021, after expedited hearings, orders were entered granting Met Water's Motions for Authority to Maintain Certain Pre-Petition Bank Accounts and for Authority to Timely Make Pre-Petition Royalty and Delay Rental Payments.

        (c) On November 29, 2021, after an expedited and contested hearing, an order was entered granting the Debtors' Motion to Jointly Administer their cases.

        (d) The Section 341 Creditors Meeting was conducted and concluded by the United States Trustee on December 17, 2021. The Debtors have filed their Small Business Debtor documents and, as of the filing of this Plan, are current in the filing of their monthly operating reports.

        (e) On January 18, 2022, the status conferences required in Subchapter V Chapter 11 cases were held and concluded in each of the Bankruptcy Cases.

        (f) On January 19, 2022, an order was entered approving the Debtors' employment of B. Weldon Ponder, Jr., and Catherine Lenox as bankruptcy counsel.

        (g) On March 4, 2022, Met Water's Motion to Keep Open, But Not Use, Certain Pre-Petition Bank Accounts was granted.

        (h) On March 11, 2022, Met Water requested, and on April 5, 2022, the Court approved, that Debtor's employment of Atchley & Associates, LLP, as its accountants.

        (i) On May 12, 2022, Met Water amended Schedule F to add another claim of an already scheduled creditor and Schedule G to add and delete certain executory contracts.

    **3.03.** The following matters and orders concerning the Plan and Confirmation of the Plan

have been filed and entered in the cases to date:

        (a) On February 22, 2022, the Debtors timely filed their original joint Plan (the "Original Plan"), within 90 days of the Petition Date.

(b) On March 25, 2022, the Court entered a Scheduling Order with respect to the Original Plan and its Confirmation, setting certain deadlines and hearings including deadlines related to discovery in connection with the Plan, voting on and objecting to the Plan, and the hearing on Confirmation of the Plan. Certain of those deadlines were later extended by order entered April 22, 2022. A number of motions to compel discovery responses and to quash discovery requests were filed and have been opposed, heard and ruled on. July 29, 2022, was the last date for discovery to be conducted under the Scheduling Order, unless extended by agreement by the parties.

(c) On May 2, 2022, the Debtors filed their First Amended Plan.

(d) On August 4, 2022, the Court denied the Debtors' request to extend the deadline of August 8, 2022, for filing modifications to the First Amended Plan.

**3.04.** The following contested matters have been resolved or are pending as of the filing of this Plan:

(a) On December 3, 2021, the Blue Water Parties filed a Motion for Relief from Automatic Stay seeking to pursue the Washington County Litigation. On December 9, 2021, the Debtors removed that suit from that Court to the Bankruptcy Court. The Blue Water Parties, joined by Vista Ridge and the Trust, requested the Bankruptcy Court to remand the suit, and on January 7, 2022, the Court held an expedited hearing on the Motion for Relief from Automatic Stay and the Motion to Remand. At the conclusion of that hearing, the Court ruled that the suit would be sent back to Washington County District Court, and on that date an order was entered granting the Motion for Relief from Automatic Stay and remanding the suit, but not to allow any collection of a judgment from either of the Debtors or from property of either Debtors' Estate without further order of the Bankruptcy Court.

(b) After a contested hearing and with some conditions, on January 19, 2022, the Court approved the Debtors' employment of Howry Breen & Herman, L.L.P., as their Special Litigation Counsel.

(c) In preparation for the hearing on its Motion for Enforcement of the Automatic Stay (*see* below on pending contested matters), MWVR filed a notice of intent to depose SAWS, and SAWS in response filed a Motion to Quash the subpoena it received for that deposition. The hearing on the Motion to Quash was held on February 15, 2022, and the Bankruptcy Court ruled that the deposition and document production would go forward as noticed with limited exceptions.

(d) MWVR filed a Motion for Enforcement of the Automatic Stay, by which it sought an order holding Vista Ridge in contempt for its alleged continuing violation of the stay by withdrawing and selling water from the Baldwin Lease, without the consent of MWVR and without compensating it. MWVR also requested the Bankruptcy Court to impose a fine on Vista Ridge for each day it continued such actions. The Blue Water Parties and Vista Ridge opposed MWVR's Motion. On February 24, 2022, the Bankruptcy Court held an expedited

hearing, after which it denied the Motion. In doing so, it held that Vista Ridge's conduct did not violate the automatic stay.

(e) On March 22, 2022, Met Water filed a motion to assume its office lease, and MWVR filed a motion to assume its groundwater leases. MWVR's motion was objected to by the Blue Water Parties, and both motions were objected to by certain limited partners of Met Water.[5] On June 19, 2022, Met Water filed a series of motions to assume all of its groundwater leases, and a motion to assume, to the extent required to maintain those interests, its reversionary interests in the groundwater leases it transferred to Vista Ridge, LLC. Objections to those motions were also filed: by the Trust with respect to the latter motion, and by the Blue Water Parties and by certain limited partners of Met Water with respect to all those motions.

(f) On May 2, 2022, the Bankruptcy Court held a status conference regarding both the Motion, filed by Blue Water Systems, LP, and Blue Water Vista Ridge, LLC, to Authorize Deposit of Contested Funds in the Registry of the 21st Judicial District Court, Washington County, Texas ("Blue Water's Motion on 2022 Payment") and the Motion, filed by Met Water, to Compel Turnover of Property of the Estate by Wilmington Trust, N.A., as Trustee of the Burleson/Milam Lease Trust and/or Blue Water Vista Ridge, LLC, pursuant to 11 U.S.C. § 542 (Met Water's "Turnover Motion"). At the conclusion of that hearing, the Court ruled that the 2022 Payment must be deposited into its registry, and on May 16, 2022, an order was entered requiring that deposit.  The 2022 Payment, in the amount of $6,933,911.54 was received into the Registry on May 20, 2022.

(g) On June 20, 2022, certain Investors[6] filed a motion to remove Met Water and MWVR as debtors in possession. Certain limited partners[7] and the Blue Water Parties are supporting that motion. Met Water and MWVR oppose the motion.

(h) Certain limited partners of Met Water filed a motion on July 8, 2022, to determine the validity of certain disputed contracts of that Debtor. Met Water has filed a response to that motion.

(i) On July 25, 2022, the Court held a hearing on the Motion for Relief from Stay filed by the Blue Water Parties, seeking to modify the automatic stay to allow the Baldwin Lease Litigation, and a second lawsuit (the "Severed Washington County Suit") pending in the 21st Judicial District Court of Washington County, involving certain claims related to the 130 Project, which was severed from the Washington County Suit, to proceed. The Motion was denied with respect to the Baldwin Lease Litigation, but was granted with respect to the Severed Washington County Suit to the extent it allows that case to proceed to a final, non-appealable judgment on any and all claims by any party, but not to allow any collection of a

---

5. In particular, an objection to each motion was filed jointly by M. Buckner Baccus, Daniel T. Cooper, Ross M. Cummings, Warren Demaio, Bruce F. Dickson, Keith K. Dickson, Fox River Real Estate Holdings, Inc., Mark A. Frost, Eugene A. Frost Jr., and August J. Pellizzi.

6. David Weber, Wallace J Luke, Steven J Hubbell, and H&V Holdings, Ltd.

7. *See* footnote 3 above.

judgment from either of the Debtors or from property of either Debtors' Estate without further order of the Bankruptcy Court.

(j)  On August 4, 2022, the Court held hearings on the Subchapter V Trustee's fee applications requesting compensation and reimbursement of expenses in each Debtor's case, and on the first interim fee application of Catherine Lenox, co-counsel for the Debtors. Also set that day was Met Water's motion to use the Bankruptcy Court Registry Funds to pay professionals' fees and other administrative expense claims.  The Subchapter V Trustee's fees and expenses with respect to the Met Water case, and Ms. Lenox's fees and expenses for her representation of Met Water, were approved and ordered paid from the Registry; the other relief requested by Met Water in that motion was denied. The Subchapter V Trustee's fees with respect to the MWVR case, and Ms. Lenox's fees for her representation of MWVR, were also approved and administrative expense claims against MWVR allowed for those fees.

(k) Pre-Confirmation, a number of objections to Claims and motions to temporarily allow claims have been filed: an objection to the Claim of Howry Breen by certain limited partners of Met Water[5]; objections by the Blue Water Parties to the Claims of Howry Breen, Alexander DuBose, Met Water Texas and Carrizo-Wilcox Water Works, L.P.; a motion of Howry Breen to temporarily allow its Claim for voting purposes; and a motion of certain Investors[4] to temporarily allow their Claims for voting purposes. The two motions for temporarily allowance have been denied as moot subject to certain reservations of rights as set forth in the orders, and while the objections to claims remain pending and responses have been filed to them, no hearings have yet been set on those matters.

(l)  On August 19, 2022, Blue Water Systems, LP, Blue Water Vista Ridge, LLC, and Blue Water 130 Project, LP, filed Adversary No. 22-1053 in the Bankruptcy Cases against Met Water Texas and Carrizo-Wilcox Water Works, LP (the "Disputed Contract Litigation").  The Complaint alleges that Met Water's Production Payment Allocation Agreement with Met Water Texas and its Production Payment Agreement with Carrizo-Wilcox Water Works, L.P. ("CWWW") were "fabricated" by Mr. Carlson, injured Met Water's Creditors and Interest Holders, and conferred an unfair advantage on Met Water Texas and CWWW.  The plaintiffs ask for invalidation of the agreements and/or equitable subordination of Met Water Texas's and CWWW's Claims against Met Water under those agreements.  Met Water, Met Water Texas, and CWWW dispute the allegations in the Complaint. The Plan provides for the Plan Trustee to take control of whatever interest Met Water has in the Disputed Contract Litigation.

