IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| § | Case No. 21-10903 (hcm) |
| METROPOLITAN WATER § | |
| COMPANY, L.P., § | |
| § | |
| *Reorganized Debtor* § | |
| § | |

## BLUE WATER PARTIES' SUPPLEMENT TO FIRST AMENDED OBJECTION TO SCHEDULED CLAIM OF HOWRY BREEN & HERMAN LLP

TO THE HONORABLE H. CHRISTOPHER MOTT, U.S. BANKRUPTCY JUDGE:

Creditors Blue Water Systems, LP ("BWS") and Blue Water Vista Ridge, LLC ("BWVR") (together, "Blue Water") file this their Supplement to their First Amended Objection to Scheduled Claim of Howry Breen & Herman, LLP ("Howry Breen").

1. The discovery period ended on February 3, 2023. While Blue Water is presently pursuing the production of additional documents from Howry Breen, *see* Dkt. No. 673, Blue Water files this Supplement now to timely update the Court on additional issues (relating to Howry Breen's claim for pre-petition fees) uncovered during the discovery period.

2. Following an objection, a claim should be disallowed to the extent "such claim is unenforceable against the debtor and property of the debtor, under agreement or applicable law." 11 U.S.C. § 502(b)(1). Also, pre-petition attorneys' fees should not be allowed to the extent they "exceed the reasonable value of such services." *Id.* § 502(b)(4). The claimant holds the burden of proof on these matters. *See In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006).

3. Blue Water's core arguments are: (i) the claim is not enforceable against the Debtor Metropolitan Water Company, LP ("Met Water") because Howry Breen's actual client (both

legally and equitably) is the Debtor's general partner Metropolitan Water Company of Texas, LLC ("MW Texas") and its principal Scott Carlson; and (ii) the amounts claimed by Howry Breen for services allegedly provided to the Debtor (though, in reality, for MW Texas) far exceed the reasonable value of such services to the Debtor.

4. Of these two points, the first—that MW Texas (meaning, in reality, Carlson) is the *real* client—is the most important and is dispositive of all other issues. To underscore this key point, it is undisputed that *all* of the invoices at issue identify MW Texas as the client, not Met Water, and the payments made by the client to Howry Breen were from MW Texas, not Met Water. It is further undisputed that Howry Breen performed legal services for MW Texas on behalf of other Carlson entities—such as Met Water Vista Ridge LP ("MWVR")—that *harmed* Debtor Met Water (Howry Breen's supposed client). Howry Breen, for example, aided and abetted Carlson in his scheme to misappropriate leases from Met Water (and revenue from those misappropriated leases) by filing claims in federal court and in this Court to the detriment of Met Water. Although ultimately unsuccessful, those claims served only the interests of MW Texas, MWVR, and Carlson and were contrary to interests of Debtor Met Water, and yet Howry Breen now purports to bill *Met Water* for that very work.

5. In support of, and in addition to, these core arguments, discovery has revealed the following.

**A.    Howry Breen's invoices do not support the full $843,734.79 amount claimed.**

6. On November 30, 2022, Howry Breen updated its response to Blue Water's objection and attached the relevant pre-petition invoices. However, three of those invoices showed that they had been fully paid, *see* Dkt. No. 563-1 at pp. 21, 56 & 59, and the remaining invoices total to $657,446.13—not the claim amount of $843,734.79 set forth on Met Water's schedules, *see id.* at pp. 14, 19, 23, 30, 35, 38, 40, 43, 45, 49, 54, 62, 65, 67, 70, 72, 75, 80, 83, 89 & 90. To

date, Howry Breen has produced no documentary support for the $186,288.66 remainder of its claim as originally scheduled.

**B.    Howry Breen's late-disclosed Fee Agreements support Blue Water's objections.**

7.    On January 19, 2023, Howry Breen produced three Fee Agreements—after this Court reviewed them *in camera* and confirmed they were responsive to Blue Water's requests for production. *See* Exs. A-C. Such supplemental production ought to have multiple consequences.

8.    *First*, the late production further illuminates Howry Breen's lack of candor, which this Court should take into account in adjudicating the enforceability and reasonableness of Howry Breen's claim. These Fee Agreements were concealed in January 2022 when Howry Breen sought to be appointed special litigation counsel, in July 2022 when Howry Breen informed this Court on the record there were no written fee agreements to be produced, again in July 2022 when Met Water's objections to producing any agreements with Howry Breen were overruled, in August 2022 when Met Water's representative Scott Carlson testified at the plan confirmation hearing that all written fee agreements had been produced, and in December 2022 when Howry Breen initially responded to Blue Water's request for production that there were "no" such fee agreements.