ARTICLE IV

**THE DEBTORS' PLAN**

**4.01.**    All Allowed Claims against Met Water shall be paid in full, by the distribution to its Creditors of proceeds from the sales of water from Met Water's groundwater leases, both in the 130 Project and those that are now part of the Vista Ridge Project.  Payments to Creditors shall

16

also be made from any recovery from any of the Litigation or Litigation Assets. The Bankruptcy Case of MWVR shall be converted to Chapter 7 on or shortly after the Effective Date of the Plan, and Met Water shall continue as the Reorganized Debtor.

## Unclassified Claims

**4.02.**  Administrative Expenses. The Administrative Expenses of Met Water that are allowed pursuant to § 503(b) of the Code and given priority pursuant to § 507(a)(1) of the Code shall be paid in full upon the later of the Effective Date or upon entry of an order allowing the Administrative Expense, unless otherwise agreed to in writing between the Plan Trustee and the holder of such Allowed Claim. The Administrative Claims against MWVR shall be treated in MWVR's Chapter 7 case in accordance with the terms and priorities assigned such Claims in that Chapter.

**4.03.**  The deadline for filing a Claim for an Administrative Expense against Met Water, other than professional fee applications, shall be thirty (30) days from Effective Date. The deadline for filing a claim for an Administrative Expense against Met Water that is for professional's fees and/or expenses, shall be one hundred twenty (120) days from the Effective Date. The Administrative Claims that will be paid are expected to be those allowed unpaid post-petition claims which are or will be owed by Met Water to its bankruptcy counsel, its Special Litigation Counsel, and its accountant, and those which are or will be owed by Met Water to the Subchapter V Trustee. Such Claims are estimated as of the filing of this Plan to total $750,000 as of Confirmation.

**4.04.**  Other Priority Claims. There are no known Priority Claims, other than Administrative Expense Claims, in these Bankruptcy Cases.

## Classified Claims and Interests

**4.05.** Claims against the Debtors, other than Administrative Expense Claims, and Interests in the Debtors are classified by each Debtor by priority and type. The treatment described below shall apply to all Claims or Interests of the given Class against or in each Debtor.

Class 1: All Allowed General Unsecured Claims against Met Water

Class 2: All Allowed General Unsecured Claims against MWVR

Class 3: All Allowed Equity Interests in Met Water

Class 4: All Allowed Equity Interests in MWVR

## Treatment of Claims

**4.06.** Class 1: Impaired. The Allowed General Unsecured Claims against Met Water shall be paid in full over the Plan Term. In particular, the Plan Trustee as the Plan Disbursement Agent shall pay the Reorganized Debtor's Disposable Income *Pro Rata* to the Creditors of Met Water with Allowed General Unsecured Claims, until the earlier of five (5) years from the First Payment Date (*see* below) or the date each such Claim has been paid in full. Such payments shall commence on the first business day of the month following the first full month after the Effective Date (hereinafter the "First Payment Date"). As soon as practicable after the Effective Date, the Plan Trustee shall file a motion requesting distribution to him, on behalf of the Reorganized Debtor, of the Bankruptcy Court Registry Funds. The Plan Trustee shall have exclusive control of those Funds and exclusive authority to make Plan Payments from those Funds and any other Disposable Income of the Reorganized Debtor. Payments after the First Payment Date shall be made at least annually on each anniversary of the First Payment Date, except for additional payments, if any, that shall be made from the Reorganized Debtor's Disposable Income, if and when received from the Registry Funds and/or the Bankruptcy Court Registry Funds and/or from

any recovery on any Litigation Assets. Such additional payment(s) to Creditors shall be made on the first business day of the month following the first full month after receipt by the Plan Trustee of such Funds, if there are no restrictions on using them to make Plan payments.

4.07.  Class 2: Impaired. Any payment on the Allowed General Unsecured Claims against MWVR that are made from its Bankruptcy Estate shall be made by its trustee in its Chapter 7 case. No payment on any Claim against MWVR is permitted to be made under this Plan.

4.08.  Class 3: Impaired. During the Plan Term, the holders of Allowed Equity Interests in Met Water shall retain those Interests according to the terms of their agreements governing their Interests and Texas law.  In accordance with such agreements and Texas law, no payments shall be made during the Plan Term unless and until all Allowed Claims against Met Water have been paid in full.

4.09.  Class 4: Impaired. Any payment to the holders of Allowed Equity Interests in MWVR that are made from its Bankruptcy Estate shall be made by its trustee in its Chapter 7 case.

**Other Payment Provisions of the Plan**

4.10.  Payments to Creditors with Claims Not Yet Allowed as of the First Payment Date. Payments under the Plan on a General Unsecured Claim that is not allowed until after the First Payment Date shall commence on the next date that payments are due under the Plan after the allowance of such Claim by final, non-appealable judgment and/or order. Until such newly Allowed General Unsecured Claim is paid the same *Pro Rata* percentage previously received by all other Creditors in its Class, no other Allowed General Unsecured Claims in the Class that have received more shall be paid.

4.11.  Appointment under the Plan of the Subchapter V Trustee as the Plan Trustee, and Plan Payments by Him as Plan Disbursement Agent. Whether or not the Plan is consensually

confirmed, the Subchapter V Trustee shall be appointed as "Plan Trustee" effective as of the Effective Date, and shall be empowered and required to make all payments under the Plan to the Creditors, as the Plan Disbursement Agent. *See* Sections 5.02-5.12 below.  If the initial Plan Trustee, or any subsequent Plan Trustee, can no longer serve as such, any party in interest shall have the right to request the Bankruptcy Court to appoint a successor Plan Trustee, and any party in interest shall have the right to take a position on who should be appointed as successor Plan Trustee. Notwithstanding § 1183(c) of the Bankruptcy Code, the Plan Trustee shall serve as Plan Trustee for the entire Plan Term.

    **4.12.**  <u>Agreed Modification of an Individual Creditor's Treatment under the Plan</u>. The Plan Trustee and any particular Creditor provided for in this Plan may enter into any agreement after Confirmation that modifies that Creditor's treatment and payment terms, so long as the Bankruptcy Court approves such modified treatment after notice to all Creditors not paid in full by the date of such agreement. In such event, any modified agreement shall be deemed to supersede the terms of this Plan.

    **4.13.**  <u>Delivery of Distributions</u>. All distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of claim filed in Met Water's Bankruptcy Case or, if the distribution is to be made based on a Claim reflected as allowed in its Schedules, at the address reflected in the Schedules. Any such distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States mail, postage prepaid, addressed as required in the preceding sentence. If any distribution is returned as undeliverable, it shall be held by the Plan Trustee and no further distribution shall be made on account of such Allowed Claim unless and until the Plan Trustee as Plan Disbursement Agent is notified of such holder's then current address, at which time

all missed distributions shall be made to the holder of such Allowed Claim. However, all notices to the Plan Trustee reflecting new or updated addresses for undeliverable distributions shall be made on or before one hundred twenty (120) days after the date when the Plan Trustee files with the Bankruptcy Court a notice of the unsuccessful attempted distribution or such longer period as the Plan Trustee may fix in the exercise of his sole discretion. After such date, all unclaimed property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

4.14.  <u>Time Bar to Cash Payments</u>. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Plan Trustee by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Plan Trustee may fix. After such deadline has passed, the Plan Trustee has filed a subsequent related notice with the Bankruptcy Court, and no Claim in respect to such a voided check has been made within ten (10) days thereafter, such Claim in respect of such void check shall be discharged and forever barred.

ARTICLE V
**MEANS OF IMPLEMENTATION**

5.01.  In general, implementation of the Plan depends on the continuing operation of Met Water's groundwater leases, the continuation of its rights and obligations under its contracts, the final resolution of the Litigation Claims against Met Water and the realization of certain of the Litigation Assets of Met Water. It also provides for a continuing role of the current Subchapter V Trustee as Plan Trustee.

## Provisions Applicable to the Plan Trustee

**5.02.** <u>Powers of the Plan Trustee</u>. The Plan Trustee shall have complete access to Met Water's and the Reorganized Debtor's financial books and business records, including historical books and records, and its offices, computers, and physical files, wherever located. During the Plan Term, the Plan Trustee shall be the custodian of all books and records of Met Water and the Reorganized Debtor; provided, however, this does not require the Plan Trustee to: (a) take physical possession of such books and records; or (b) respond to requests for production or subpoenas directed to Met Water and/or the Reorganized Debtor. During the Plan Term, the Plan Trustee shall have exclusive authority to assert or waive Met Water's and the Reorganized Debtor's attorney-client privilege with respect to any matter.