9.    Recall that this is not the first instance of concealment. For example, Randy Howry obtained an Assignment of Production Payment back in 2003, but failed to disclose that assignment pre-confirmation when appointed as special counsel or during discovery (post-confirmation, Mr. Howry sought to intervene in an adversary proceeding based on the assignment).[1] As another example, Howry Breen initially disclosed only an hourly billing arrangement, but through discovery Blue Water learned that there was also a contingency fee agreement, which has never

---

[1] When seeking appointment as special counsel in January 2022, Mr. Howry claimed to have only standard lease interests that were *not* "material," but when seeking intervention in the adversary proceeding in December 2022, Mr. Howry claimed his special assignment entitled him to "substantial" royalties.

*Blue Water's Supplement to its Amended Objection to Scheduled Claim of Howry Breen*                               *Page 3*

been formally terminated. Such pattern of non-disclosure calls into question the reasonableness of allowing Howry Breen to be paid for its pre-petition legal work—all of which was done *after* the first of the undisclosed Fee Agreements in 2017. *See* Ex. A.

10. *Second*, the Fee Agreements further demonstrate that MW Texas was—and remains—the real client. Otherwise, MW Texas by the 2022 Fee Agreement would not have agreed to pay all attorneys' fees that this Court does not approve be paid by Met Water. *See* Ex. C. Prior to that contract's March 6, 2022 date, the Court had ordered Howry Breen to *cease* representing MW Texas if it was going to represent Met Water post-petition. *See* Dkt. No. 85 ¶ 5. MW Texas and Howry Breen attempted to wire around this Court's prohibition by agreeing that MW Texas would continue to pay Howry Breen for pre-petition *and* post-petition work, to the extent payments were not made by Met Water. *See* Ex. C.

11. Stunningly, the 2022 Fee Agreement expressly stated that Howry Breen "continues to act as legal counsel to [Met Water] *and its affiliates*." *See id.*, Recital (emphasis added). Indeed, Howry Breen's post-petition billing entries reveal that the Firm, in fact, continued to work for Carlson's entities, including working on those entities' responses to third-party subpoenas. *See, e.g.*, Dkt. No. 657 at p. 28 (June 3, 2022). This Court should take into account such violation of its Order.

12. *Third*, to the extent the 2021 Fee Agreement is valid and enforceable,[2] many of the alleged unpaid invoices have not yet come due. Howry Breen by the 2021 Fee Agreement agreed that any unpaid invoices dated prior to 2021 would not be paid until Met Water received its portion of the 2020-21 Vista Ridge revenues, which undisputedly has yet to occur (such portion is

---

[2] Given the pre-confirmation non-disclosure of the Fee Agreements by both Met Water and Howry Breen, Met Water ought not be allowed to pay any consideration to Howry Breen under the three Fee Agreements.

presently in the registry of the Washington County district court). *See* Ex. B ¶ 1. The produced invoices dated prior to 2021 total to $180,194.55.

C. **The unredacted invoices reveal two additional flaws with Howry Breen's claim that Howry Breen tried to conceal under the pretense of attorney-client privilege.**

13. On January 30, 2023, the Plan Trustee waived privilege for all billing entries on the Howry Breen invoices except for five entries by James Hatchitt, and then produced the unredacted invoices to Blue Water. Comparing the unredacted versions with the redacted versions reveals that the redactions had been made not due to a valid assertion of privilege, but rather to conceal reasons why Met Water should not pay Howry Breen for the amounts billed.

14. *First*, the invoices to MW Texas—but supposedly for the benefit of Debtor Met Water—include a significant amount of work performed for Met Water Vista Ridge, LP ("MWVR"), as well as some work for other entities controlled by Carlson. For instance, Invoice 41237, in the amount of $17,961.35, covering January and February 2021, is entirely related to MWVR's claim to own the Baldwin lease. *See* Ex. D. As this Court likely remembers, Carlson's entity MWVR misappropriated numerous leases—including the Baldwin lease—that Debtor Met Water had assigned to BWVR, after which BWVR subleased groundwater rights to Vista Ridge LLC in connection with the Vista Ridge Project. MWVR's interests were contrary to both BWVR's interests and *Debtor Met Water's interests* (because doing so plainly violated Met Water's obligations under the October 14, 2014 lease assignment, the Post-Closing Agreement, and the Cooperation and Non-Disturbance Agreement). Howry Breen's work on behalf of MW Texas, as general partner of MWVR, then was directly harmful to Debtor Met Water's interests.