**5.03.** In addition to making Plan payments and any post-Confirmation agreements modifying treatment of Claims (*see* Article IV above), during the Plan Term the Plan Trustee shall be the sole signatory on each and every financial account of Met Water and of the Reorganized Debtor, with full checkbook control over the finances of the Reorganized Debtor. In addition to disbursing Plan payments, the Plan Trustee shall be responsible for all disbursements by the Reorganized Debtor for the Plan Term, including but not limited to its ordinary course of business disbursements, and in his discretion may pay, defer payment of, or decline to pay any expense or other obligation of Met Water or the Reorganized Debtor, or seek authority from the Court to make any such decision on payments. Specifically, no payments shall be made under either of the Disputed Contracts, until either (1) the Bankruptcy Court has permitted such payment(s) in an order on motion of the Plan Trustee requesting such permission, (2) an order or judgment has been entered by the Bankruptcy Court determining that such Disputed Contract is valid and enforceable and such payments are permissible, or (3) a settlement which is approved by the Bankruptcy Court

22

on motion of the Plan Trustee under the standards of Bankruptcy Rule 9019. The Plan Trustee shall, however, reserve the amounts necessary to make payments under the Disputed Contracts pending entry of an order or judgment of the Bankruptcy Court on the validity of those Contracts or a settlement of the Disputed Contract Litigation that is approved by the Bankruptcy Court on motion of the Plan Trustee under the standards of Bankruptcy Rule 9019. Except with respect to the Disputed Contracts, Mr. Carlson shall have input about what needs to and should be paid, but the Plan Trustee shall have exclusive authority to make decisions about who gets paid and when, whether certain payments should be put on hold, and whether further guidance from the Bankruptcy Court is needed. Nothing in this Plan shall be construed to limit the Plan Trustee's authority to make payments under any agreement of Met Water with any party other than the parties to the Disputed Contracts.

**5.04.** Notwithstanding the foregoing, however, the Plan Trustee in his discretion may allow the Reorganized Debtor to maintain a petty cash account for payment by the Reorganized Debtor directly of non-recurring expenses below a threshold amount determined by the Plan Trustee.

**5.05.** The Plan Trustee shall have the rights and powers of a representative of the Met Water Estate appointed under § 1123(b)(3)(B) of the Bankruptcy Code with respect to the Blue Water Litigation, the Harris County Suit, the Disputed Contracts, the Disputed Contracts Litigation, the Avoidance Actions, the Litigation Assets, and any other claims, rights, and remedies of Met Water preserved by the Plan. The Plan Trustee shall also have all of the powers described in § 1106(a)(3) of the Bankruptcy Code and may in his discretion determine whether and the extent to which he will exercise those powers. All parties in interest, including the Reorganized Debtor,

shall have the right to request information on the post-Confirmation actions of the Reorganized Debtor and/or the Plan Trustee.

    **5.06.**    The Reorganized Debtor shall be responsible for preparing and timely filing a final monthly operating report for each of Met Water and MWVR.  The Plan Trustee shall be exclusively responsible for timely filing Post-Confirmation Reports in the form required by the Office of the United States Trustee for the Reorganized Debtor, and the Reorganized Debtor shall cooperate with and provide requested information to the Plan Trustee to enable the preparation of such Post-Confirmation Reports. The Plan Trustee shall cooperate with the Reorganized Debtor in providing information needed for the latter to timely comply with the reporting requirements of the Internal Revenue Code of 1986.

    **5.07.**    Mr. Carlson, Met Water Texas, and the Reorganized Debtor shall cooperate with the Plan Trustee to enable the Plan Trustee to fulfill his duties, responsibilities, and powers under the Plan.

    **5.08.**    The Plan Trustee shall have the right to employ counsel and both the Plan Trustee and his counsel shall be entitled to the protections from liability applicable to trustees appointed under Chapter 7 of the Bankruptcy Code.

    **5.09.**    <u>The Plan Trustee's and the Reorganized Debtor's Roles with Respect to Litigation Assets and Litigation Claims</u>.

        (a)    **Blue Water Litigation.** The Plan Trustee shall have the exclusive authority to control and represent Met Water's and the Reorganized Debtor's interests in, including but not limited to the authority to intervene in and, subject to Bankruptcy Court approval upon motion by the Plan Trustee under the standards of Bankruptcy Rule 9019, to settle on behalf of Met Water and/or the Reorganized Debtor, the Blue Water Litigation and all other

disputes and claims by, against, or between any of the Blue Water Parties and Met Water and/or the Reorganized Debtor. Such litigation involving the Blue Water Parties shall be determined and liquidated (along with any Litigation Assets) in the relevant non-bankruptcy courts, and the Plan Trustee shall control that interest and direct the Blue Water Litigation on behalf of Met Water and the Reorganized Debtor after the Effective Date, and shall have the power to continue the prosecution and defense of the Blue Water Litigation and, subject to approval of the Bankruptcy Court on motion of the Plan Trustee under the standards of Bankruptcy Rule 9019, to settle claims asserted by and against Met Water or the Reorganized Debtor in the Blue Water Litigation.

(b) **Harris County Suit.** Finally, Met Water asserts that the Claims of Creditors asserted in *Fox River Real Estate Holdings, Inc., et al. vs. Metropolitan Water Company, L.P. et al.*, pending in the 215th District Court of Harris County, Texas (the "Harris County Suit"), are derivative claims assertable by Met Water and therefore Litigation Assets and property of Met Water's Bankruptcy Estate. Certain of the other parties to the Harris County Suit dispute this characterization. Notwithstanding the foregoing, the extent to which certain of the limited partners of Met Water that currently are plaintiffs in the Harris County Suit may continue as plaintiffs in that Suit, and their future role(s) in that Suit, are issues that shall be reserved and decided in the prosecution of that Suit. To the extent Met Water's Bankruptcy Estate has an interest in the Harris County Suit, the Plan Trustee shall exclusively control that interest and direct that litigation on behalf of Met Water and the Reorganized Debtor after the Effective Date, and shall have the power to sue and be sued, to continue the prosecution and defense of that litigation and, subject to approval of the Bankruptcy Court upon motion by the Plan Trustee under the

25

standards of Bankruptcy Rule 9019, to settle Met Water's claims in that Suit. The Plan Trustee is expressly authorized and directed under the Plan to remove the Harris County Suit to the Bankruptcy Court, to be prosecuted and finally determined by that Court. Pursuant to the Confirmation Order, the automatic stay shall be modified, effective as of the Effective Date, with respect to the Harris County Suit and the Plan Trustee is authorized and directed to pursue such removal as soon as practicable upon his appointment on the Effective Date but in any event no later than 30 days after the Effective Date. *See* Section 5.21(a) below for more regarding the treatment of the Harris County Suit.

(c)      **Avoidance Actions and Other Pre-Confirmation Causes of Action.**  In addition, with respect to any Avoidance Actions and other causes of action of Met Water that arise prior to Confirmation and that are preserved in this Plan, the Plan Trustee shall also exclusively control any such litigation and shall have the exclusive power to investigate, commence, prosecute or defend any such litigation, and settle such litigation subject to approval of the Bankruptcy Court upon motion by the Plan Trustee under the standards of Bankruptcy Rule 9019.

(d)      **Disputed Contract Litigation.** The Plan Trustee shall also have the exclusive power to sue and be sued with respect to Met Water's pre-Confirmation contracts with third-party entities that are alleged to be controlled by Mr. Carlson, including but not limited to the Disputed Contracts, and shall have the right to pursue or not pursue such litigation, to intervene in such litigation, and/or to settle such litigation subject to Bankruptcy Court approval upon motion by the Plan Trustee under the standards of Bankruptcy Rule 9019.  Met Water's assumption of all such contracts, by motion or under

26

this Plan, shall be conditioned upon the final determination by the Bankruptcy Court as to those contracts' validity.

(e)     **Claim Objections.**  The Plan Trustee shall have non-exclusive authority to object to any claim.  The Plan Trustee shall also be entitled to intervene on behalf of Met Water's Estate and be heard in any claim objection. Subject to Bankruptcy Court approval upon motion by the Plan Trustee under the standards of Bankruptcy Rule 9019, the Plan Trustee shall have the exclusive authority to settle any claim objection that he files or in which he intervenes. *See* Article IX below for further discussion regarding objections to claims.

**5.10.**     The Plan Trustee shall have the right to employ counsel, including but not limited to Met Water's pre-Confirmation Special Litigation Counsel, to represent the Reorganized Debtor's interests in the litigation matters described in Section 5.09 above. Any invoice for post-confirmation attorney's fees for such representation shall be submitted not only to the Reorganized Debtor, but also to the Plan Trustee. If such submitted invoice is not disputed by the Reorganized Debtor, the Plan Trustee may in his discretion pay any such invoice of $10,000 or less without further notice to parties in interest. With respect to any such invoice of $10,000 or less, the Plan Trustee may, and with respect to any invoice that exceeds $10,000, the Plan Trustee shall, provide notice (including a redacted version of the invoice) to counsel who have filed Notices of Appearance in Met Water's Bankruptcy Case and the United States Trustee (hereinafter, the "Noticed Parties"). Such Noticed Parties shall have 14 (fourteen) days from service of such notice to file, with notice to the attorneys requesting payment, the Plan Trustee and the Reorganized Debtor, a pleading with the Bankruptcy Court objecting to payment of the invoice.

5.11.    On litigation matters in which the Plan Trustee controls the Reorganized Debtor's interest, the Reorganized Debtor shall retain the right, through its management, to give its input to the Plan Trustee, and the right, through its counsel, to express its position in Court; provided, however, that the Plan Trustee has no obligation to act upon any such input provided by the Reorganized Debtor.