15. Howry Breen cannot be paid from the Debtor's funds for its acts that harmed the Debtor. The unredacted invoices evidence that (1) Met Water should not have to pay for work done to benefit MWVR (or other Carlson entities), (2) Howry Breen's real client was MW Texas

(general partner of both Met Water and MWVR), and (3) Howry Breen acted unreasonably in redacting those entries while asking to be paid by Met Water.

16. On that latter point, take Mr. Howry's February 24, 2021 billing entry as an example. The entry states, "Research venue issues regarding lease lawsuit." *See* Ex. D. No attorney-client communications nor confidential work product is revealed by such a general entry. However, disclosing what was being researched reveals the work was done in connection with *MWVR's* filing its federal lawsuit on the Baldwin lease. Thus, Howry Breen redacted the entry to only state "Research." *See* Dkt. No. 563-1 at p. 75. Instead of candor, by its redactions Howry Breen opted for concealment.

17. *Second*, the invoices reveal that Mr. Howry's personal billings are not accurate statements of time spent. Instead, beginning in April 2021 he simply wrote "Blue Water issues" and entered an hour quantity that was in half-hour increments and at least 4.00 hours. Three implications follow. ***First***, given the fact that the invoices include work done for MWVR, such vague entries by Mr. Howry make it impossible to discern whether all, some, or none of his work benefited Met Water. ***Second***, the consistently-high hourly amounts appear to have been generated after-the-fact to artificially increase the invoiced amounts. During 2020, Mr. Howry's entries were descriptive, were done by one-tenth hours, and frequently were less than an hour, even as low as 0.1 hours. *See, e.g., id.* at pp. 61-62. Beginning in April 2021, the entries were by one-half hours, ranging from 4.0 to 5.0 hours per day in May and June 2021, and then steadily increasing until September 2021 when they ranged from 6.0 to 10.0 hours per day. *See, e.g., id.* at pp. 16-18, 86-87. ***Third***, Howry Breen acted unreasonably in redacting "Blue Water issues," disguising these generalized entries with *redactions of varying lengths*, presenting a false appearance of differing privileged entries. *See, e.g., id.* at pp. 86-87. Mr. Howry's entries stating only "Blue Water issues"

total to $193,800.00, and entries stating "Blue Water issues" plus additional minor details total to another $32,800.00. None of these entries can be relied on as accurate or reasonable.

18. The generic entry "Blue Water issues" is but one example of Mr. Howry's unreliable billing entries. As another example, when 2021 began, trial was set for April 5, 2021. So, when Mr. Howry in July 2021 made his billing entries for March 17-26, 2021, he billed $8,200.00 for "Trial preparation." *See id.* at p. 47. But, in doing so, he apparently forgot that on March 9, 2021, the court had reset the trial date to October 2021. *See* Ex. E. In other words, those March 2021 billings for "Trial preparation" were plainly not the product of *concurrent* memorialization of work done and time spent.

19. In sum, Howry Breen does not and cannot meet its burden to prove that its scheduled claim is enforceable "against the debtor and property of the debtor, under any agreement or applicable law" (§ 502(b)(1)), or that the claim is "reasonable" (§ 502(b)(4)). Surely this is the reason why Howry Breen and MW Texas agreed—proactively—that MW Texas will pay Howry Breen any legal fees owed that are not collected from Met Water in this bankruptcy. *See* Ex. C. Howry Breen should be held to, and rely on, *that* agreement with MW Texas for payment *by MW Texas*. There is no reasonable basis to require Met Water's creditors—the Blue Water parties, the Met Water limited partners, and others—to bear the weight of MW Texas's and Mr. Carlson's legal bills.[3]

---

[3] Even if this Court were to reduce the Howry Breen claim solely by the amounts quantified in this Supplement, the Howry Breen claim would be reduced from $843,734.79 to $232,690.23.