.    5.12.    <u>The Plan Trustee's Compensation, the Continuation of Met Water Texas's Management Fee, and Compensation to Insiders</u>. The Plan Trustee shall be paid reasonable compensation for his time and reimbursed for his reasonable expenses incurred in rendering services under the Plan, as agreed between the Reorganized Debtor and the Plan Trustee.  Absent such agreement, the Bankruptcy Court shall decide such compensation and expense reimbursement. Notwithstanding any other provision of this Plan, the $10,000 per month management fee payable to Met Water Texas under Met Water's Limited Partnership Agreement shall continue to be paid after Confirmation and during the Plan Term, absent further order of the Bankruptcy Court.  Scott Carlson shall not receive any compensation directly from the Reorganized Debtor; any compensation attributable to services he provides to the Reorganized Debtor shall come from Met Water Texas's management fee. Susan Carlson (who is also an insider of Met Water) shall, subject to the approval of the Plan Trustee, continue to be paid her current gross annual salary of $102,000 for so long as she is employed by the Reorganized Debtor.

**Treatment of the Debtors' Executory Contracts and Groundwater Leases**

5.13.    <u>Executory Contracts</u>. A list of known contracts of each Debtor, and the other parties to them, are listed in their respective Schedule G filed in their Bankruptcy Cases, copies of which are attached hereto as Exhibits A and B. If not already assumed by Confirmation, effective as of Confirmation the Debtors shall assume each and every contract, if and to the extent executory, to

which either or both Debtors are party. Even if not listed in Schedule G, the Debtors intend to assume each and every executory contract to which either or both are party, and Confirmation of the Plan shall act as assumption as to each such contract not already assumed, whether listed in Exhibits A and B or not, unless a contract is expressly identified as rejected in the Confirmation Order. The process for such assumption, including the determination of cure amounts, if any, is described below in Sections 5.16-5.20.

5.14. Unexpired Leases. Prior to the filing of this Plan, Met Water filed motions to assume its office lease and all its groundwater leases including its reversionary interests in the groundwater leases that are part of the Vista Ridge Project. MWVR also filed a motion to assume all its groundwater leases, which include certain groundwater leases not originally scheduled and whatever interest it may have had in the Baldwin Lease, if any. To be clear, if not already assumed, under the Plan effective as of Confirmation, Met Water and MWVR will assume each and every groundwater lease to which each is a party, including Met Water's reversionary interests in the groundwater leases that are part of the Vista Ridge Project, and any interest that MWVR may claim in the Baldwin Lease. Met Water's office lease and its groundwater leases that are not part of the Vista Ridge Project, and the parties to them, are listed in its Schedule G filed in its Bankruptcy Case, a copy of which is attached hereto as Exhibit A. Met Water's reversionary interests in the groundwater leases that are part of the Vista Ridge Project are listed in its Schedule A, which is also included in Exhibit A hereto. MWVR's Burleson County groundwater leases are listed in its Schedule G, a copy of which is attached hereto as Exhibit B. Also included in Exhibit B is a list of its Milam County groundwater leases, which are listed in its Amended Schedule G. The process for such assumption, including the determination of cure amounts, if any, is described below in Sections 5.16-5.20.

5.15.    Met Water requested and received authorization from the Bankruptcy Court to continue to pay its lessors after the Petition Date, and has done so. With assumption of its leases, the payments to Met Water's lessors that it is currently making will continue to be made by the Plan Trustee uninterrupted according to the terms of those leases. With MWVR's assumption of its Burleson County groundwater leases and its post-Confirmation conversion to Chapter 7, the ultimate fate of all its groundwater leases shall be determined as part of that proceeding.

5.16.    <u>Process for Assumption</u>. Notice of the assumption of the Debtors' executory contracts and groundwater leases was provided to the other parties to those contracts and leases prior to Confirmation and such assumption. The Debtors believe they are not in default of any of their executory contracts and unexpired leases and are current with respect to all payments they are required to make under those contracts and leases. Nevertheless, prior to Confirmation each non-Debtor party to an executory contract or unexpired lease, other than the non-Debtor parties to those contracts treated in Section 5.17 below (the "Blue Water Contract Parties"), was given an opportunity (and a deadline) to object to the assumption. Each such party was also given an opportunity to dispute that Met Water or MWVR is not in default and therefore that no cure payment is required, and to provide evidence of any cure amount claimed to be owed.  Other than the Blue Water Contract Parties, no such non-Debtor party has objected, responded or otherwise come forth to take a position on the Debtors' assumption. The rights of the Blue Water Contract Parties to dispute cure amounts and their timing are governed by Section 5.17 below.

5.17.    With respect to certain of the Debtors' executory contract(s) with the Blue Water Parties, it has been alleged in the Blue Water Litigation that the Debtors have breached those agreements. Issues of whether either or both of the Debtors have breached any executory contract with the Blue Water Contract Parties, and the amount of damages, if any, for any such breach(es),

will be determined in the non-bankruptcy courts where the Blue Water Litigation is pending. *See* Section 5.21(a) below. After such determination and liquidation by the entry of a final, non-appealable judgment, the Plan Trustee and/or the Blue Water Contract Parties shall have thirty 30) days to file a motion, on 21-day negative notice, with the Bankruptcy Court to determine the amount of the Reorganized Debtor's payment necessary to cure any breach/default of any executory contract that it intends to assume, and the timing of any such cure payment. Any party in interest shall have the right to contest the amount and timing of any cure by objecting to the motion.

5.18.    Finally, because Met Water will assume its Production Payment Allocation Agreement with Met Water Texas (conditioned upon the Bankruptcy Court's determination of the validity of that Disputed Contract), and because that Disputed Contract requires Met Water Texas to make production payments to the Investors from the payments it receives under that Disputed Contract, any cure payment and all future production payments owed to the Investors shall be made by Met Water Texas, so long as it is receiving payments from the Plan Trustee under the Production Payment Allocation Agreement. In the event and to the extent that the Plan Trustee makes any production payments directly to the Investors, Met Water Texas shall immediately reimburse the Plan Trustee to the extent that Met Water Texas received payment under the Production Payment Allocation Agreement that should have gone to those Investors.

5.19.    Other than a Litigation Claim, a proof of a claim arising from the rejection of an executory contract must be filed no later than thirty (30) days after the Effective Date. Any such Allowed Claim arising from the rejection of an executory contract by Met Water shall be treated as a Class 1 Claim.

**5.20.**    Except as provided in Section 5.21 below, any disputed issue regarding assumption will be decided by the Bankruptcy Court at Confirmation.

## Liquidation and Allowance of Litigation Claims

**5.21.**    No claim shall be paid under the Plan until it is determined, liquidated, and allowed, by final, non-appealable judgment or order. In particular, Claims that are Disputed Claims will be paid after they are allowed as follows.

(a)    The Litigation Claims of Creditors, including but not limited to those asserted in (i) the Blue Water Litigation, (ii) the Harris County Suit and (iii) the Disputed Contract Litigation, but not including (i) the Investor Litigation and (ii) claims arising as a result of Avoidance Actions or resolution of the Disputed Contract Litigation, shall be determined and liquidated (along with any Litigation Assets asserted in those suits and any Pre-Confirmation Cause of Action asserted or assertable by Met Water that is filed by the Plan Trustee in a non-bankruptcy court) in the non-bankruptcy courts in which they are pending.  After such determination and liquidation by final, non-appealable judgment, any holder of a Claim against Met Water so determined and liquidated shall have thirty (30) days to amend its proof of claim to be consistent with the judgment. Parties in interest shall have thirty (30) days from such amendment to file an objection in the Bankruptcy Court to allowance of the amended Claim on any grounds not precluded by such judgment. Such allowance or disallowance shall be governed by the procedures of the claims allowance process described in Article IX below.

(b)    The Litigation Claims of certain of the Investors against the Debtors that are asserted in the following suits (the "Investor Litigation") are duplicative of the Claims filed by the Investors in Met Water's Bankruptcy Case and, therefore, along with Met

Water's related claims, will be determined, liquidated, and allowed or disallowed in the claims allowance process described in Article IX below:

>    (i)      Cause No. 29386 pending in the 21st Judicial District, Burleson County, Texas, and styled as *H&V Holdings, Ltd. (for itself and as agent or attorney-in-fact for Austin Aqua Management, LLC, Cap Tex Water Partners, LLC, Central Texas Water, LP, Rick Jamison, and Simsboro Water, LLC), and Jon Hildebrand and Harry Vowell v. Metropolitan Water Company, L.P., Metropolitan Water Company of Texas, LLC, and W. Scott Carlson*; and

>    (ii)     Cause No. 30393 pending in the 335th Judicial District Court of Burleson County, Texas and styled as *David J. Weber, Wallace J. Luke, III, and Steven J. Hubbell v. Metropolitan Water Company, L.P., Metropolitan Water Company of Texas, LLC, and W. Scott Carlson.*

Following Confirmation, the Reorganized Debtor shall request abatement of each of the Investor Litigation pending final non-appealable orders on allowance or disallowance of the Investors' Claims, and after the entry of such orders, the Reorganized Debtor shall request dismissal of each of the above-listed suits as mooted by the orders entered in the claims allowance process.

>    (c)      Any Claim against Met Water arising as a result of the Plan Trustee's recovery from an Avoidance Action against a Creditor or other party, or arising as a result of the resolution of the Disputed Contract Litigation, must be asserted by the filing of a proof of claim in Met Water's Bankruptcy Case. Such proof of claim must be filed within thirty (30) days of the entry of a final, non-appealable judgment in the Avoidance Action or the Disputed Contract Litigation. Any party in interest shall have thirty (30) days from the filing of such proof of claim to file an objection in the Bankruptcy Court to allowance of the Claim on any grounds not precluded by such judgment. Such allowance or disallowance shall be governed by the procedures of the claims allowance process described in Article IX below.