Respectfully submitted,

By: /s/ Ryan D V Greene
Paul M. Terrill III
State Bar No. 00785094
Ryan D. V. Greene
State Bar No. 2412730
TERRILL & WALDROP
810 West 10th Street
Austin, Texas 78701
(512) 474-9100
(512) 474-9888
pterrill@terrillwaldrop.com
rgreene@terrillwaldrop.com

Seth E. Meisel
Texas State Bar No. 24037089
William S. Rhea
Texas State Bar No. 16807100
DUBOIS, BRYANT & CAMPBELL, LLP
303 Colorado Street, Suite 2300
Austin, Texas 78701
(512) 381-8012
(512) 457-8008 (Fax)
smeisel@dbcllp.com
brhea@dbcllp.com

ATTORNEYS FOR BLUE WATER SYSTEMS, LP AND BLUE WATER VISTA RIDGE, LLC

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing has been served via the Court's CM/ECF system on February 17, 2023, to Debtor's counsel, Subchapter V Trustee, and all other parties requiring notice including the following:

Randy Howry, Special Litigation Counsel to Debtor
Howry, Breen & Herman, LLP
1900 Pearl Street
Austin, TX 78705
rhowry@howrybreen.com

Stephen W. Sather, Subchapter V Trustee
Barron & Newburger, PC
7320 N. MoPac Expressway
Greystone II, Suite 400
Austin, TX 78731
ssather@bn-lawyers.com

Eric J. Taube, counsel for Howry, Breen & Herman, LLP
Waller Lansden Dortch & Davis, LLP
100 Congress Avenue, Suite 1800
Austin, Texas 78701
eric.taube@wallerlaw.com

Brian Talbot Cumings, counsel for H&V Holdings, Ltd., et al.
Graves Dougherty Hearon & Moody, PC
401 Congress Ave, Suite 2700
Austin, TX 78701
bcumings@gdhm.com

Kyle Hirsch, counsel for interested party, Wilmington Trust, N.A., as Trustee for the Burleson/Milam Lease Master Trust
Bryan Cave LLP
Two North Central Avenue
Suite 2100
Phoenix, AZ 85004-4406
kyle.hirsch@bryancave.com

Tricia W. Macaluso, co-counsel for interested party, Wilmington Trust, N.A., as Trustee for the Burleson/Milam Lease Master Trust
Bryan Cave Leighton Paisner
2200 Ross Ave. Ste 3300
Dallas, TX 75201
tricia.macaluso@bclplaw.com

Elizabeth Grace Smith, counsel for interested party, City of San Antonio acting by and through San Antonio Water System
Law Offices of Elizabeth G. Smith
6655 First Park Ten, Suite 240
San Antonio, TX 78213
beth@egsmithlaw.com

Casey Roy, Trial Attorney for the Office of the United States Trustee, Region 7
903 San Jacinto Blvd., Room 230
Austin, TX 78701
casey.roy@usdoj.gov

B. Weldon Ponder, Jr., Co-Counsel for Metropolitan Water Company, L.P.
4408 Spicewood Springs Road
Austin, Texas 78759
weldon@austin.rr.com

United States Trustee - WA12
903 San Jacinto Blvd., Suite 230
Austin, TX 78701
ustpregion07.au.ecf@usdoj.gov

Mike Stenglein, Co-Counsel for interested party Vista Ridge, LLC
King & Spalding LLP
500 W. 2nd Street, Suite 1800, Austin, TX 78701
mstenglein@kslaw.com

Kell C. Mercer, counsel for Keller Shoreline Investments, Ltd
Kell C. Mercer, P.C.
901 S. MoPac Expy., Bldg. 1, Suite 300
Austin, TX 78746-5776
kell.mercer@mercer-law-pc.com

Marvin E. Sprouse, III, counsel for Austin JSB, Ltd. and various limited partners of Metropolitan Water Company, L.P.
Sprouse Law Firm,
901 Mopac Expressway South, Building 1, Suite 300
Austin, TX 78746
msprouse@sprousepllc.com

Sabrina L. Streusand, counsel for Alexander, Dubose & Jefferson, LLC and Dallas Water Alliance Associates, Ltd.
Streusand, Landon, Ozburn, & Lemmon, LLP
1801 S. MoPac Expressway, Suite 320
Austin, TX 78746
streusand@slollp.com

Lisa C. Fancher, counsel for Greg Attwood
FRITZ BYRNE, PLLC
221 West Sixth Street, Suite 960
Austin, Texas 78701

C. Daniel Roberts, Counsel for Francis R. Reissig, Jr.
C. DANIEL ROBERTS, P.C.
PO Box 6368
Austin, Texas 78762

_____
Ryan D. V. Greene