ARTICLE VI

**THE REORGANIZED DEBTOR'S ABILITY TO MAKE PLAN PAYMENTS**

**6.01.**    Exhibit C hereto contain projections covering the five years from the First Payment Date, based on stated sets of assumptions, regarding the amounts and timing of the Reorganized Debtor's gross income from all sources and its Expenses (including reserves for Expenses), its Disposable Income, and Plan payments to be made over that five-year period (the "Projections"). The Projections are Met Water's best, but it believes conservative, estimates of how much, and when, payments may occur under the Plan, but given the large number of variables that will be determined by factors beyond Met Water's control (i.e., amounts of water sales and sales revenues, and the outcomes and timing of the various pieces of Litigation), the Projections of necessity are only examples of how much, and when, payments to Creditors under the Plan may occur.

**6.02.**    The Projections contemplate that the Plan Trustee will continue to prosecute and defend the Blue Water Litigation post-Confirmation. The Projections also contemplate that the Plan Trustee, prior to making payments to Creditors under the Plan, will pay the Reorganized Debtor's ongoing expenditures necessary for the continuation, preservation or operation of its business, including but not limited to its ongoing payments to lessors, its ongoing litigation and reorganization expenses, and any anticipated Administrative Expense required to be paid upon allowance of such Claim (the "Expenses").

**6.03.**    Specifically, the Plan Trustee shall accumulate from Reorganized Debtor's income and hold in reserve sufficient funds to pay the Expenses likely to come due during the period before the next Plan payment is due. The Reorganized Debtor shall timely provide the Plan Trustee with input and detail regarding such projected Expenses.

**6.04**    The Reorganized Debtor's income, after deduction for its Expenses (including the reserve for such Expenses) is its "Disposable Income." As required by 11 U.S.C. §§ 1190(1)(C)

34

and 1191(c)(2), Plan payments to Creditors holding Allowed Claims are based on the projected Disposable Income of the Reorganized Debtor as set forth in Exhibit C, which includes all projected income from the operations of the Reorganized Debtor and the Bankruptcy Court Registry Funds, which are Met Water's payment for its share of water sales proceeds from the Vista Ridge Project for the year from approximately April 14, 2021, through April 14, 2022. The Bankruptcy Court Registry Funds shall be turned over to the Plan Trustee on or as soon as practicable after the Effective Date. Because of the uncertainties involved, however, the Reorganized Debtor's projected Disposable Income as set forth in the Projections does not include income from the prosecution, liquidation, and collection of Met Water's Litigation Assets— although as required by the Bankruptcy Code, under the Plan any such proceeds shall contribute to the Reorganized Debtor's Disposable Income and, to that extent, shall be used to fund the Plan. Even without including the proceeds of Litigation Assets, Exhibit C shows that all Allowed Claims against Met Water can be expected to be paid in full within five years after the Effective Date.

6.05.  The Reorganized Debtor's Income, Expenses, Reserves, Disposable Income, and Plan Payments.  In particular, the Projections show that the Reorganized Debtor can reasonably be expected to receive approximately $1,070,000 in gross income during the first year of the Plan Term from water sales from the 130 Project alone, and that that amount is projected to remain substantially the same for the Plan Term.

6.06.  Although the Registry Funds currently total more than $4.1 million and are indisputably Met Water's share of sales revenue from the Vista Ridge Project for the pre-petition year from approximately April 15, 2020, through April 14, 2021, the Projections show a worst-case scenario under which the Reorganized Debtor would not receive those funds so long as the Washington County Litigation continues unless the Plan Trustee, on behalf of the Reorganized

35

Debtor, prevails in that Litigation or obtains some recovery in a settlement of that Litigation. Rather, under the worst-case scenario illustrated in Exhibit C, based on the assumption that the Blue Water Parties prevail in that Litigation, the Registry Funds will be used to partially pay the Blue Water Parties' Allowed Claim(s) after the conclusion of the Litigation, with the balance of such Allowed Claim(s) being paid from the Reorganized Debtor's Disposable Income.

6.07.    The Reorganized Debtor's projected Disposable Income does, however, include Met Water's share of sales revenue from the Vista Ridge Project, including the Bankruptcy Court Registry Funds that are Met Water's share of sales revenue from approximately April 15, 2021, through April 14, 2022, and including its share of sales revenue for the Plan Term years thereafter. Under the Confirmed Plan, the Reorganized Debtor's future annual payments shall be paid to the Plan Trustee on the Reorganized Debtor's behalf, and used by the Plan Trustee to, among other things, make the payments required under the Plan. Because of the limited information available to Met Water at this time, the annual income that it anticipates that the Plan Trustee, on behalf of the Reorganized Debtor, will be paid from the Vista Ridge Project during the Plan Term is estimated very conservatively in the attached Projections at $7 million per year, based on the fact that Met Water's share of the April 2022 payment was $6,933,911.54. If the Plan Trustee does not obtain access to and use of the Bankruptcy Court Registry Funds and future payments from the Vista Ridge Project, payments under the Plan can be expected to be delayed, perhaps as long as the completion of the litigation over the Vista Ridge Project.

6.08.    Finally, the Plan Trustee, on behalf of the Reorganized Debtor, will also receive proceeds from Litigation or Litigation Assets only when the relevant Litigation is concluded, by trial and appeal and final judgment, or by settlement, and only to the extent that the Plan Trustee, on behalf of Met Water and/or the Reorganized Debtor, prevails in the Litigation or settles on

terms that would result in payment(s) to the Plan Trustee. Those contingencies, because of their uncertainty as to likelihood, amounts and timing, are not included in Exhibit C.

6.09.    As to its Expenses, Met Water estimates in the Projections that it will pay the lessors on the 130 Project leases approximately 14% of the sales revenue from that Project, or almost $150,000 during the first year of the Plan Term, assuming gross revenues of during that year of $1,070,000, as described above. Again, those amounts are not expected to change substantially during the Plan Term. Met Water currently has no obligation to make payments to lessors under the Vista Ridge Leases and is not expected to have any during the Plan Term. It believes it is, however, bound under its Production Payment Allocation Agreement with Met Water Texas, and its Production Payment Agreement with Carrizo-Wilcox Water Works, L.P., to make production payments to those entities based not only on Project 130 water sales, but also Vista Ridge Project water sales. Subject to the Bankruptcy Court's rulings in the Disputed Contract Litigation, those latter production payments may commence as early as Year 1 of the Plan Term, and if and when they start, they are expected to be approximately $3,225,000/year and to not change substantially during the Plan Term, based on the assumptions in the projections on income. Including the 130 Project lessors' royalty payments, Met Water projects Expenses of approximately $409,000 per month for the first year of the Plan Term. (These Expenses include ongoing legal expenses for the Litigation and reorganization of Reorganized Debtor.) As noted on the Projections, certain of those Expenses are assumed to increase by 3% per year during the Plan Term, while others are expected to remain relatively constant over that period.

6.10.    MWVR's Income, Expenses, Reserves, Disposable Income, and Plan Payments. As of the filing of this Plan, MWVR is receiving no income from any source. Six of the seven groundwater leases it listed on its Schedules as owned as of the Petition Date are not producing

(they are within their primary terms). The only producing lease is the Baldwin Lease, and the value of MWVR's interest in that Lease, if any, is unknown.

**6.11.** MWVR therefore does not have projected Disposable Income within the foreseeable future with which to make the Plan payments. Therefore, on the Effective Date, it will file a motion to convert its case to one under Chapter 7 of the Bankruptcy Code.

ARTICLE VII

**LIQUIDATION ANALYSES**

**7.01.** To confirm the Plan, the Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claim and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis of each Debtor is attached to the Plan as Exhibit D. As set forth therein, the payments by each Debtor under the Plan are projected to equal or exceed the expected proceeds from a liquidation of assets of such Debtor in a hypothetical Chapter 7 liquidation.

ARTICLE VIII

**ACCEPTANCE AND CONFIRMATION OF THE PLAN**

**8.01.** <u>Classes Entitled to Vote</u>. The votes of Creditors in each Class shall be tallied separately. All Creditors in Impaired Classes of Claims are entitled to vote to accept or reject the Plan, except that Creditors with Impaired Claims in Class 2 are conclusively deemed to reject it because they will receive nothing under the Plan. Class 3, consisting of the Allowed Equity Interests in Met Water, are Impaired and are also entitled to vote to accept or reject the Plan. Class 4, consisting of the Allowed Equity Interests in MWVR, are also deemed to reject the Plan because they also will receive nothing under the Plan.

**8.02.** <u>Class Acceptance Rules</u>. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the

38

Allowed Claims in such Class that have voted on the Plan. A Class of Allowed Equity Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.

**8.03.**   Request Pursuant to § 1191(b). This Section shall constitute the request by each of the Debtors, pursuant to § 1191(b) of the Bankruptcy Code, for the Bankruptcy Court to confirm this Plan notwithstanding the fact that the requirements of § 1129(a)(8), (a)(10) or (a)(15) of the Bankruptcy Code have not been met.

ARTICLE IX

**CLAIMS ALLOWANCE PROCEDURE**

**9.01.**   Confirmation of the Plan is not *res judicata* of any claim or defense in any of the Litigation. Notwithstanding any language herein to the contrary, nothing in this Plan or its Confirmation will enjoin, discharge, prohibit or otherwise impede the authority and ability of the Blue Water Parties or any other party to any Litigation to seek and obtain entry of a final judgment against either or both of the Debtors; provided, however, that the Debtors and the Reorganized Debtor reserve and preserve the right to object to and seek a determination from the Bankruptcy Court that (i) any portion of a final judgment against either or both of the Debtors that is based on a pre-petition general unsecured claim, which is reasonably allocable to post-petition interest, legal fees, expenses, and costs should not be part of an Allowed Claim, and (ii) no Creditors shall be entitled to exercise setoff or recoupment rights, if any, that it might have except in accordance with the terms and provisions of this Plan, as confirmed, or by further order of the Bankruptcy Court..

**9.02.**   Filing Objections. An objection to the allowance of any Claim may be filed by any party in interest.  Only the party objecting to allowance of a Claim may settle that objection, and only with notice to all parties in interest and approval of the Bankruptcy Court upon motion under the standards of Bankruptcy Rule 9019.  Any party in interest may intervene in any objection to

39

allowance of a Claim, and any party in interest may be heard on approval of a settlement of any such objection.  The Plan Trustee shall have no obligation, however, to prepare, file or prosecute objections to Claims. Unless otherwise provided in this Plan or the Confirmation Order, objections to Claims may be filed with the Bankruptcy Court and served upon each holder of the Claim to which an objection is filed not later than ninety (90) days after the Effective Date, unless such time period is extended by order of the Court. No distribution shall be made on account of a Disputed Claim unless and until such Claim is allowed.

**9.03.**  Adversary Proceedings, Retained Claims, and Preserved Causes of Action. The Debtors reserve the right, to the extent consistent with the terms of this Plan, and such right shall inure to the Plan Trustee in the case of Met Water and to the Chapter 7 trustee in MWVR's converted case, to begin or continue any adversary proceeding permitted under the Code and the applicable Federal Rules of Bankruptcy Procedure. The Debtors as of Confirmation are not aware of any Avoidance Action that they believe is meritorious and economically feasible to pursue post-Confirmation. Notwithstanding the foregoing, the Debtors reserve and preserve all claims and causes of actions, Avoidance Actions, and the Litigation Assets, including without limitation Met Water's claims in the Harris County Suit and Cause No. D-1-GN-20-006113, pending in the 250th Judicial District Court of Travis County, Texas, styled *Blue Water Vista Ridge, LLC v. Vista Ridge, LLC v. Metropolitan Water Company, L.P.*  The Plan Trustee shall have the exclusive authority and right to investigate and pursue for the benefit of Met Water's Creditors and Interest holders, any and all Avoidance Actions, and other claims, rights, and remedies provided in the Bankruptcy Code, or pursuant to state law, against any of Met Water's professionals and any insider of Met Water, including but not limited to Scott Carlson, Met Water Texas, and Carrizo-Wilcox Water Works, L.P., and all such rights are hereby preserved. Such causes of action may include, but are

not limited to, claims for negligence, gross negligence, fraudulent conveyance, fraud, breach of contract, conversion, tortious interference, malpractice, conspiracy, breach of fiduciary duty, negligent and intentional misrepresentation, and breach of statutory and common law duties under state law.

ARTICLE X

**MISCELLANEOUS PROVISIONS**

10.01.  <u>Vesting of Assets</u>. As of Confirmation, all interests of Met Water in assets and property that are dealt with by the Plan shall vest in the Reorganized Debtor, free and clear of all Claims and Interests except as provided in the Plan.  As of Confirmation, all interests of MWVR in assets and property that are dealt with by the Plan shall vest in MWVR, subject to all Claims and Interests except as provided in the Plan.

10.02.  <u>Retention of Jurisdiction</u>. Under §§ 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case of Met Water and this Plan, to the fullest extent permitted by law, including, among other things, jurisdiction to:

> (i)     allow, disallow, determine, subordinate, litigate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim against or Equity Interest in Met Water (whether filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including, without limitation, whether any Claim includes fees, costs, or charges arising or incurred after the Petition Date, the compromise, settlement and resolution of any request for payment of any Administrative Expense Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Equity Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Equity Interest to the extent permitted under applicable law;

41

(ii)      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, including determining any dispute regarding reasonable compensation and reimbursed of reasonable expenses of the Subchapter V Trustee;

(iii)      hear and determine any and all adversary proceedings (including any declaratory action), motions, applications, and contested or litigated matters, including, but not limited to, the Litigation Assets and all causes of action, and consider and act upon the compromise and settlement of any Claim of or against Met Water, any Litigation Asset  or any cause of action;

(iv)      determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Met Water is or was a party, or with respect to which Met Water may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(v)      ensure that all distributions to holders of Allowed Claims under this Plan and the performance of the provisions of this Plan are accomplished as provided herein and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of this Plan;

(vi)      construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with § 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, other agreements or documents created in connection with this Plan, including, without limitation, the Confirmation Order, for the maintenance of the integrity of this Plan in accordance with §§ 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

(vii)      determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all exhibits and schedules to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(viii)      modify this Plan before or after the Effective Date pursuant to § 1193 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order,

42

this Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code and this Plan;

(ix)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(x)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(xi)     determine any other matters that may arise in connection with or relating to this Plan and the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order;

(xii)    determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xiii)   hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(xiv)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case of Met Water or the Reorganized Debtor;

(xv)     determine and resolve controversies related to Met Water or its Estate before the Effective Date or related to the Reorganized Debtor after the Effective Date;

(xvi)    hear and determine any other matter relating to this Plan;

(xvii)   enter an order discharging Met Water; and

(xviii)  enter a final decree closing Met Water's Bankruptcy Case and reopening its Bankruptcy Case for any purpose permitted by the Bankruptcy Code.

Nothing in this Section or the Plan, or in the Confirmation Order, shall be construed to restrict,

limit or waive the Court's jurisdiction with respect to any matter, including without limitation the

above matters, as they relate to MWVR, its Chapter 11 Bankruptcy Case, and the prosecution of its Chapter 7 case.

**10.03.** <u>Modification of Plan</u>. This Plan may be modified or corrected upon motion of either or both of the Debtors pursuant to § 1193(a) prior to Confirmation. Modifications or corrections may be made by without additional disclosure provided that the Court finds that the modifications or corrections do not adversely affect any Claim or Interest or classes of Claims or Interests. After the Confirmation Date, the Reorganized Debtor may modify the Plan at any time during the Plan Term, so long as the Plan as modified meets the requirements of § 1193(c). Such modified Plan shall become the Plan only if circumstances warrant such modification and the Bankruptcy Court, after notice and a hearing, confirms such modified Plan under § 1193(c).

## ARTICLE XI
## DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

**11.01.** <u>Plan Creates New Obligations</u>. The obligations to Met Water's Creditors in the Confirmed Plan replace those obligations to those Creditors that existed prior to the Effective Date of the Plan. The obligations under the Confirmed Plan constitute a binding contractual promise that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under Texas law.

**11.02.** <u>Discharge</u>. Met Water is entitled to a discharge under 11 U.S.C. § 1141(d)(1), made applicable herein pursuant to 11 U.S.C. § 1192, upon completion of all payments by the Reorganized Debtor due within the Plan Term. The Reorganized Debtor intends to request the Court to enter a discharge order for Met Water upon completion of the Plan payments, after notice to all persons that were Creditors of Met Water as of the Effective Date.

**11.03.** <u>Legally Binding Effect</u>. Except as otherwise expressly provided in the Confirmation Order, the provisions of this Plan shall bind Creditors and holders of Equity Interests, whether or not they accept this Plan. On and after the Effective Date, except as provided in the Plan and the Confirmation Order, all holders of Claims against Met Water shall be precluded and forever enjoined from asserting any Claim against it or the Reorganized Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date.

**11.04.** <u>Injunction</u>. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against Met Water and its assets and properties, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order all persons who have held, may have held, hold, or may hold Claims against Met Water are permanently enjoined on and after the Effective Date from

> (i)　　commencing or continuing in any manner any action or other proceeding of any kind against Met Water or the Reorganized Debtor, with respect to any such Claim;

> (ii)　　the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against Met Water or the Reorganized Debtor, or its property;

> (iii)　　creating, perfecting, or enforcing any encumbrance of any kind against Met Water or the Reorganized Debtor, or its property, with respect to such Claim;

> (iv)　　asserting any right of subrogation of any kind against any obligation due to Met Water or its property or its Estate with respect to any such Claim; and

> (ii)　　asserting any right of setoff or recoupment against Met Water or the Reorganized Debtor, or its property, except as specifically permitted by this Plan. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays, if any, provided for in Met Water's Bankruptcy Case pursuant to § 105 or § 362 of the

Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect during the Plan Term.

Nothing in this Section or in this Plan, or in the Confirmation Order, shall be construed to restrict, limit or waive any right of MWVR or its Chapter 7 trustee in its subsequent Chapter 7 case, with respect to any matter, including without limitation the above matters, as they relate to MWVR, its Chapter 11 Bankruptcy Case, and the prosecution of its Chapter 7 case.

## ARTICLE XII
## DEFAULT

**12.01.** In the event of a monetary or non-monetary default by the Reorganized Debtor under the Plan, the affected Creditor or holder of an Equity Interest shall provide written notice of such default to the Plan Trustee, any bankruptcy counsel engaged by the Plan Trustee, and the Reorganized Debtor and its bankruptcy counsel, by: (1) United States certified mail-return receipt requested, (2) United States first class mail, postage prepaid, and (3) by e-mail (if an email address is known). The Plan Trustee and/or the Reorganized Debtor (depending on whether it is a monetary or non-monetary default that is alleged) shall have thirty (30) days to cure from the earlier of:

      (i)      the date of receipt of the written notice by certified mail; or

      (ii)      the date of receipt of the written notice by first class mail,

to cure the default. (For the purposes of the written notice by United States first class mail, postage prepaid, such notice will be deemed received five (5) days after depositing the same in the United States mail.) In the event the Reorganized Debtor and/or the Plan Trustee does not cure the default within the thirty (30) day period provided herein, the affected Creditor or holder of an Equity Interest shall be entitled to seek relief from the Bankruptcy Court or, if such Court does not exercise jurisdiction as to the matter, any other court of competent jurisdiction.

**12.02.** The Reorganized Debtor must remain current with respect to all post-petition federal tax obligations, including but not limited to making timely federal tax deposits, the timely filing of any tax returns and the payment of all tax liabilities required by applicable law during the Plan Term. Failure to remain current with respect to one or more post-petition federal tax liabilities shall constitute an event of default under of the Plan.

**12.03.** Subject to the provisions of Section 12.01, upon a final and non-curable default of the Plan by the Reorganized Debtor or the Plan Trustee, if any, a Creditor or holder of an Equity Interest may pursue any and all available state and federal rights and remedies as provided by law without further order of the Bankruptcy Court.

**12.04.** In the event the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the following additional default provisions shall apply: Pursuant to 11 U.S.C. § 1191(c)(3), in the event that payments are not made by the Reorganized Debtor as required by the Plan and Confirmation Order, Creditors, holders of an Equity Interest and other parties-in-interest shall have the right to seek dismissal or conversion of Met Water's Bankruptcy Case.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: September 12, 2022.

Respectfully submitted,

METROPOLITAN WATER COMPANY, L.P.

By: METROPOLITAN WATER COMPANY
    OF TEXAS, L.L.C.

*Drafted by:*

    By: _/ s / W. Scott Carlson_____.
        W. Scott Carlson, its Managing Member

  _/ s / Weldon Ponder_____.
B. WELDON PONDER, JR.
Attorney at Law
State Bar of Texas No. 16110400
4408 Spicewood Springs Road
Austin, Texas 78759
512.342.8222 / 512.342.8444 fax
welpon@austin.rr.com

and

MET WATER VISTA RIDGE, L.P.

By: METROPOLITAN WATER COMPANY
    OF TEXAS, L.L.C.

    By: _/ s / W. Scott Carlson_____.
        W. Scott Carlson, its Managing Member

COUNSEL FOR PLAN PROPONENTS
and DEBTORS IN POSSESSION,
METROPOLITAN WATER COMPANY,
L.P., and MET WATER VISTA RIDGE, L.P.

PLAN PROPONENTS and DEBTORS IN
POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that September 12, 2022, a true and correct copy of the foregoing Debtors' Modified First Amended Plan of Reorganization Dated September 12, 2022, was served via email on the persons named below, at the addresses listed.

_/ s / Weldon Ponder_ .
B. WELDON PONDER, JR.

W. Scott Carlson
for Debtors Met Water Vista Ridge, L.P., and
Metropolitan Water Company, L.P.
at wsc@metwatertexas.com

Stephen W. Sather, Subchapter V Trustee
at ssather@bn-lawyers.com

Shane P. Tobin, Casey Roy for the United
States Trustee at shane.p.tobin@usdoj.gov and
casey.roy@usdoj.gov

Randy Ray Howry and James Hatchitt
for Howry Breen & Herman, LLP, for Debtors
Met Water Vista Ridge, L.P., and Metropolitan
Water Company, L.P.
at rhowry@howrybreen.com and
jhatchitt@howrybreen.com

Mike Stenglein and Brooke Bean for Vista
Ridge, LLC at mstenglein@kslaw.com and
bbean@kslaw.com

Brian Talbot Cumings for Creditors Cap Tex
Water Partners, LLC, Central Texas Water,
LP, Harry Vowell, H&V Holdings, Ltd,
Simsboro Water, LLC, Jon Hildebrand and
Rick Jamison at bcumings@gdhm.com, and
ctrickey@gdhm.com

Marvin Sprouse
for Creditor Austin JSB, Ltd.
at msprouse@sprousepllc.com

Paul Terrill and Ryan Greene on behalf
of Creditors Blue Water Systems. LP,
and Blue Water Vista Ridge, LLC
at rgreene@terrillwaldrop.com,
pterrill@terrillwaldrop.com and
bfigg@terrillwaldrop.com

Seth E. Meisel and William Rhea
for Creditors Blue Water Systems, LP, and
Blue Water Vista Ridge, LLC,
at smeisel@dbcllp.com, bhrea@dbcllp.com,
and lsnedden@dbcllp.com

Kyle Hirsch and Tricia W. Macaluso
for Wilmington Trust, N.A., as Trustee
for Burleson/Milam Lease Trust
at kyle.hirsch@bryancave.com and
tricia.macaluso@bclplaw.com

Elizabeth Grace Smith for the City of San
Antonio acting by and through SAWS
at beth@egsmithlaw.com

Kell C. Mercer for Creditors Keller Shoreline
Investments, Ltd., Paul B. Keller
at kell.mercer@mercer-law-pc.com

Sabrina L. Streusand for Creditor
Alexander Dubose & Jefferson LLP
at streusand@slollp.com

Catherine Lenox for Debtors at
clenox.law@gmail.com

49

# EXHIBITS

Exhibit A –   Met Water's Contracts and Leases
(See Exhibit A to Debtors' Modified First Amended Plan of Reorganization Dated September 12, 2022, dkt# 466)

Exhibit B –   MWVR's Contracts and Leases
(See Exhibit B to Debtors' Modified First Amended Plan of Reorganization Dated September 12, 2022, dkt# 466)

Exhibit C –   Plan Projections

Exhibit D –   Liquidation Analysis of each Debtor

## Exhibit C: REORGANIZED DEBTOR'S PROJECTIONS

| | (Plan Term) Year 1 [1] | (Plan Term) Year 2 | (Plan Term) Year 3 | (Plan Term) Year 4 | (Plan Term) Year 5 |
|---|---|---|---|---|---|
| FUNDS AT BEGINNING OF YEAR [1] | $ 25,000.00 | $ 4,392,011.52 | $ 7,556,712.49 | $ 2,500,000.00 | $ 2,500,000.00 |
| **GROSS INCOME** | | | | | |
| 130 Project Income | $ 1,070,000.00 | $ 1,070,000.00 | $ 1,070,000.00 | $ 1,070,000.00 | $ 1,070,000.00 |
| Vista Ridge Income | $ 7,000,000.00 | $ 7,000,000.00 | $ 7,000,000.00 | $ 7,000,000.00 | $ 7,000,000.00 |
| Bankr. Ct. Registry Funds [2] | $ 6,889,411.69 | $ - | $ - | $ - | $ - |
| Registry Funds [3] | $ - | $ - | $ - | $ - | $ - |
| **Total Income** | $ 14,959,411.69 | $ 8,070,000.00 | $ 8,070,000.00 | $ 8,070,000.00 | $ 8,070,000.00 |
| **TOTAL AVAILABLE FUNDS** | $ 14,984,411.69 | $ 12,462,011.52 | $ 15,626,712.49 | $ 10,570,000.00 | $ 10,570,000.00 |
| **EXPENSES** | | | | | |
| 130 Project Lessor Pmts [4] | $ 149,800.00 | $ 149,800.00 | $ 149,800.00 | $ 149,800.00 | $ 149,800.00 |
| Production Pmts [5] | $ 6,850,000.00 | $ 3,625,000.00 | $ 3,625,000.00 | $ 3,625,000.00 | $ 3,625,000.00 |
| Payroll [6] | $ 190,000.08 | $ 195,700.08 | $ 201,571.08 | $ 207,618.22 | $ 213,846.76 |
| Office Lease Rent [7] | $ 31,847.04 | $ 35,031.74 | $ 35,031.74 | $ 35,031.74 | $ 35,031.74 |
| Taxes [8, 10] | $ 15,429.32 | $ 15,892.20 | $ 16,368.97 | $ 16,860.03 | $ 17,365.84 |
| Ongoing Litigation Expenses [9] | $ 540,000.00 | $ 540,000.00 | $ 540,000.00 | $ - | $ - |
| Ongoing Reorganization Expenses [9] | $ 60,000.00 | $ 30,000.00 | $ 25,000.00 | $ 25,000.00 | $ 40,000.00 |
| Ongoing Accounting Expenses [10] | $ 20,000.00 | $ 20,600.00 | $ 21,218.00 | $ 21,854.54 | $ 22,510.18 |
| Misc. Office Expenses [10] | $ 97,777.74 | $ 113,275.00 | $ 116,673.25 | $ 120,173.45 | $ 123,778.65 |
| Mgmt Fee to General Partner | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 | $ 120,000.00 |
| Fees of Plan Trustee and his counsel | $ 60,000.00 | $ 60,000.00 | $ 60,000.00 | $ 60,000.00 | $ 60,000.00 |
| **Total Expenses** | $ 8,134,854.18 | $ 4,905,299.03 | $ 4,910,663.04 | $ 4,381,337.98 | $ 4,407,333.17 |
| **EXPENSE RESERVE** | $ - | $ - | $ 2,500,000.00 | $ - | $ - |
| **PROJECTED DISPOSABLE INCOME** | $ 6,824,557.51 | $ 3,164,700.97 | $ 659,336.96 | $ 3,688,662.02 | $ 3,662,666.83 |
| **PLAN PAYMENTS** | | | | | |
| Met Water Admin. Exp. Claims | $ 750,000.00 | $ - | $ - | $ - | $ - |
| MWVR Admin. Exp. Claims [11] | $ - | $ - | | $ - | $ - |
| Priority Claims | $ - | $ - | $ - | | $ - |
| Class 1 [3] | $ 1,707,545.99 | $ - | $ 8,216,049.45 | $ 3,688,662.02 | $ 3,427,108.70 |
| Class 2 [11] | $ - | $ - | | | |
| Class 3 | $ - | $ - | | | $ 235,558.13 |
| Class 4 [11] | $ - | $ - | | $ - | $ - |
| **Total Plan Payments** | $ 2,457,545.99 | $ - | $ 8,216,049.45 | $ 3,688,662.02 | $ 3,662,666.83 |
| **FUNDS AT YEAR END** | $ 4,392,011.52 | $ 7,556,712.49 | $ 2,500,000.00 | $ 2,500,000.00 | $ 2,500,000.00 |

**NOTES**

[1] Assumes First Payment Date occurs in October of 2022, and that Plan Year 1 runs from 10/1/22-9/30/23; that means that two years' payments from the Vista Ridge Project are reflected in the Total Income figure for Plan Year 1.

[2] Estimated, based on original deposit of $6,889,411.69 less distribution to Catherine Lenox for allowed fees and expenses of $44,499.85; accrued interest may be added.

[3] Only Claims that are allowed as of the Plan payment date are paid. Figures assume that objections to the Claims of Howry Breen, Alexander Dubose, Carrizo-Wilcox and Met Water Texas are litigated and overruled in Year 1 of the Plan. Figures also assume a worst case scenario that the Reorganized Debtor does not succeed in the Washington County Litigation and that at the conclusion of that Litigation in Year 3 (which timing is an assumption), the Blue Water Parties and the Investors have Allowed Claims based on judgment(s) in the amount of $19,463,598.75 and that the Registry Funds are offset against the Blue Water Parties' Claim.

[4] Royalties assumed, based on historical payments, to be approximately 14% of water sales revenue received by Met Water; delay rentals are reimbursed by Blue Water so no cost is included for those.

[5] Assumes the ongoing payments to Met Water Texas, under the Production Payment Allocation Agreement, and the ongoing payments to Carrizo-Wilcox Water Works, L.P., under the Production Payment Agreement are escrowed but ultimately released during Year 1 of the Plan; figures assume approx. $400,000 total for the 130 Project per year, plus approx. $3,225,000 for the Vista Ridge Project per year, with Year 1 providing for twice that because the Total Income for Plan Year 1 will be twice as much as the other Plan Years. See Fn. [1] above.

[6] Net of payroll taxes; assumed to increase by 3% per year.

[7] Former footnote deleted; rent is paid directly by Met Water to the landlord.

[8] Payroll, personal property, and franchise taxes.

[9] Including attorneys fees.

[10] Assumed to increase by 3% per year, except that Year 2's miscellaneous office expenses are based on actual estimations of expenses.

[11] Any payment of Claims against and Interests in MWVR will occur in its Chapter 7 case, not under the Plan.

EXHIBIT D

## Forced Liquidation Analyses

In order to confirm a plan of reorganization, one thing the Debtors must prove is that each class of Creditors will receive or retain under the plan at least the *liquidation* value—not the fair market value—of the Debtors' assets.  In this case, if each Debtor's assets were sold in a *hypothetical* Chapter 7 case by a trustee on the Effective Date, in a forced liquidation scenario, rather than continuing its business operations, including receiving its share of the proceeds of the water sales revenue as called for by the Plan, it is possible the Unsecured Creditors in both cases would still be paid in full, as illustrated in the following pages.

The word "hypothetical" is emphasized, however, as many variables enter into a real-world liquidation sale under Chapter 7.  For example, the illustrations on the following pages assume the Chapter 7 trustee would prosecute to conclusion the Litigation Claims and Litigation Assets, by and against the Debtors, or would be successful in settling such claims.  In actual practice, however, it is unlikely that a Chapter 7 trustee would have the resources to pursue such litigation successfully.  The trustee would likely employ new counsel and other professionals at great cost and such new counsel would have a very long "learning curve" to successfully handle the various lawsuits that are now pending involving these Debtors.  In contrast, the Debtors in this case are represented by counsel with a long and deep knowledge about the history of both Debtors and their operations, including both the 130 Project and the Vista Ridge Project.  Furthermore, realization of value from the existing groundwater leases in both projects might be adversely affected by the trustee's performance or non-performance of certain executory contracts and unexpired leases (including problems of "deemed rejection" under Bankruptcy Code Section 365(d)).  Finally, the value to be received from selling the Debtors' contract rights in a liquidation scenario is dependent on the vagaries of the forced-sale process.  The Debtors believe that under their Plan, even if one assumes adverse outcomes in some or all of the now-pending lawsuits, much more value will be realized from the groundwater leases if the Debtors retain their present interests in the future revenue streams from those leases, as opposed to a Chapter 7 trustee liquidating them.  This added value will inure to the benefit of the Creditors of both bankruptcy estates, and to the equity holders of both Debtors.

The information on the following pages is provided only to show that the Plan provides Creditors with *at least as much* as a hypothetical Chapter 7 liquidation would, which is a requirement for confirmation of a plan of reorganization under the Bankruptcy Code.  *See* 11 U.S.C. §§ 1129(a)(7)(A) and 1191.

**LIQUIDATION OF METROPOLITAN WATER COMPANY, L.P.**

REAL PROPERTY

| | |
|---|---|
| Lessee's Interests in 130 Project Leases (at 75% of original purchase prices, per Schedule L of 2020 federal tax return): | $4,081,544.25 |
| Vista Ridge Project Reversionary Interests (at 75% of $100,000.00[1]): | $75,000.00 |
| **Subtotal Real Property Sales Proceeds:** | **$4,156,544.25** |
| **Less sales expenses:** | |
| Broker's fee (6.0%) | $249,392.66 |
| Closing costs (10.0%) | $415,654.43 |
| **Subtotal expenses:** | **$665,046.86** |
| **Equals net proceeds of real property:** | **$3,491,497.39** |

**PLUS:**

PERSONAL PROPERTY

| | |
|---|---|
| Cash, Registry Funds, bank accounts, security deposits (approx. value of accounts as of 11/22/21): | $4,332,058.78 |
| 2022 Vista Ridge Payment (conservative estimate, assumes leases sold after pmt. rec'd): | $4,500,000.00 |
| Contract rights re: Vista Ridge Project (based on $4.5M/per year for 30 yrs, discounted by 50%[2]): | $67,500,000.00 |
| Other personal property (office furniture & equipment) (at 75% of Scheduled value) | $22,118.25 |
| **Equals net proceeds of personal property:** | **$76,354,177.03** |
| **TOTAL FUNDS AVAILABLE TO PAY CLAIMS:** | **$79,854,674.42** |
| **Less Priority Claims:** | |
| Chapter 7 trustee commission (on distribution of $22,250,981.86) | $749,779.46 |
| Administrative expenses – Chapter 7 Professionals' fees | $250,000.00 |
| Administrative expenses – Chapter 11 Professionals' fees | $270,000.00 |
| **Total Priority Claims:** | **$1,269,779.46** |

**EQUALS FUNDS AVAILABLE FOR UNSECURED CLAIMS:   $78,584,894.96**

## <u>Percentage dividend on $21,037,603.75 of General Unsecured Claims = 100.0%</u>

---

1. This dollar amount is estimated for the purposes of illustration only. Met Water's reversionary interests in the groundwater leases have never been appraised and were not valued in its bankruptcy schedules.

2. Met Water's contract rights have not been appraised and no expert opinion has been obtained by either Debtor regarding the liquidation sale value of such contract rights. Both the $4.5 million per year estimated revenue and the 30-year estimated stream of payments are conservative estimates. The 50% discount factor is based on such factors as the forced sale scenario and the present value of a lengthy stream of payments.

**LIQUIDATION OF MET WATER VISTA RIDGE, L.P.**

REAL PROPERTY

Lessee's Interests in 7 Groundwater Leases
    (at 75% of $13,700 cost value):                    $10,275.00

**Less sales expenses:**
Broker's fee (6.0%)                           $616.50
Closing costs (10.0%)                      $1,027.50
    **Subtotal expenses:**                 **$1,644.00**

**Equals net proceeds of real property:**       **$8,631.00**

**PLUS:**

PERSONAL PROPERTY:

Contract rights re: Baldwin Lease
    (assumes trial court's summary judgment is affirmed on appeal)    $0.00

**TOTAL FUNDS AVAILABLE TO PAY CLAIMS:**      **$8,631.00**

**Less Priority Claims:**
    Chapter 7 trustee commission
        (on distributions of $10,275.00)        $1,777.70
    Administrative expenses – Chapter 7 Professionals' fees    $500.00

    Total Chapter 7 Priority Claims          $2,277.50

    Administrative expenses – Chapter 11 Professionals' fees[3]  $115,418.75

**Total Priority Claims**               **$117,696.25**

**EQUALS FUNDS AVAILABLE FOR UNSECURED CLAIMS:**   **<$109,065.25>**

## Percentage dividend on $1,000,000.00 of Unsecured Claims = 0.0%

---

3. Assumes Catherine Lenox's allowed fees of $10,788.75 plus Subchapter V Trustee's fees of $4,630.00 plus $100,000 total for Special Litigation Counsel's plus Weldon Ponder's fees, of which $0.00 would be paid in a Chapter 7 case because administrative claims of a converted Chapter 11 case are paid only after payment in full of the Chapter 7 administrative claims.